# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

        Debtor.

Chapter 11
Case No. 10-47089-RJK

---

### NOTICE OF HEARING AND MOTION FOR (I) EXPEDITED RELIEF, (II) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING AND APPROVING THE DEBTOR-IN-POSSESSION LOAN THAT INCLUDES THE GRANT OF A SENIOR LIEN UNDER 11 U.S.C. § 364(d) AND PROVIDE ADEQUATE PROTECTION

---

**TO:**    **THE PARTIES IN INTEREST AS SPECIFIED IN LOCAL RULE 9013-3(a)(2).**

1.      PFG AspenWalk, LLC (the "Debtor"), moves this Court (this "Motion") for the relief requested below and gives notice of hearing.

2.      A hearing will be held on the portion of this Motion seeking an interim order at 2:00 p.m. on September 28, 2010, before the Honorable Judge Robert J. Kressel, in Courtroom 8W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415. A hearing on the portion of this Motion seeking a final order will be held at 10:00 a.m. on October 13, 2010 at the same location.

3.      Local Rule 9006-1(B) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought with respect to the portion of the Motion seeking an interim order, the Debtor does not object to written responses being served and filed immediately prior to the hearing. Any response to the Motion for a final order must be filed and delivered no later than October 8, 2010, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE**

**MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     This Court has jurisdiction over this Motion under 28 U.S.C. § § 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1.  This is a core proceeding.

5.     On September 23, 2010 (the "Petition Date"), the Debtor filed a petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code").  The case is now pending before this Court.

6.     This Motion arises under 11 U.S.C. §§ 363(c), 364(c) and (d), and Fed. R. Bankr. P. 4001(b).  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rule 9013-1 to 9013-5 and 4001-2.

7.     The Debtor requests that this Court (i) grant the request for expedited relief; and (ii) enter an interim order authorizing the Debtor to obtain credit secured by, among other things, a senior lien under 11 U.S.C. § 364(d) pursuant to the terms of the Rapid Funding, LLC Term Sheet (the "DIP Loan"), which is attached as Exhibit A, by and between the Debtor and Rapid Funding, LLC (the "DIP Lender") and approving the DIP Loan.  The Debtor also requests a final order approving the DIP Loan.

8.     Since the Petition Date, the Debtor has operated its business as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Code.  No creditors' or other official committee has yet been appointed pursuant to Section 1102 of the Bankruptcy Code.  The primary parties-in-interest have been served with this Motion.

## BACKGROUND

9.     The Debtor is a Delaware limited liability company with its principal place of business at 2005 Cargo Road, Minneapolis, Minnesota 55450. The Debtor's primary assets consist of real property located at 404 Park Avenue, Aspen, Pitkin County, Colorado (the "Rental Property") and the proceeds generated therefrom, and the Debtor's rights under a purchase agreement for 414 Park Circle, Aspen, Pitkin County, Colorado and a joint development agreement with Aspen Pitkin County Housing Authority covering the development of the Rental Property and the 414 Park Circle, Aspen, Pitkin County, Colorado property (collectively, the "Development Property"), as described below in more detail.

10.     The Debtor purchased the Development Property on July 11, 2007 with the intention of constructing a thirty-nine (39) unit condominium development thereon (the "Development Project"). The Development Project was to be composed of fourteen (14) luxury units to be sold to the general public and twenty-five (25) work-force units to be sold to the Aspen Pitkin County Housing Authority (the "Housing Authority").

11.     The Debtor and the Housing Authority are parties to a Joint Development Agreement for Affordable Housing and Free Market Residential Project (the "JDA"), dated June 26, 2006, relating to the development of the Development Project and the Housing Authority's adjacent parcel located at 414 Park Circle, Aspen, Colorado.

12.     To finance the acquisition of the Development Property, obtain Development Project approvals, and to construct the Development Project, the Debtor used the proceeds of a loan (the "Bank of America Loan") from Bank of America, N.A. (as successor in interest to LaSalle Bank National Association, a national banking association, "Bank of America"). The Debtor also used the proceeds of an approximately $6.5 million equity contribution (the "Petters

Contribution") from Petters Real Estate Group, LLC, a Delaware limited liability company ("Petters Real Estate") and $5.4 million equity contribution from sixteen other investors.

13.     Businessman Thomas J. Petters ("Tom Petters") also personally guaranteed the Bank of America Loan.

14.     On or about September 24, 2008, the Federal Bureau of Investigation, together with the Internal Revenue Service – Criminal Investigation Division and the United States Postal Inspection Services, based on claims of fraud and other wrongdoing by Tom Petters, his various companies, and his employee James Wehmhoff ("Wehmhoff") (along with others), publicly announced an investigation of Tom Petters, his companies, Wehmhoff and various other employees allegedly involved in a Ponzi scheme.  On October 3, 2008, Tom Petters was arrested on charges of mail and wire fraud, money laundering, and conspiracy.  The United States alleged that Tom Petters defrauded more than 20 lenders and investment groups out of approximately $3 billion.

15.     As a result of the investigation and arrest, numerous Tom Petters companies employees voluntarily terminated their employment with Tom Petters' companies, including the primary law firm providing overall corporate counsel, the two senior in-house counsel, Tom Petters' primary CEO and CFO, and others with knowledge of the financial transactions among Tom Petters, the companies, lenders, investors, and other creditors.

16.     On October 6, 2008, in the case of United States of America, et al, v. Thomas J. Petters, et al, Case No. 08-CV-5348 (the "Case") in the United States District Court for the District of Minnesota, the Honorable Ann D. Montgomery, United States District Court Judge,

appointed Douglas A. Kelley (the "Receiver") as receiver for all of Tom Petters' assets and companies, including the Debtor and all of Wehmhoff's assets.[1]

17. After October 6, 2008, the Receiver was in control of Petters Real Estate and the controlling ownership interest in the Debtor. Indeed, the Receiver assumed Tom Petters' previous role as manager of the Debtor.

18. Moreover, the judge in the Case issued an order staying all parties from commencing or continuing any action against Tom Petters or any of his affiliates, including Petters Real Estate and the Debtor. This put the Debtor and the Development Project in limbo for the foreseeable future.

19. The City of Aspen Planning Commission had approved the Debtor's plans for the Development Project on May 20, 2008 and the City of Aspen City Council gave its approval on October 27, 2008 (collectively, the "Preliminary Governmental Approvals"). Due to Tom Petters' and Wehmhoff's criminal proceedings, the Aspen City Council conditioned the Preliminary Governmental Approvals on the Debtor removing Tom Petters and Wehmhoff as owners and managers. This required the Debtor to divest Tom Petters, Wehmhoff and Petters Real Estate of their interests in the Development Property and Development Project while navigating around the limitations of the receivership order issued in the Case.

20. To make matters worse, Tom Petters' criminal proceedings also constituted a default under the Bank of America Loan, which caused Bank of America to cease all funding to the Development Project construction and development.

21. In order to proceed with the Development Project, the Debtor was required to (a) resolve the status of Tom Petters' and Wehmhoff's ownership interests, and (b) negotiate a

---

[1] Tom Petters was later convicted on twenty counts of fraud, conspiracy and money laundering for orchestrating a $3 billion Ponzi scheme. He was sentenced to serve 50 years in prison for his crimes.

resolution of the default with Bank of America in order to receive additional construction and development funding.

22.     The Debtor and its owners spent the next two years negotiating with the Receiver to purchase Tom Petters' interest in the Development Property and Development Project.

23.     The default under the Bank of America Loan added numerous complications to the process. Bank of America, as the senior lien holder on the Development Property, had the power to approve or reject all proposals. Thus, each time the Debtor and the Receiver came to a consensus, the Debtor had to obtain Bank of America's approval. This only further delayed an already slow process. All the while, the Development Project remained on hold.

24.     The Receiver made a settlement proposal to Bank of America on March 11, 2010. Bank of America did not respond until June 25, 2010, when it verbally accepted the Receiver's settlement offer and agreed to provide a settlement agreement. Bank of America sent a draft settlement agreement to the Receiver on July 26, 2010. Finally, on August 26, 2010, the Receiver and Bank of America entered into a settlement agreement (the "Settlement Agreement") whereby (a) Bank of America was granted relief from the stay in the Case and was permitted to commence foreclosure proceedings against the Rental Property; (b) Bank of America forgave, released, discharged and acquitted all amounts outstanding under and all security interests securing all loans to Tom Petters and Petters Real Estate; (c) the Receiver abandoned and relinquished all of Petters Real Estate's ownership interests in the Debtor, (d) the Receiver abandoned and relinquished all of Wehmhoff's ownership interests in the Debtor, and (e) the Receiver resigned as the manager of the Debtor.

25.     The Court approved the Settlement Agreement pursuant to an order issued on September 22, 2010. As of that date, the Receiver is no longer an owner or manager of the

Debtor. On that date, Thomas S. Hay was appointed Manager of the Debtor and Thomas Klassen and Thomas Salmen were appointed officers of the Debtor.

26.     The Rental Property currently has fourteen (14) residential rental units, which generate approximately $5,000.00 in net cash flow each month. The pre-petition rents were deposited into a bank account from which expenses were paid.

27.     On October 13, 2009, the Preliminary Governmental Approvals were extended for approximately one year. The extension expires on October 28, 2010, at which time the Development Project will likely have to be abandoned. Alternatively, the Debtor has the opportunity to obtain final governmental approval for the Development Project, which will allow the development to continue. The Debtor, its creditors and other parties-in-interest are, therefore, required to proceed quickly to address the required final governmental approvals or the value of the Debtor's assets will seriously diminish in value.

28.     In order to receive final governmental approval for the Development Project, the Debtor must complete a detailed final application, obtain various engineering, architectural and construction plans, perform various environmental and health related tasks, among many other items. The total cost for these items will exceed $1.2 million.

29.     The Development Property is currently valued at approximately $12,000,000.00. In contrast, expiration of the Preliminary Governmental Approvals will result in the Rental Property, valued at approximately $6,300,000.00, as the only asset of the Debtor and collateral for Bank of America.

30.     To avoid this, the Debtor is seeking the DIP Loan to continue development of the Development Project. Upon the Court's interim approval of the DIP Loan, the Debtor intends to finalize the terms of the DIP Loan with DIP Lender and execute final loan documents.

31.     The Debtor estimates that the entire final governmental approval process will be completed by May 31, 2011.  The Debtor proposes to have the DIP Loan authorized by the Court in three phases during that time period.  The Debtor is requesting that the Court grant authority for the Debtor to draw up to $250,000.00 on October 13, 2010.  The Court will then hold a hearing to authorize the Debtor to draw an additional $452,500.00 under the DIP Loan on or about November 1, 2010.  The Court will then hold a final hearing to allow the Debtor to draw the remaining $452,500.00 under the DIP Loan on or about January 1, 2011.  This structure will add an additional layer of protection for the DIP Lender and Bank of America to know that the Debtor is properly proceeding with the final governmental approval process.  If any party-in-interest believes that the Debtor is not proceeding sufficiently at the end of any of the above-stated periods, such party will have an opportunity to object and potentially stop the process before additional funds are expended.

32.     Notwithstanding the current operations and revenue at the Rental Property and the Debtor's ability to continue developing the Development Project now that Tom Petters and Wehmhoff have been removed, Bank of America has refused to resume funding under the Bank of America Loan.  The lack of funding under the Bank of America Loan, therefore, threatens to destroy the Development Project forever unless the Debtor is permitted to restructure its debts and obligations under the Code.

33.     Accordingly, the Debtor has been forced to file its petition in bankruptcy and seek debtor-in-possession financing from another source to continue developing the Development Project.  The Debtor will also use the additional time and funding to restructure other debts and obligations and proceed with the Development Project.

7084931v6

34.     Notwithstanding the current operations and revenue at the Rental Property and the Debtor's ability to continue developing the Development now that Tom Petters and Wehmhoff have been removed, Bank of America has refused to resume funding under the Bank of America Loan.  As a result, the Debtor has fallen behind on numerous debts and several other of the Debtor's creditors have declared various obligations in default.  The lack of funding under the Bank of America Loan, therefore, threatens to destroy the Development forever unless the Debtor is permitted to restructure its debts and obligations under the Code.

## PRE-PETITION DEBT STRUCTURE

35.     The Debtor is indebted to Bank of America under the terms of the following loan documents (collectively, the "Loan Documents"):

A.      Promissory Note, in the original principal amount of $45,420,115;

B.      Pre-Development and Construction Loan Agreement;

C.      Construction Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing Statement, recorded as Reception # 545304, on December 27, 2007 in Pitkin County, Colorado (the "Deed of Trust");

D.      Financing Statement, filed on December 28, 2007 as Document # 20080305613, in the Delaware Department of State (the "Financing Statement");

E.      Environmental Indemnity Agreement;

F.      Assignment of Plans, Specifications, Construction and Services Contracts, Licenses and Permits;

G.      Disbursing Agreement;

H.      Assignment of Purchasing Contracts;

I.      Collateral Assignment of Contracts and Development Rights; and

J.      International Swap Dealers Association, Inc. Master Agreement and related transaction.

36.     The Debtor's obligations to Bank of America are secured by the Deed of Trust and the Financing Statement, which grant Bank of America a security interest in all of the Debtor's property related to or arising from the Rental Property (hereinafter and together with the Rental Property, the "Collateral").

37.     As of August 26, 2010, the outstanding amount of the Debtor's obligations to Bank of America under the Loan Documents totals approximately $6,408,373.93.

## RULE 4001 STATEMENT

38.     Pursuant to Fed. R. Bankr. P. 4001, the Debtor requests (a) an interim order preliminarily authorizing the DIP Loan so the Debtor can continue its negotiations with the DIP Lender, and (b) a final order authorizing and approving the DIP Loan to be made in three separate advances to the Debtor.

39.     Both before and following the Petition Date, the Debtor has engaged in negotiations with the DIP Lender to make a post-petition loan to the Debtor for use in obtaining final governmental approvals for the Development Project.  At the time of filing of this Motion, the Debtor is continuing to negotiate with the DIP Lender; however, negotiations have advanced significantly enough to provide the basic terms of the DIP Loan, which is attached as Exhibit A to this Motion.

40.     The Debtor continues to negotiate the terms of the DIP Loan with the DIP Lender. Pursuant to Fed. R. Bankr. P. 4001(c) and the Instructions for Filing a Chapter 11 Case in the U.S. Bankruptcy Court, District of Minnesota, the Debtor notes that the following provisions may be included in the DIP Loan and the proposed order approving the DIP Loan:

   a.     **DIP Availability**:  The Dip Loan in the amount of $1,400,000.00 may be drawn on by the Debtor on a non-revolving basis to fund costs associated with final Planned Unit Development of the Development Project by the City of Aspen.

b.    **First-Priority Lien and Administrative Expense**: First priority Deed of Trust on the Rental Property and all of the Debtor's other assets. The DIP Lender's security interest will obtain a senior position to Bank of America pursuant to Section 364(c) and (d) of the Code.

c.    **DIP Maturity**: The DIP Loan will mature in twelve months. The Debtor may extend the term of the DIP Loan for an additional six months by paying the DIP Lender a $10,000.00 extension fee.

d.    **Interest Rates**: Amounts outstanding under the DIP Loan will bear interest at an annual rate of the 13%. Additionally, the DIP Lender will receive 5% of the common equity interests in the Debtor.

e.    **DIP Facility Fee**: The DIP Lender will receive an origination fee of $50,000.00 upon closing of the loan facility. Additionally, the Debtor will pay $7,500.00 to Nantucket Capital and $2,500.00 to CB Richard Ellis for loan origination fees. Upon issuance of this Court's interim order approving the DIP Loan, the Debtor will make a non-refundable $5,000.00 deposit with the DIP Lender for its attorneys' fees.

f.    **Conditions of Approval**: Closing of the DIP Loan is conditioned upon the DIP Lender's satisfaction, in its sole and absolute discretion, (i) the value and marketability of the Rental Property; (ii) the Debtor's plan to repay the DIP Loan; (iii) the Debtor's creditworthiness; (iv) title insurance commitments for the Collateral; and (v) completion of typical commercial real estate loan documentation.

## ADEQUATE PROTECTION

41.    To adequately protect Bank of America's interest, the Debtor proposes to grant Bank of America a post-petition replacement lien of the same priority, dignity, and effect as its pre-petition interest in the Debtor's collateral. The Debtor also proposes to increase the value of the Development Property for Bank of America's benefit by using the proceeds of the DIP Loan to obtain final governmental approvals for the Development Project.

42.    The Debtor also asserts that Bank of America's interest in the collateral is adequately protected by the approximately $5,591,626.07 equity cushion in the Property.

43.    The Debtor's offer of adequate protection and the approximately $5,591,626.07 equity cushion in the Property provides Bank of America with adequate protection. The

Debtor's DIP Loan will allow the Debtor to continue its operation until a plan of reorganization can be confirmed, which will greatly enhance the value of the Debtor and its estate. If the Debtor is not granted authority to obtain the DIP Loan, the only alternative will be to cease the Development Project because the Preliminary Government Approvals will expire on October 28, 2010, and the Debtor's only asset will be the Rental Property, which will greatly reduce the value of Bank of America's interest.

44. The Debtor is offering additional protection to Bank of America in the form of its proposal to limit the amount of the DIP Loan it can expend only a limited portion of the DIP Loan in specified time frames. By asking the Court to hold a periodic hearings regarding advances under the DIP Loan, the Debtor is providing Bank of America with an opportunity to review the Debtor's progress in obtaining final governmental approvals of the Development Project and bring any perceived deficiencies to the Court's attention before it approves future expenditures under the DIP Loan.

45. The DIP Loan will allow the Debtor to continue operations and work towards a successful reorganization of its operations and the Development. Such a result is in the best interest of Debtor's estate, Bank of America and the Debtor's other creditors.

46. Prior to the hearing on the Motion, and in settlement of any and all of the matters raised in this Motion, the Debtor may enter into a stipulation or agreed order with Bank of America concerning the DIP Loan, adequate protection, and other related matters. In the event the Debtor enters into any such stipulation, it will seek approval of the stipulation without further notice or hearing pursuant to Bankruptcy Rule 4001(d)(4), and the **DEBTOR HEREBY GIVES NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

7084931v6

**EXPEDITED RELIEF**

47.     The Debtor seeks the interim relief herein on an expedited basis and cause exists to reduce notice of the Motion. The Debtor has given approximately three (3) days notice of the hearing. Bank of America and the Debtor's largest unsecured creditors have been or will be promptly served with a copy of this Motion.

48.     Moreover, the Debtor must continue negotiating the DIP Loan in the interim period. The DIP Lender requires preliminary approval of the DIP Loan to continue negotiating. Also, the Debtor is obligated to fund various expenses necessary to operate an apartment building and retain tenants. If the Debtor fails to make such payments, the Debtor may lose its residential tenants and be subjected to landlord-tenant claims. Without the funds under the interim funding of the DIP Loan as proposed, the Debtor may be unable to continue operations, and the interest of creditors and others in this case will be irreparably harmed. Therefore, cause exists to reduce notice of the hearing with respect to an interim order authorizing the DIP Loan.

49.     Pursuant to Local Rule 9013-2(a), this Motion is accomplished by a memorandum of law, proposed order, and proof of service.

50.     Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call the following people to testify on behalf of the Debtor about the factual matters raised in this Motion: (a) Thomas S. Hay, Manager and President of the Debtor, business address: 2005 Cargo Road, Minneapolis, Minnesota 55450; (b) Thomas Salmen, Vice President, Finance, of the Debtor, business address: 2005 Cargo Road, Minneapolis, Minnesota 55450; (c) Thomas H. Klassen, Vice President, Operations, of the Debtor, business address: 2005 Cargo Road, Minneapolis, Minnesota 55450; and (d) the person most knowledgeable from Bank of America with respect to the Bank of America Loan.

7084931v6

**WHEREFORE**, the Debtor moves the Court for an order granting:

A.  An expedited hearing on this Motion;

B.  Interim and final authorization to enter into the DIP Loan with the DIP Lender; and

C.  Such other and further relief as the Court deems just and equitable.


Dated:  September 23, 2010

/e/ *Adam D. Maier*

Robert T. Kugler (#0194116)
Lara O. Glaesman (#0316866)
Adam D. Maier (#0386870)
**LEONARD, STREET AND DEINARD**
   *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657

**ATTORNEYS FOR PFG ASPENWALK, LLC**

# EXHIBIT A

# Rapid Funding, LLC

200 Spruce Street, Suite 200
Denver, Colorado 80230

September 15, 2010

Dear Mr. Salmen

The commitment described in this letter is contingent upon Rapid Funding's satisfaction, in its sole and absolute discretion, with each of the following:

| | |
|---|---|
| Loan: | $1,400,000.00 (DIP) |
| Maker of the Note: | PFG AspenWalk, LLC |
| Collateral: | 1st trust deed on 404 Park Ave. Aspen, CO, Debtor In Possession ("DIP") loan senior to existing first mortgage as authorized pursuant to sections 364 (c) and (d) of the U.S. Bankruptcy Code |
| Use of Proceeds: | To fund costs associated with Final PUD Approval as depicted in the attached Exhibit A |
| Interest: | 13% annual interest + 5% of common equity in restructured entity |
| Origination Fee: | $50,000 to Rapid Funding LLC $7500 to Nantucket Capital, and $2,500 to CB Richard Ellis) |
| Term: | 12 months with one, 6 month extension for a fee of $10,000 |
| Payments: | Accrued as per Exhibit A, due and payable at repayment of facility |
| Recourse: | None |
| Legal Fee Deposit: | $5,000 (fully refundable until such time as U.S. Bankruptcy Court approves entry of the DIP order) |
| Closing Date: | Within 14 days from the entry of the DIP order by the U.S. Bankruptcy Court, subject to satisfactory due diligence by Rapid Funding and legal documentation of the Loan |

Closing Conditions:

1. Rapid Funding's satisfaction, in its sole and absolute discretion, with the value and marketability of the collateral;
2. Rapid Funding's satisfaction, in its sole and absolute discretion, with the plan of the borrowers to repay this loan;
3. Rapid Funding's satisfaction, in its sole and absolute discretion, with the credit worthiness of the Maker of the Note;
4. Rapid Funding's satisfaction, in its sole and absolute discretion, with title insurance commitments for the collateral, the premiums for which must be paid by the Maker;
5. You must pay to Rapid Funding a legal fee in the amount of $5,000 before Rapid Funding will begin processing the loan or preparing the applicable loan documents. Any unused portion of this fee will be returned or credited at closing. It is possible that this fee will not cover all of Rapid Funding's costs and expenses; in that case the borrower will be responsible for all additional expenses associated with this loan.
6. The Maker will be required to sign a "Borrower's Affidavit", prior to the preparation of the applicable loan documents;

7. Rapid Funding must be satisfied, in its sole and absolute discretion, as to the value of all forms of collateral that are pledged; and

8. Rapid Funding must be satisfied, in its sole and absolute discretion that the proposed loan and all collateral are in compliance with all applicable laws, rules, and ordinances.

If Rapid Funding is not satisfied, for any reason in its sole and absolute discretion, with any of the conditions described above, then Rapid Funding will have no obligation to make this loan, nor will any person have any expectation that any loan will be made. Further, all of the borrowers recognize that this is simply an indication of interest and agree that there will be nothing binding between the parties (other than the borrowers' agreement to pay all legal fees and expenses, after authorization to proceed with this Letter of Interest from the U.S. Bankruptcy Court) until such time as all parties sign a binding loan agreement. This Letter of Interest may be revoked at any time by Rapid Funding, or further conditioned in any manner deemed appropriate by Rapid Funding, all without liability. Makers each hereby waive all claims against Rapid Funding, which may arise out of this commitment and/or Rapid Funding's refusal or failure to extend the loan contemplated herein.

The preliminary commitment described in this letter will expire if not accepted on or before September 28, 2010

Sincerely,

Cornelius L Ryan, Rapid Funding, LLC

cc: Robert W. Hatch Esq.

Acknowledgement

The undersigned, as authorized signatory for the Maker referred to in the foregoing letter; hereby unconditionally agrees to the terms of the letter.

By: _____
      Thomas R. Salmen
      PFG AspenWalk, LLC

# (EXHIBIT A)

**PFG ASPENWALK LLC**
**DIP Loan Facility and Draw Schedule**

*Use of DIP Loan Proceeds*

|  | | Total |
|---|---|---|
| Achitectural / Engineering | $ | 400,000 |
| Planning Consultant | $ | 18,400 |
| Local Project Management | $ | 31,000 |
| Travel and Misc. | $ | 27,500 |
| Legal | $ | 75,000 |
| Developer Overhead | $ | 250,000 |
| City Fees/Costs | $ | 34,000 |
| Closing Costs for Project Recap / Chap 11 filing | $ | 100,000 |
| Lender Points/Fees | $ | 60,000 |
| Contingency (Chap 11/addl. approval. costs, etc.) | $ | 159,100 |
| | | |
| Total | $ | 1,155,000 |
| | | |
| Quarterly Interest Accrual (On Total Budget) | | 13.0% |
| | | |
| Total Interest Reserve (18 months) | $ | 244,337 |
| | | |
| **Total Loan Commitment** | $ | **1,399,337** |

# VERIFICATION

I, Thomas Salmen, an Officer of the Debtor, hereby verifies, under penalty of perjury, that I have read the foregoing Motion, including Exhibits, I know the contents thereof, and the information contained therein is true and correct to the best of my knowledge, information, and belief.

Dated: September 23, 2010

Thomas Salmen, Officer

In re:

PFG ASPENWALK, LLC,

          Debtor.

Chapter 11
Case No. 10-47089-RJK

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (I) EXPEDITED RELIEF, (II) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING AND APPROVING THE DEBTOR-IN-POSSESSION LOAN THAT INCLUDES THE GRANT OF A SENIOR LIEN UNDER 11 U.S.C. § 364(d), AND PROVIDE ADEQUATE PROTECTION**

PFG AspenWalk, LLC (the "Debtor"), requests that the Court enter an expedited order as requested in the Motion.[2]

## BACKGROUND

The facts supporting the relief sought are set forth in the verified Motion.

## ANALYSIS

**I.**     **CAUSE EXISTS TO REDUCE NOTICE ON HEARING ON THE INTERIM MOTION.**

Bankruptcy Rule 4001(c) provides that a court may commence a final hearing for authority to obtain credit no earlier than 14 days after service of the motion. The Rule further provides that a court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

---

[2] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Debtor's Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-In-Possession Financing and Approving the Debtor-In-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d), and Provide Adequate Protection.

In this case, grounds exist to reduce notice of the interim hearing to authorize the obtaining of credit on a preliminary basis pending the final hearing. The Debtor has an urgent need to obtain post-petition financing in order to begin the process of obtaining final governmental approvals for the Development. The Development Property is currently valued at approximately $12,000,000.00. In contrast, expiration of the Preliminary Governmental Approvals will result in the Rental Property, valued at approximately $6,300,000.00, as the only asset of the Debtor and collateral for Bank of America. The application materials for Final Approval generally take one month to complete. The Debtor's deadline to complete the Final Approval application process is October 28, 2010; however, the Debtor's team will need to work around the clock to complete them in approximately two weeks in order to submit them by October 7, 2010. The Debtor's submission must be complete by October 7, 2010, because the city staff takes five (5) business days to review the submission, then the city will request the Debtor make revisions (which takes five (5) business days to complete), and then the city staff takes five (5) more business days to deem the application complete. Therefore, the Debtor must submit the Final Approval to the city at least fifteen (15) business days before the actual deadline of October 28, 2010. Additionally, the DIP Lender requires confirmation that it should continue negotiating the terms of the DIP Loan with the Debtor. Therefore, cause exists to reduce notice of the hearing on the interim motion.

## II.     THE DEBTOR IS ENTITLED TO ENTER INTO THE DIP LOAN AND GRANT A SENIOR LIEN TO THE DIP LENDER UNDER 11 U.S.C. § 364(d).

A debtor may grant a post-petition lender a super-priority lien superior to that of a pre-petition lien when the pre-petition lien can be protected. A debtor-in-possession has the rights, powers and duties of a trustee pursuant to 11 U.S.C. § 1107(a). Therefore, the Debtor, as a

debtor-in-possession, may utilize 11 U.S.C. § 364(d) to obtain credit. *In re Hubbard Power & Light*, 202 B.R. 680, 684 (Bankr. E.D.N.Y. 1996). Section 364(d) states-

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if-
>
>> (A) the trustee is unable to obtain such credit otherwise; and
>>
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

In authorizing a debtor to grant such a priming lien, "[t]he principal considerations before the Court are, therefore whether (1) the debtor was unable to obtain this credit on another basis and (2) whether the proposed loan and subordination of the existing lender's liens can be made while protecting the existing lender's interests." *In re Campbell Sod, Inc.*, 378 B.R. 647, 652-53 (Bankr. D. Kan. 2007). In the instant case, the Debtor has expended significant efforts to secure a lender willing to provide the needed financing. In addition to the equity cushion in the Development Property and Development Project, the Debtor will protect Bank of America's interests by granting a lien on unencumbered assets and using the DIP Loan to significantly increase the value of the Development Property and Development Project.

> **A.      The Debtor has unsuccessfully sought credit from numerous sources and the DIP Lender is the only available financing source.**

The Debtor has been seeking financing since late 2008 to continue developing the Development Project. To secure a capital source, the Debtor contacted over fifty (50) potential lenders regarding financing for the Debtor. Three financing sources agreed to capitalize the project if the Bank of America Loan could be satisfied at a discount. Bank of America rejected this proposal and has refused to fund further advances under the Bank of America Loan. The only viable option to fund the next phase of the Development Project is the DIP Lender.

Given that the Debtor is also under significant time pressure to obtain the final governmental approvals for the Development Project, it has done everything possible to obtain alternative financing. As one court has stated, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. This is particularly true when, as the court determined here, time is of the essence." *In re Snowshoe Company, Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, the Debtor has shown that credit is not otherwise available.

**B.** **Bank of America will be adequately protected by the equity cushion in the Development Property, a replacement lien on currently unencumbered collateral and the increased value of the Development Property after the DIP Loan is used to obtain final governmental approvals.**

Pursuant to 11 U.S.C. § 364(d), the Debtor must present evidence that Bank of America's interest as an existing lien holder is adequately protected. Adequate protection can be a combination of (1) cash payments, (2) additional or replacement liens, or (3) some other provision to assure the secured creditor the indubitable equivalent of its interest. 11 U.S.C. § 361. The Debtor proposes to provide Bank of America with adequate protection in the form of the indubitable equivalent of its interest and a replacement lien.

**1.** **Bank of America will receive adequate protection through the enhanced value of the Development Property that results from investment of the DIP Loan proceeds.**

The flexible provision of Section 361(3) allows for a wide variety of adequate protection. For instance, in *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996), the court held that a subordinated creditor was adequately protected because the proceeds of the priming loan would be used to increase the value of the collateral to the benefit of the estate, all secured creditors and parties-in-interest. Moreover, in *In re Aqua Assoc.*, 123 B.R. 192 (Bankr. E.D. Pa.

1991), the court noted that using the proceeds of a loan to enhance the value of a lender's collateral was a sufficient basis on which to allow a priming lien.

Much like the *Hubbard* and *Aqua* cases, the Debtor will use the proceeds of the DIP Loan to greatly enhance the value of the Rental Property. The Development Property is currently valued at $12,000,000.00. Using the DIP Loan to fund the costs of obtaining final governmental approval of the Development Project will increase the value of the Development Property. This added value will inure to the benefit of not only Bank of America, but also to other creditors and parties-in-interest including the municipalities involved. In contrast, if the Preliminary Governmental Approvals expire on October 28, 2010, the Development Project will have to start over in the governmental approval process. This would result in the Rental Property, valued at approximately $6,300,000.00, as the only asset of the Debtor and collateral for Bank of America. *See In re Aqua Assoc.*, 123 B.R. at 198-99 (using priming loan to prevent what would otherwise be loss in collateral value constitutes adequate protection). Thus, the Debtor's plan to increase the value of Bank of America's collateral while at the same time preventing a significant loss of value constitutes adequate protection.

### 2. The Debtor will grant Bank of America a replacement lien in rents arising from the Rental Property.

The Deed of Trust, which is governed by Colorado law, grants Bank of America an assignment of the rents arising from the Rental Property. The extent to which Bank of America holds that interest in rents post-petition is determined by state law. *Butner v. United States*, 440 U.S. 48, 99 (1979). Under Colorado law, an assignee of rent acquires no claim to rents until such assignee has taken certain affirmative steps to protect its lien, including taking possession of the premises or successfully appointing a receiver. *In re Colter, Inc.*, 46 B.R. 510, 512 (Bankr. D. Colo. 1984). Until such effectual step has been taken by an assignee of rents, the

right to rental income is an inchoate lien. *Id.* Moreover, the filing of a bankruptcy petition operates as a levy on all property of the debtor and, by operation of 11 U.S.C. § 544(a), has the effect of a levy by a judgment creditor in favor of the bankruptcy estate. *Id.* In other words, the assignment is an unperfected lien that is subordinate to the debtor's interest.

Bank of America did not take possession of or have a receiver appointed for the Rental Property prior to the Petition Date. Thus, it has an unperfected interest in the rents from the Rental Property that is subordinate to the Debtor's interest in the rents. The Debtor proposes to grant Bank of America a post-petition replacement assignment of rents arising from the Rental Property on the same terms and conditions as its pre-petition assignment. While it will be subordinate to the interests of the DIP Lender, Bank of America will have the benefit of the replacement lien that it would not otherwise hold. This replacement lien along with the equity cushion and enhanced value of the Rental Property following investment of the DIP Loan proceeds constitutes adequate protection of Bank of America's interest. Accordingly, the requirements of Section 364(d) have been met for the Court to authorize the DIP Loan.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order granting an expedited hearing, approving the use of cash collateral on an interim basis, and authorizing the Debtor to use cash collateral on a final basis.

Dated:  September 23, 2010

/e/ *Adam D. Maier*

Robert T. Kugler (#0194116)
Lara O. Glaesman (#0316866)
Adam D. Maier (#0386870)
**LEONARD, STREET AND DEINARD**
   *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657

**ATTORNEYS FOR PFG ASPENWALK, LLC**

7084931v6

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

        Debtor.

Chapter 11
Case No. 10-47089-RJK

## CERTIFICATE OF SERVICE

I, Ma Xiong, declare, under penalty of perjury, that on September 23, 2010, I filed:

**NOTICE OF HEARING AND MOTION FOR (I) EXPEDITED RELIEF, (II) INTERIM
AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-
POSSESSION FINANCING AND APPROVING THE DEBTOR-IN-POSSESSION LOAN
THAT INCLUDES THE GRANT OF A SENIOR LIEN, AND PROVIDE ADEQUATE
PROTECTION**

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of

electronic filing to the following:

**US Trustee**; ustpregion12.mn.ecf@usdoj.gov

I further certify that I caused a copy of the foregoing document and the Notice of Electronic

Filing to be served by First Class Mail on the following parties:

AMANDA SCHMITT
404 PARK AVENUE #1
ASPEN CO 81611

ASPEN CUSTOM GLASS
601 RIO GRANDE PLACE, STE 119A
ASPEN CO 81611

ASPEN PITKIN HOUSING AUTHORITY
ATTN: TOM MCCABE, EXEC. DIR.
530 EAST MAIN STREET
ASPEN CO 81611

BANK OF AMERICA, N.A.
ATTN: RICHARD L. CARTER
2990 LAVA RIDGE CT, SUITE 120
ROSEVILLE CA 95661

BRITTANY BUFFALINO
404 PARK AVENUE #1
ASPEN CO 81611

CAMERON LEONARD
404 PARK AVENUE #9
ASPEN CO 81611

CITY OF ASPEN
130 SOUTH GALENA STREET
ASPEN CO 81611

CLAYTON DAY
404 PARK AVENUE #2
ASPEN CO 81611

HOLY CROSS ENERGY
P.O. BOX 2150
3799 HWY 82
GLENWOOD SPRINGS CO 81602

INTEGRITY PLUMBING AND HEATING
218 CODY LANE
BASALT CO 81621

JOAQUINN TARANGO
404 PARK AVENUE #5
ASPEN CO 81611

JONATHAN RIVERS
404 PARK AVENUE #3
ASPEN CO 81611

JULIE COOK
404 PARK AVENUE #0
ASPEN CO 81611

LAURENCE MONJI
404 PARK AVENUE #6A
ASPEN CO 81611

LINDSAY FORSTER
404 PARK AVENUE #3
ASPEN CO 81611

MANUEL CORRIPIO NORIEGA
PO BOX 2565
ASPEN CO 81612

REBECCA POLAN
404 PARK AVENUE #1
ASPEN CO 81611

ROSA GONGORA
404 PARK AVENUE #10
ASPEN CO 81611

SHAUN HEALY
404 PARK AVENUE #12
ASPEN CO 81611

SHERIDAN REAL ESTATE, LLC
ATTN: MARY ELLEN SHERIDAN
P.O. BOX 7757
ASPEN CO 81612

SOPRIS CONSULTING GROUP, LLC
ATTN: PAUL LOTZER
5400 NORWOOD LANE
PLYMOUTH MN 55442

STAN CLAUSON ASSOCIATES, INC
ATTN: STAN CLAUSON
412 N MILL STREET
ASPEN CO 81611

TERMINIX
2907 D 1/2 ROAD
GRAND JUNCTION CO 81504

WASTE MANAGEMENT-
CARBONDALE
PO BOX 78251
PHOENIX AZ 85062

IRS
CINCINNATI, OH  45999-0025

UNITED STATES ATTORNEY
600 U.S. COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN  55415

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
SAINT PAUL, MN  55101

MINNESOTA DEPARTMENT OF
REVENUE
BANKRUPTCY SECTION
P.O. BOX 64447
SAINT PAUL, MN  55164-00447

INTERNAL REVENUE SERVICE
STOP 5700
30 EAST SEVENTH STREET, #1222
SAINT PAUL, MN  55101-4940


Dated:  September 23, 2010

/e/ *Ma Xiong*
Ma Xiong

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

        Debtor.

Chapter 11
Case No. 10-47089-RJK

---

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING, AND (II) APPROVING THE DEBTOR-IN-POSSESSION LOAN THAT INCLUDES THE GRANT OF A SENIOR LIEN UNDER 11 U.S.C. § 364(d) AND PROVIDE ADEQUATE PROTECTION

The Debtor's motion (the "Motion")[3] for (i) expedited relief, and (ii) an interim order authorizing the Debtor to obtain debtor-in-possession financing came before the Court on September 28, 2010.

Based upon the Motion, arguments of counsel, the pleadings, exhibits and record in this case and the Court's findings of fact and conclusions of law stated on the record at the close of argument on September 28, 2010,

**IT IS ORDERED:**

1.      The Motion for expedited relief is granted.

2.      The Debtor is authorized, on an interim basis, to obtain debtor-in-possession financing from the DIP Lender and to grant the DIP Lender a senior lien on the Development Property pursuant to Section 364(d) of the Code.

3.      For purposes of adequate protection pursuant to Section 364(d) of the Code, the Debtor is authorized to grant Bank of America replacement liens pursuant to Section 552 of the Code in the Debtor's post-petition assets of the same type and nature as is subject to the pre-

---

[3] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Motion.

petition liens of Bank of America.  Except for the priming liens granted to the DIP Lender, such liens shall have the same priority, dignity, and effect as pre-petition liens on the pre-petition property of the Debtor.

4.    The replacement lien granted by the Debtor shall be deemed properly perfected without further act or deed on the part of the Debtor or Bank of America.

5.    Bank of America is deemed to be adequately protected with respect its collateral.


Dated:                              _____
                                    Robert J. Kressel,
                                    U.S. Bankruptcy Court Judge

In re:

PFG ASPENWALK, LLC,

              Debtor.

Chapter 11
Case No. 10-47089-RJK

---

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING, AND (II) APPROVING THE DEBTOR-IN-POSSESSION LOAN THAT INCLUDES THE GRANT OF A SENIOR LIEN UNDER 11 U.S.C. § 364(d) AND PROVIDE ADEQUATE PROTECTION**

---

The Debtor's motion (the "Motion")[4] for (i) expedited relief, and (ii) a final order authorizing the Debtor to obtain debtor-in-possession financing came before the Court on October 13, 2010.

Based upon the Motion, arguments of counsel, the pleadings, exhibits and record in this case and the Court's findings of fact and conclusions of law stated on the record at the close of argument on October 13, 2010,

**IT IS ORDERED:**

1.      The Debtor is authorized, on an interim basis, to obtain debtor-in-possession financing from the DIP Lender and to grant the DIP Lender a senior lien on the Development Property pursuant to Section 364(d) of the Code.

2.      The Debtor is authorized to obtain debtor-in-possession financing from the DIP Lender and to grant the DIP Lender a senior lien on the Development Property pursuant to Section 364(d) of the Code.

---

[4] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Motion.

3. The Debtor is authorized to draw $250,000.00 under the DIP Loan on the date of this order.

4. After either notice and hearing or Bank of America's consent, the Debtor will be authorized to $452,500.00 under the DIP Loan on November 1, 2010.

5. After either notice and hearing or Bank of America's consent, the Debtor will be authorized to $452,500.00 under the DIP Loan on January 1, 2011.

6. For purposes of adequate protection pursuant to Section 364(d) of the Code, the Debtor is authorized to grant Bank of America replacement liens pursuant to Section 552 of the Code in the Debtor's post-petition assets of the same type and nature as is subject to the pre-petition liens of Bank of America. Except for the priming liens granted to the DIP Lender, such liens shall have the same priority, dignity, and effect as pre-petition liens on the pre-petition property of the Debtor.

7. The replacement lien granted by the Debtor shall be deemed properly perfected without further act or deed on the part of the Debtor or Bank of America.

8. Bank of America is deemed to be adequately protected with respect its collateral.

Dated: _____

Robert J. Kressel,
U.S. Bankruptcy Court Judge