## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In the Matter of:                               Case No. 10-47089-RJK

PFG ASPENWALK, LLC,                      Chapter 11

            Debtor.                         Honorable Robert J. Kressel

_____/

## BANK OF AMERICA'S NOTICE OF HEARING AND MOTION FOR DETERMINATION THAT PFG ASPENWALK, LLC'S BANKRUPTCY CASE IS A SINGLE ASSET REAL ESTATE CASE PURSUANT TO BANKRUPTCY CODE SECTION 101(51)(B)

1.      Bank of America, N.A. ("Bank of America"), by its attorneys, Miller, Canfield, Paddock and Stone, P.L.C., moves the court for a determination that the Debtor's bankruptcy case is a single asset real estate case ("SARE") pursuant to 11 U.S.C. § 101(51)(B) and is thus subject to 11 U.S.C. § 362(d)(3) ("Motion").  Bank of America hereby gives notice of hearing pursuant to Local Rules 9013-1, 9013-2(a), and 9013-3(a)(1).

2.      The court will hold a hearing on this motion at **10:00 a.m. on January 5, 2011**, or as soon thereafter as counsel can be heard before the Honorable Robert J. Kressel, in Courtroom 8W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, or as soon thereafter as counsel may be heard.

3.      Any response to this motion must be filed and served by delivery or by mail not later than **December 30, 2010**, which is five (5) days (including Saturdays, Sundays, and holidays as determined under FRBP 9006(a)(1)).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      On September 23, 2010 ("Petition Date"), the Debtor filed a petition for relief with this court under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

5.     This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure ("Federal Rule") 5005, and Local Rule 1070-1.

6.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

7.     Venue of this Motion is proper under 28 U.S.C. § 1409.

8.     The relief sought is predicated on Bankruptcy Code §§ 101(51)(B) and 362(d)(3).

9.     Since the Petition Date, the Debtor has operated its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

10.    No creditors' or other official committee has yet been appointed pursuant to Bankruptcy Code § 1102.

11.    The primary parties-in-interest have been served with this Motion.

## FACTUAL BACKGROUND

12.    The Debtor is the owner of a 14-unit apartment building located at 404 Park Avenue, Aspen, Colorado ("Property").  The Property is the only tangible property owned by the Debtor.  The Property generates income by leasing the units in the building.  *See* Debtor's Schedule A.  This is the sole real property owned by the Debtor.  *See* Thomas Salmen Deposition at 53.2 – 54.5.[1]  The Debtor is also a party to a Joint Development Agreement and an Agreement to Buy and Sell Real Estate ("Sale Agreement"), each dated June 26, 2006, with the Aspen-Pitkin County Housing Authority.  *See* DIP Financing Motion ¶ 9.[2]  Under the Joint Development Agreement and the Sale Agreement, the Debtor and the Aspen-Pitkin County Housing Authority agreed to consolidate the

---

[1] Relevent portions of the transcript are attached as Exhibit 4.

[2] The "DIP Financing Motion" was filed by the Debtor under the caption Notice of Hearing and Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide Adequate Protection. [Doc. No. 6].

Property with an adjacent parcel located at 414 Park Circle, Aspen, Colorado,[3] and to construct a single building containing 14 free-market units, 24 deed restricted affordable units, and 53 underground parking spaces to be purchased by the Debtor. *Id.* at 10. The only other assets listed on the Debtor's schedules are an insurance policy and an account receivable in the amount of $4,580 from Petters Real Estate Group. *See* Debtor's Schedule B.

13. Before the Debtor can begin to demolish the existing apartment building on the Property or to construct the Project, it must obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD") approval for the Project from the Aspen City Council. In or about October 2007, the Debtor submitted an application to the Aspen City Council requesting Conceptual PUD approval for the Project. On October 27, 2008, the Aspen City Council passed Resolution No. 74, granting the Debtor Conceptual PUD approval for a period of one year. *See* Exhibit 1, Resolution No. 74, at 3. On September 28, 2009, the Debtor submitted a request for an extension to the Conceptual PUD approval. *See* Exhibit 2, Resolution No. 84 at 1. On October 13, 2009, the Aspen City Council passed Resolution No. 84, granting the Debtor's request and extending Conceptual PUD approval until October 28, 2010. *See* Exhibit 2.

14. The Debtor submitted its application for Final PUD approval on October 12, 2010. *See* Verified Statement and Affidavit of Thomas Klassen ¶ 17.[4] In the application, the Debtor explains that "The two properties that have come together to form this PUD are of originally sub-standard construction and show considerable deterioration" and that it "proposes to redevelop both

---

[3] The Debtor has an option to purchase this property for $750,000 but has not exercised it.

[4] The "Verified Statement and Affidavit of Thomas Klassen" was filed by the Debtor under the caption Debtor's Verified Statement and Affidavit of Thomas Klassen in Connection with Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide Adequate Protection [Doc. No. 27].

parcels in a unified multi-family redevelopment project. The most efficient redevelopment of either of the subject properties is through a master plan for both. A single plan will allow for greater sustainable design and construction techniques, as well as minimize construction activity in the neighborhood." *See* Exhibit 3, Final Planned Unit Development Application, Project Overview, p. 1. The Debtor alleges that it will obtain Final PUD approval around May 31, 2010. DIP Financing Motion ¶ 31.

15.     Accordingly, the Debtor's case is a single asset real estate case.

16.     If witnesses are necessary, Bank of America intends to call Michael L. Staheli of Cordes & Company, as well as the Debtor's principals, Thomas Salmen and Thomas Klassen. Bank of America may also call Dean Tateishi and Richard Carter of Bank of America to testify.

WHEREFORE, for the reasons stated in the memorandum accompanying this Motion, Bank of America respectfully requests that its Motion be granted and that this Court declare the Debtor's bankruptcy case is a single asset real estate case pursuant to Bankruptcy Code § 101(51)(B) and is thus subject to Bankruptcy Code § 362(d)(3).

Dated: December 14, 2010

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By:   /s/ Timothy A. Fusco
        Timothy A. Fusco (P13768)
        Marc N. Swanson (P71149)
        Ronald A. Spinner (P73198)
        Attorneys for Secured Creditor Bank of America, N.A.
        150 West Jefferson, Suite 2500
        Detroit, MI 48226
        (313) 963-6420
        fusco@millercanfield.com


GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.


By /s/ William J. Fisher
        William J. Fisher, #167137
        500 IDS Center
        80 South 8th Street
        Minneapolis, Minnesota 55402
        Telephone: (612) 632-3000
        Facsimile: (612) 632-4444
        william.fisher@gpmlaw.com


GP:2897244 v1

## <u>VERIFICATION</u>

I, Richard L. Carter, Senior Vice President for Bank of America, N.A., hereby verify, under penalty of perjury, that I have read the foregoing motion and exhibits, I know the contents thereof, and the information contained therein is true and correct to the best of my knowledge, information and belief.

Dated:  December 10, 2010

_____

RESOLUTION N0. 74
(SERIES OF 2008)

A RESOLUTION OF THE CITY OF ASPEN CITY COUNCIL APPROVING A CONCEPTUAL PLANNED UNIT DEVELOPMENT WITH CONDITIONS FOR ASPEN WALK, COMMONLY DESCRIBED AS 404 PARK AVENUE AND 414 PARK CIRCLE, LEGALLY DESCRIBED AS LOTS 3 AND 5, SUNNY PARK SUBDIVISION, CITY OF ASPEN, PITKIN COUNTY, COLORADO

*Parcel ID:*
*2737-074-04-705*
*2737-0741-04-701*

**WHEREAS,** the Community Development Department received an application from PFG Aspen Walk, LLC and the Aspen Pitkin County Housing Authority represented by Stan Clauson of Stan Clauson Associates, Inc., requesting the Planning and Zoning Commission recommend approval of a Conceptual Development Plan for a Planned Unit Development (PUD); and,

**WHEREAS,** an application was submitted to consider both Lots 3 and 5 of the Sunny Park Subdivision as one site to be redeveloped with a multi-family structure containing twenty-five (25) affordable housing units and fourteen (14) market rate dwelling units; and

**WHEREAS,** the application requested that the PUD's dimensional standards meet the underlying zone district standards of the Residential Multi-Family (RMF) zone district with the exception of Maximum Height, Maximum Allowable Floor Area, Minimum Setback and Minimum Off-Street Parking; and

**WHEREAS,** the Community Development Department received referral comments from the Aspen Consolidated Sanitation District, City Engineering, Building Department, Fire Protection District, and Parks Department as a result of the Development Review Committee meeting; and,

**WHEREAS,** pursuant to Section 26.445 of the Land Use Code, Conceptual PUD approval may be reviewed by the Planning and Zoning Commission at a duly noticed public hearing after considering recommendations by the Community Development Director and relevant referral agencies; and,

**WHEREAS,** during a regular meeting on April 15, 2008, the Planning and Zoning Commission opened a duly noticed public hearing to consider the project and continued the public hearing to May 20, 2008; and

**WHEREAS,** on May 20, 2008, the Planning and Zoning Commission continued the public hearing on Aspen Walk, reviewed the proposed changes of the project and design which included fourteen (14) market rate dwelling units and twenty-four (24) affordable housing units

and recommended City Council approve the Conceptual Planned Unit Development application by a four to two (4-2) vote, with the findings and conditions listed hereinafter; and,

**WHEREAS,** pursuant to Section 26.445 of the Land Use Code, Conceptual PUD approval may be reviewed by the City Council at a duly noticed public hearing after considering recommendations by the Community Development Director, Planning and Zoning Commission and relevant referral agencies; and,

**WHEREAS,** during a regular meeting on August 11, 2008, the City Council opened a duly noticed public hearing to consider the project; and,

**WHEREAS,** on August 11, 2008, the City Council at a public hearing on Aspen Walk, reviewed the project and design which included fourteen (14) market rate dwelling units and twenty-four (24) affordable housing units and continued the hearing to August 25, 2008; and,

**WHEREAS,** on August 25, 2008, at a continued public hearing the City Council considered the application and upon the applicants' request continued the public hearing to September 29, 2008; and,

**WHEREAS,** prior to the September 29th hearing date, legal charges were filed against Mr. Thomas Petters and Mr. James Wehmhoff who have an ownership interest in PFG Aspen Walk, LLC creating concern over potential financial and legal risks associated with the project; and,

**WHEREAS,** on September 29th hearing the Applicants presented an amended application which included fourteen (14) market rate dwelling units and eighteen (18) affordable housing units and requesting a variation of the allowable Floor Area Ratio to 1.28:1; and,

**WHEREAS,** the September 29th hearing was continued to October 14th and then to October 27th; and,

**WHEREAS,** at the October 27th hearing City Council considered the amended proposal and approved the Conceptual Planned Unit Development application by a four to zero (4-0) vote, with the findings and conditions listed hereinafter; and,

**WHEREAS,** Conceptual PUD approval, granted by City Council, shall only grant the ability for the applicant to submit a Final PUD and the proposed development is further subject to Final PUD review as well as additional relevant land use review approval pursuant to the Municipal Code; and,

**WHEREAS,** the Council finds that the development review standards for Conceptual PUD have been met, as long as certain conditions are implemented.

**NOW, THEREFORE BE IT RESOLVED** that the Aspen City Council approves the Conceptual Planned Unit Development for the project known as Aspen Walk, subject to the conditions listed in Section 1 below.

## Section 1:

The approval is subject to the following conditions:

A. The Final PUD application shall reflect and demonstrate compliance with the findings of the Commission and City Council, allowing for the development of eighteen (18) affordable housing units and fourteen (14) market rate units on the site. Additionally, the Final PUD may be submitted with the following dimensional standards as requested in the application:

1) The Maximum Allowable Floor Area shall be no greater than 40,968 sq. ft. or a Floor Area Ratio of 1.28:1.

2) The Maximum Allowable Height shall be no greater than 32 (excepting elevator shafts) feet as outlined in the application.

3) The Minimum Off-Street Parking standard for the affordable housing units shall be 23 spaces for the 18 affordable housing units and the Applicants will provide two electric vehicles for the use of the residents of the affordable housing.

B. The Final PUD's design shall be in substantial compliance with the conceptual PUD, inclusive of the proposal of two structures and a shared underground parking facility.

C. The Final PUD application shall include:

1) An application for Final PUD application and the proposed development is further subject to Final PUD review as well as associated land use review approvals pursuant to the Municipal Code. A pre-application conference with a member of the Community Development Department is required prior to submitting an application.

2) Delineation of all dimensional provisions to become requirements of the PUD.

D. Prior to the issuance of Final PUD approval by the City Council, the Applicants shall demonstrate to the satisfaction of the City: (1) the elimination of Thomas J. Petters and James Whemhoff from any project ownership or involvement; and (2) the project is in no way subject to any closing liability or other legal or financial risks arising from the foregoing concerns over potential financial and legal risks associated with the project.

E. Prior to the issuance of Final PUD approval by the City Council, the Applicants shall provide evidence to the satisfaction of the City Attorney of the availability of sufficient financing to pay the total cost and completion of the project. Prior to issuance of any building permits and closing of the 414 Park Circle land purchase, Applicant shall provide evidence that sufficient financing is in place to pay the total cost and completion of the project. This may include, but is not limited to, a financing commitment, a general contract, letters of credit, escrow money or completion bonds, as determined by the City Attorney in his sole discretion.

F. Conceptual Approval is explicitly conditioned upon receipt by City Council of a letter of opinion from an expert on receivership and related proceedings; said expert to be of

Council's choice and paid for by the applicant. Further, Council may, at its sole discretion upon review of expert opinion of the financial state of this application including but not limited to the disposition of this property, withdraw their approval.

## Section 2: Building
The final design shall meet adopted building codes and requirements if and when a building permit is submitted. Clarification and code compliance on the shared property line, exiting from the basement garage, exiting from the market rate units, exiting from each story, elevator openings, accessible parking spaces, accessible entries, and the 2003 Efficient Building Program is required.

## Section 3: Engineering
Final design shall be compliant with all sections of the City of Aspen Municipal Code, Title 21 and all construction and excavation standards published by the Engineering Department. Resolution of the proposed land swap (approximately 618 sq. ft. of public right of way for a certain amount of private property) shall be resolved prior to Final PUD application. Storm water drainage fees may be applicable to this development proposal.

In order to achieve the ROW swap and accomplish the pedestrian connectivity and appropriate traffic calming for the project, the alignment of Park Ave & Park Circle intersection needs to be consistent with the Park Avenue Pedestrian and Transportation Plan. This includes shifting the roadway and installing sidewalk on the east side of Park Ave. It also includes a speed table and associated crosswalk just south of the intersection. A traffic impact analysis will be required for the project.

## Section 4: Affordable Housing
Provision of affordable housing shall provide 100% replacement (Subsection 26.470.070 5.1.a.) for the existing free market units. Additional affordable housing associated with the project beyond the eighteen affordable housing units proposed on-site may be provided off-site. The existing affordable housing units to be demolished have been determined to house 17.5 employees.

## Section 5: Fire Mitigation
All codes adopted by the Aspen Fire Protection District shall be met. This includes but is not limited to access (International Fire Code (IFC), 2003 Edition, Section 503), approved fire sprinkler and fire alarm systems (IFC, as amended, Section 903 and 907).

## Section 6: Public Works
The Applicant shall comply with the City of Aspen Water System Standards, with Title 25, and with the applicable standards of Title 8 (Water Conservation and Plumbing Advisory Code) of the Aspen Municipal Code, as required by the City of Aspen Water Department. Utility placement and design shall meet adopted City of Aspen standards.

## Section 7: Sanitation District Requirements
Service is contingent upon compliance with the District's rules, regulations, and specifications, which are on file at the District office.

**Section 8: Environmental Health**
The state of Colorado mandates specific mitigation requirements with regard to asbestos. Additionally, code requirements to be aware of when filing a building permit include: a prohibition on engine idling, regulation of fireplaces, fugitive dust requirements, noise abatement and pool designs.

**Section 9: Exterior Lighting**
All exterior lighting shall meet the requirements of the City's Outdoor Lighting Code pursuant to Land Use Code Section 26.575.150, *Outdoor lighting*.

**Section 10: School Lands Dedication and Impact Fees**
The Applicant shall pay all impact fees and the school lands dedication assessed at the time of building permit application submittal and paid at building permit issuance.

**Section 11: Parks**
A formal vegetation protection plan shall be required with building permit application. Final layout of the plantings within the public right-of-way require Park Department approval and shall meet the comments from the Parks Department during the Development Review Committee meeting.

**Section 12:**
This Resolution shall not affect any existing litigation and shall not operate as an abatement of any action or proceeding now pending under or by virtue of the ordinances repealed or amended as herein provided, and the same shall be conducted and concluded under such prior ordinances.

**Section 13:**
If any section, subsection, sentence, clause, phrase, or portion of this Resolution is for any reason held invalid or unconstitutional in a court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and shall not affect the validity of the remaining portions thereof.

**APPROVED** by the City Council at a regular meeting on October 27, 2008.
Attest:

Kathryn S. Koch, City Clerk

Michael C. Ireland, Mayor    11/17/08

Approved as to form:

City Attorney    11/14/08

# RESOLUTION N0. 84
## (SERIES OF 2009)

**A RESOLUTION OF THE CITY OF ASPEN CITY COUNCIL APPROVING AN EXTENSION OF THE CONCEPTUAL PLANNED UNIT DEVELOPMENT APPROVAL GRANTED VIA RESOLUTION NO. 74 (SERIES OF 2008) FOR ASPEN WALK, COMMONLY DESCRIBED AS 404 PARK AVENUE AND 414 PARK CIRCLE, LEGALLY DESCRIBED AS LOTS 3 AND 5, SUNNY PARK SUBDIVISION, CITY OF ASPEN, PITKIN COUNTY, COLORADO**

*Parcel ID:*
*2737-074-04-705*
*2737-0741-04-701*

**WHEREAS,** the Community Development Department received a written request for a one year extension of the Conceptual PUD approval granted through Resolution No. 74 (Series of 2009) from PFG Aspen Walk, LLC and the Aspen Pitkin County Housing Authority represented by Stan Clauson of Stan Clauson Associates, Inc; and,

**WHEREAS,** the request was submitted no less than thirty days prior to the October 28, 2009, expiration date of the Conceptual PUD approval; and,

**WHEREAS,** the Conceptual PUD granted, with conditions, the applicant to submit a Final PUD application to develop 14 free-market residential units and 18 affordable housing units on the subject site; and,

**WHEREAS,** pursuant to Section 26.445.030 D., Limitations, of the Land Use Code, Conceptual PUD approval may be extended by City Council, "at its sole discretion and for good cause shown;" and,

**WHEREAS,** on October 13, 2009, the City Council considered the request for the year extension of the Conceptual PUD approval; and,

**WHEREAS,** the Council finds that good cause has been shown by the Applicants to grant a year extension of the Conceptual PUD approval.

**NOW, THEREFORE, BE IT RESOLVED** that the Aspen City Council approves a one year extension of the Conceptual Planned Unit Development granted in Resolution No. 74 (Series of 2008) subject to the conditions listed in Section 1 below.

## Section 1:
The approval is subject to the following conditions:

A. The one year extension of the Conceptual PUD approval shall expire on October 28, 2010.

B. All conditions outlined in Resolution No. 74 (Series of 2008) are valid and in effect.

**Section 2:**

This Resolution shall not affect any existing litigation and shall not operate as an abatement of any action or proceeding now pending under or by virtue of the ordinances repealed or amended as herein provided, and the same shall be conducted and concluded under such prior ordinances.

**Section 3:**

If any section, subsection, sentence, clause, phrase, or portion of this Resolution is for any reason held invalid or unconstitutional in a court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and shall not affect the validity of the remaining portions thereof.

**APPROVED** by the City Council at a regular meeting on October 13, 2009.

Attest:

_For_ **Kathryn S. Koch, City Clerk**          **Michael C. Ireland, Mayor**

Approved as to form:

~~City Attorney~~

## FINAL PUD APPLICATION

**"Aspen Walk," a joint-development between the Aspen/Pitkin County Housing Authority and Aspen Walk, LLC featuring 14 market-rate units and 18 deed-restricted housing units provided on-site, with additional off-site mitigation.**

**12 October 2010**

**Location:** 404 Park Avenue—Lot 3, Sunny Park Subdivision PID: 2737-074-04-705
414 Park Circle—Lot 5, Sunny Park Subdivision PID: 2737-074-04-701



*An application for Planned Unit Development of market-rate and deed-restricted housing, including redevelopment of existing multi-family buildings, and a code amendment for affordable sub-grade units.*

**Represented By:**



**STAN CLAUSON ASSOCIATES INC**
landscape architecture/planning/resort design

412 North Mill Street   Aspen, Colorado 81611   t.970/925-2323  f.970/920-1628
info@scaplanning.com   www.scaplanning.com

## TABLE OF CONTENTS

- Land Use Application Form
- Dimensional Requirements Form
- Project Overview and Code Response
- Attachment 1 – Vicinity Map
- Attachment 2 – Existing Conditions Surveys (404 Park Avenue & 414 Park Circle)
- Attachment 3 – Architectural Plans & Renderings
- Attachment 4 – Public Facilities
- Attachment 5 – Proposed Plat and PUD Plans
- Attachment 6 – Proposed PUD Agreement
- Attachment 7 – Proof of Ownership
- Attachment 8 – Letters of Authorization
- Attachment 9– Parcel Descriptions
- Attachment 10 – Adjacent Property Owners
- Attachment 11 – Prior Approvals
- Attachment 12 – Pre-Application Conference Summary

# ATTACHMENT 2 – LAND USE APPLICATION

**PROJECT:**

| | |
|---|---|
| Name: | **AspenWalk** |
| Location: | **404 Park Avenue and 414 Park Circle** |
| | (Indicate street address, lot & block number, legal description where appropriate) |
| Parcel ID # (REQUIRED) | **2737-074-04-705 and 2737-074-04-701** |

**APPLICANT:**

| | |
|---|---|
| Name: | **PFG AspenWalk, LLC and Aspen Pitkin County Housing Authority** |
| Address: | **2005 Cargo Road, Minneapolis, MN 55450** |
| Phone #: | **(952) 936-5531** |

**REPRESENTATIVE:**

| | |
|---|---|
| Name: | **Stan Clauson Associates, Inc.** |
| Address: | **412 N. Mill Street, Aspen, CO 81611** |
| Phone #: | **(970) 925-2323** |

**TYPE OF APPLICATION:** (please check all that apply):

| | | |
|---|---|---|
| [X] GMQS Exemption | [ ] Conceptual PUD | [ ] Temporary Use |
| [ ] GMQS Allotment | [X] Final PUD (& PUD Amendment) | [X] Text/Map Amendment |
| [ ] Special Review | [X] Subdivision | [ ] Conceptual SPA |
| [ ] ESA – 8040 Greenline, Stream Margin, Hallam Lake Bluff, Mountain View Plane | [ ] Subdivision Exemption (includes condominiumization) | [ ] Final SPA (& SPA Amendment) |
| [ ] Commercial Design Review | [ ] Lot Split | [ ] Small Lodge Conversion/ Expansion |
| [ ] Residential Design Variance | [ ] Lot Line Adjustment | [ ] Other: |
| [ ] Conditional Use | | |

**EXISTING CONDITIONS:** (description of existing buildings, uses, previous approvals, etc.)

See attached description of the existing buildings and uses.  Conceptual PUD approval was granted via

Resolution No. 74 (series of 2008) and extended via Resolution No. 84 (series of 2009).

**PROPOSAL:** (description of proposed buildings, uses, modifications, etc.)

Applicants propose redeveloping two lots with eighteen affordable housing units and fourteen market rate units

with additional affordable housing mitigation provided via the purchase of affordable housing credits.

**Have you attached the following?**                    **FEES DUE: $ $4,170.00**

[X] Pre-Application Conference Summary
[X] Attachment #1, Signed Fee Agreement
[X] Response to Attachment #3, Dimensional Requirements Form
[X] Response to Attachment #4, Submittal Requirements- Including Written Responses to Review Standards
[ ] 3-D Model for large project

**All plans that are larger than 8.5" X 11" must be folded.  A disk with an electric copy of all written text (Microsoft Word Format) must be submitted as part of the application.  Large scale projects should include an electronic 3-D model.  Your pre-application conference summary will indicate if you must submit a 3-D model.**

# ATTACHMENT 3
## DIMENSIONAL REQUIREMENTS FORM

Project: __AspenWalk__
Applicant: __PFG AspenWalk, LLC and Aspen Pitkin County Housing Authority__
Location: __404 Park Avnue and 414 Park Circle__
Zone District: __RMF-PUD__
Lot Size: __17,550 sq. ft. (Lot 3) + 15,224 sq. ft (Lot 5) = 32,774 sq. ft. (.75 AC)__
Lot Area: __.75 AC__
(for the purposes of calculating Floor Area, Lot Area may be reduced for areas within the high water mark, easements, and steep slopes. Please refer to the definition of Lot Area in the Municipal Code.)

Commercial net leasable: *Existing:* __0__     *Proposed:* __0__
Number of residential units: *Existing:* __25__     *Proposed:* __18 deed restricted + 14 market rate__
Number of bedrooms: *Existing:* __27__     *Proposed:* __70__

Proposed % of demolition (Historic properties only):_____

**DIMENSIONS:**

Floor Area: *Existing:* __17,665__   *Allowable:* __49,161__   *Proposed:* __40,968__

Principal bldg. height: *Existing:* __+/- 32'__   *Allowable:* __32'__   *Proposed:* __32'__

Access. bldg. height: *Existing:* _____   *Allowable:* _____   *Proposed:* _____

On-Site parking: *Existing:* __+/-21__   *Required:* __39__   *Proposed:* __52__

% Site coverage: *Existing:* __+/-26%__   *Required:* __NA__   *Proposed:* __53.7%__

% Open Space: *Existing:* __+/-54%__   *Required:* __NA__   *Proposed:* __46.3%__

Front Setback: *Existing:* __7'__   *Required:* __5'__   *Proposed:* __5'__

Rear Setback: *Existing:* __10'__   *Required:* __5'__   *Proposed:* __5'__

Combined F/R: *Existing:* _____   *Required:* _____   *Proposed:* _____

Side Setback: *Existing:* __10'__   *Required:* __5'__   *Proposed:* __5'__

Side Setback: *Existing:* __10'__   *Required:* __5'__   *Proposed:* __5'__

Combined Sides: *Existing:* _____   *Required:* _____   *Proposed:* _____

Distance Between Buildings: *Existing* __NA__   *Required:* __0__   *Proposed:* __NA__

Existing non-conformities or encroachments:_____

Variations requested: _____

## PROJECT OVERVIEW

This application is submitted for Final PUD approval of AspenWalk (404 Park Avenue and 414 Park Circle). Conceptual PUD approval was granted by Resolution No. 74 (Series of 2008) and extended by Resolution No. 84 (Series of 2009). The current extension expires on 28 October 2010. The Conceptual PUD contemplated redeveloping the current sites with eighteen (18) affordable housing units and fourteen (14) market rate units. Additional affordable housing units to meet the 100% replacement of the identified 17.5 employees currently housed will to be provided offsite via the purchase of affordable housing credits.

### EXISTING CONDITIONS

The total site consists of two properties: 404 Park Avenue, an existing non-deed restricted multi-family residence, and 414 Park Circle, a deed-restricted multi-family residence. The 404 Park Avenue property is 17,550 SF (0.40 acres) and is located at the intersection of Park Avenue and Park Circle. This intersection was formerly a cul-de-sac. The existence of the former cul-de-sac is realized in the odd shape of the westerly boundary of this parcel where an elliptical shape occurs near the intersection. Similarly, a small portion of the southwest corner of the property is now located in the right-of-way due to relocation of Park Avenue when the cul-de-sac was opened as an intersection for Park Circle.

The 404 Park Avenue property is currently developed with a grouping of buildings, containing a total of 14 market rate housing units. This parcel is unique in its location between both the Park Avenue/Park Circle intersection and the Midland Avenue/Park Avenue intersection. The shabby and dated buildings are highly visible in this east end neighborhood. As it currently exists, there is no organized off-street parking or significant landscape features, further contributing to the tired quality of this property.

The 414 Park Circle property, also referred to as the Smuggler Mountain Apartments, owned by the Aspen/Pitkin County Housing Authority (APCHA), is a single structure of 11 units on 15,224 SF (0.34 acres) with an off-street parking lot. Over the past seven years, APCHA has been evaluating the costs of replacing a failing roof and other repairs versus complete replacement of the building. APCHA has limited funds for renovations, making a major renovation or redevelopment nearly impossible without the assistance of the City or some other entity.

### PROPOSAL

In accordance with Resolution No. 74 (Series of 2008) the applicant proposes to redevelop both parcels in a unified multi-family redevelopment project. The most efficient redevelopment of either of the subject properties is through a master plan for both. A single plan will allow for greater sustainable design and construction techniques, as well as minimize construction activity in the neighborhood.

The project will include eighteen (18) deed-restricted units and fourteen (14) market rate units featuring twenty-three (23) spaces for the 18 affordable housing units as well as two (2) electric vehicles for the use of the residents of the affordable housing. An additional twenty-nine (29) spaces will be provided for the market rate units for a total of fifty-two (52) on-site parking spaces. This proposal meets the multi-family replacement program requirements, providing 100% affordable housing mitigation. The Final PUD application reflects and demonstrates compliance with the findings of the Planning and Zoning Commission and City Council by submitting the following dimensional standards:

- The maximum Allowable Floor Area will be no greater than 40,968 sq. ft. or a Floor Area Ratio of 1.25:1 (The FAR represents a reduction from the previously approved 1.28:1);
- The Maximum Allowable Height will be no greater than thirty-two (32) feet with the exception of elevator shafts as outlined in the Conceptual PUD application.

## COMMON AREA MAINTENANCE

AspenWalk proposes to have two homeowners associations: one for the affordable housing and one for the market-rate units. It has been shown that separate HOAs work better than a single HOA, each respecting the members tolerance for expenditures, and desire for varying levels of finish and replacement frequency,. Accordingly, there will be two HOAs for the overall project, with a Homeowners Council design to coordinate activities between the two HOAs where required. Each HOA will have a set of "Covenants, Conditions, and Restrictions" applicable to their building within the complex.

Funding for the maintenance of the parkway areas within the City of Aspen right-of-way will be undertaken by an assessment from each HOA. The affordable housing homeowners' association dues shall be a percentage of the free-market residential development's dues equal to the affordable housing's market value compared to that of the free-market residential component's market value in the complex. Maintenance for any other shared spaces will be coordinated through the Homeowners Council based on a similar proportionality of investment. Maintenance of common areas within each of the buildings will be the exclusive responsibility of their respective HOAs.

## OVERALL GOALS OF THE PROPOSED PUD

The two properties that have come together to form this PUD are of originally sub-standard construction and show considerable deterioration. While regular maintenance has been performed on both properties, they have now outlived their design life and a major reconstruction of the existing buildings would be prohibitively expensive. The proposed PUD will provide new affordable housing units for the benefit of the community, deed restricted units where local-serving housing was previously not deed-restricted, off-street parking to reduce overall congestion, and public amenities such as curbs, sidewalks and, street trees. The overall appearance and function of the neighborhood will be greatly improved. As a public-private cooperative project for affordable housing, this is one of the first to that goal recommended by the 2000 Aspen Area Community Plan. Key AACP goals addressed by the project include:

- Maintains development within the Urban Growth Boundary
- Contributes to providing affordable housing for permanent local residents
- Does not require Growth Management Allotments
- Is within walking distance to the downtown core
- Has access to public transit/Is on a RFTA bus route
- Is a public-private partnership balancing deed-restricted and market rate considerations
- Is an appropriate architectural design that reflects the context of the neighborhood.

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF MINNESOTA

3  _____

4  In Re:                Chapter 11

5  PFG AspenWalk, LLC,        Case No. 10-47089-rjk

6       Debtor.

7  _____

8

9       DEPOSITION OF

10      THOMAS R. SALMEN

11      Taken October 18, 2010

12

13

14

15

16

17

18

19

20

21

22

23   CINDY L. SCHULTZ, RMR, CRR, CLR

24

25

---

Page 2

1       The deposition of THOMAS R. SALMEN, taken on

2  October 18, 2010, commencing at 10:18 a.m., taken at

3  150 South Fifth Street, Minneapolis, Minnesota, before

4  Cindy L. Schultz, Registered Merit Reporter, Certified

5  Realtime Reporter, Certified LiveNote Reporter, and

6  Notary Public of and for the State of Minnesota.

7

8       A P P E A R A N C E S

9

10 ON BEHALF OF BANK OF AMERICA:

11   Timothy A. Fusco, Esq.

12   MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

13   Suite 2500

14   150 West Jefferson

15   Detroit, Michigan 48226-4415

16   313.496.8435

17   fusco@millercanfield.com

18       and

19   William J. Fisher, Esq.

20   GRAY PLANT MOOTY

21   500 IDS Center

22   80 South Eighth Street

23   Minneapolis, Minnesota 55402

24   612.632.3000

25   william.fisher@gpmlaw.com

---

Page 3

1  APPEARANCES (Continued):

2

3  ON BEHALF OF PFG ASPENWALK, LLC:

4    Lara O. Glaesman, Esq.

5    LEONARD, STREET AND DEINARD, PA

6    Suite 2300

7    150 South Fifth Street

8    Minneapolis, Minnesota 55402

9    612.335.7074

10   lara.glaesman@leonard.com

11

12

13

14

15

16

17

18

19

20       NOTE:  The original transcript will be filed

21 with MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

22 pursuant to the applicable Rules of Civil Procedure.

23

24

25

---

Page 4

1            I N D E X

2  WITNESS:  THOMAS R. SALMEN

3

4  EXAMINATION BY                         PAGE

5    Mr. Fusco. . . . . . . . . . . . . .8

6

7  DOCUMENT/INFORMATION REQUESTS

8    1)  Amended Operating Agreement. . . . . . 44

9    2)  Written proposals. . . . . . . . . 75

10   3)  Documents evidencing comparables/methodology/

11       capitalization factor used to come up with

12       the development property value. . . . . 83

13   4)  People contacted re DIP financing. . . . 88

14   5)  Offering Memorandums sent out. . . . . 90

15   6)  Written proposals to the bank other than the

16       9/3/09 proposal. . . . . . . . . . 94

17

18 EXHIBITS MARKED                         PAGE

19 Exhibit 1:  Notice of Hearing and Motion for (I)

20       Expedited Relief, (II) Interim and Final Orders

21       Authorizing Debtor to Obtain Debtor-In-

22       Possession Financing and Approving the Debtor-

23       In-Possession Loan that Includes the Grant of

24       or a Senior Lien Under 11 U.S.C. 364(d) and

25       Provide Adequate Protection. . . . . 57, 83, 87

Page 41

1 solicited interest among members of PFG AspenWalk, with
2 the exception of James Wehmhoff and Peters Real Estate
3 Group LLC, at various points in time since the
4 receivership started and the loan went into default to
5 -- to gauge their interest as to whether they would
6 want to contribute additional capital.
7     Q.   When you say -- Was this done in writing?
8 Was this done by telephone? Was this done by meeting?
9 How did you do this?
10     A.   Via e-mail, writing, also follow-up telephone
11 conversations with certain individuals.
12     Q.   Could you tell me which of the ones you
13 solicited on this list?
14     A.   Well, everybody's been solicited.
15     Q.   All right.
16     A.   Yeah, we sent correspondence.
17     Q.   No. You said some. So the answer is really
18 you --
19     A.   Yeah, they've all received correspondence.
20 Certain ones who, you know, we thought were -- were
21 better candidates, if you will, to potentially meet
22 some type of capital call we've had follow-on
23 conversations with. As you could probably imagine, I
24 mean, certain people are more interested in our weekly
25 progress -- our progress raising capital than others.

Page 42

1     Q.   All right. And none of them have -- Have any
2 of them shown any interest in -- in contributing
3 additional money either in the form of a loan or as --
4 as capital?
5     A.   To my knowledge, none have shown interest.
6     Q.   And have you explained to all of them that in
7 the absence of capital, it is not unlikely the interest
8 will be worth nothing?
9     A.   Well, in our materials circulated, we have
10 explained the current capitalization and various
11 outcomes that could -- could occur. Now, what each one
12 concluded, I can't answer.
13     Q.   Does -- PFG AspenWalk is the owner of the 404
14 Park property, correct?
15     A.   Correct.
16     Q.   And that was purchased in 2007; am I right?
17     A.   Correct.
18     Q.   All right. For approximately 12.5 million or
19 thereabouts?
20     A.   Approximately, yes.
21     Q.   Okay. And for whom was it purchased? A
22 private individual or. . .
23     A.   Yes, a partnership that consisted of, I
24 believe, two or three individuals.
25     Q.   And as part of your transaction with

Page 43

1 PrimePoint, you were assigned the option on the
2 adjacent 405 piece?
3     A.   We were assigned their rights under the
4 Purchase Agreement of 414 Park Circle --
5     Q.   Okay.
6     A.   -- as well as their rights under the Joint
7 Development Agreement with the Aspen Pitkin County
8 Housing Authority.
9     Q.   After the Receiver resigned his interest, did
10 you amend the LLC agreement or enter into new
11 operational documents?
12     A.   The partnership LLC agreement?
13     Q.   The LLC agreement, yes.
14     A.   We have made some resolutions as it pertains
15 to that, and --
16     Q.   What do you mean "as it pertains"? Other
17 than authorizing the bankruptcy filing.
18     A.   Well, we authorized--I believe you have
19 this--the bankruptcy filing --
20     Q.   Yes.
21     A.   -- the appointment of -- of Mr. Hay as the
22 manager, you know, the delegation of authority to
23 Mr. Klassen and I. We've recognized the abandonment of
24 the Petters Real Estate Group and James Wehmhoff's
25 interest.

Page 44

1     Q.   But have you actually amended the Operating
2 Agreement?
3     A.   I don't know the status of that as far as
4 whether or not the lawyers have or not.
5         MR. FUSCO: Would you check on that
6 and see if there's an amended Operating
7 Agreement?
8     Q.   For the past -- from the date the Receiver
9 was put in place, has AspenWalk received any income of
10 any kind other than the income from the rental units?
11     A.   There's vending income.
12     Q.   But, again, that's on site?
13     A.   Correct.
14     Q.   Vending machines provided for the tenants,
15 the laundry, the washing machines, those things?
16     A.   Correct.
17     Q.   Okay.
18         What have been the primary expenses of the
19 LLC over the past two years?
20     A.   The regular monthly property operating
21 expenses. There's some repairs and maintenance that
22 are fairly regular. Property insurance and the real
23 estate taxes I would say are the primary expenses.
24     Q.   Okay. Have the principals -- and -- and when
25 I say "principals," for ease of reference, I'm going to

Page 53

1    Q.  Purchase.
2    A.  Purchase of real estate, no.
3    Q.  Okay.  Are there any other purchase
4  agreements for anything to which PFG AspenWalk's a
5  party?
6    A.  Purchase agreements?  Not to my knowledge.
7    Q.  Okay.  So it is safe to say the assets of the
8  Debtor consist of the 404 Park real estate, which is
9  owned, correct?
10   A.  That's -- I would say that's one of the
11 assets, yes.
12   Q.  The Purchase Agreement to which AspenWalk is
13 a party?
14   A.  On 414 Park Circle --
15   Q.  On 414?
16   A.  -- I would say that's an asset, as well, yes.
17   Q.  Okay.  And whatever personal property may be
18 located on the 404 site relating to the rental units?
19   A.  That would be an asset, as well.
20   Q.  Okay.  Any other assets of which you're
21 aware?
22   A.  I'd say that the Joint Development Agreement
23 with the Aspen Pitkin County Housing Authority is an
24 asset.
25   Q.  All right.

Page 54

1    A.  And I would also say that the current
2  conceptual approval that we have from the City of Aspen
3  is -- is another primary asset.
4    Q.  Okay.  Any others?
5    A.  Those are the primary assets.
6    Q.  Is AspenWalk engaged in any substantial
7  business other than the lease of the rental units at
8  404 and the -- at this point seeking final PUD
9  approval?
10   A.  Those are the two primary activities of
11 AspenWalk.
12   Q.  You're currently the PFG AspenWalk party to a
13 number of leases -- apartment units at 404 Park?
14   A.  My understanding is they're oral leases.
15   Q.  Where is the money being deposited, the
16 rental payments?
17   A.  Since the bankruptcy filing, they're
18 deposited in a Debtor-In-Possession account with
19 Crown Bank in Edina, Minnesota.
20   Q.  Okay.
21       MR. FUSCO:  Stop the record.
22       (A discussion was had off the record.)
23 BY MR. FUSCO:
24   Q.  Have you received rents for October?
25   A.  Yes, we have.

Page 55

1    Q.  Okay.  And what have you utilized -- what
2  have you done with those rents after you deposited them
3  in the Debtor-In-Possession account?
4    A.  We posted a $5000 deposit with the
5  Debtor-In-Possession lender that we're negotiating
6  with.
7    Q.  Okay.
8    A.  We wired approximately $4000 to our planner
9  to submit to the City of Aspen, as we were required to
10 pay as a fee as part of our application for final PUD
11 approval, and we've written a check for $120 to secure
12 a private mailbox to receive mail, and we've also paid
13 the property insurance for the month of October, I
14 believe it is.
15   Q.  All right.  Would you turn to page 15 of
16 Exhibit 8.  That's the schedules.  "SCHEDULE D -
17 CREDITORS HOLDING SECURED CLAIMS."
18   A.  Okay.
19   Q.  You list the Bank of America claim as
20 $6,408,373.93.  Can you tell me how you came up with
21 that number and what it includes?
22   A.  My recollection is that it's the figure that
23 was in the Settlement Agreement of the Receiver.
24   Q.  Does that include the swap liability?
25   A.  You'd need to ask the bank.  I don't recall.

Page 56

1    Q.  Well, I -- I think in --
2    A.  Well --
3    Q.  -- your schedule you --
4    A.  -- I guess we could look and see --
5    Q.  -- list the swap --
6    A.  -- if the swap is broken out somewhere --
7    Q.  -- obligation is --
8    A.  -- else.
9        COURT REPORTER:  Okay, you guys are
10 way talking over each other.  You can't do
11 that.
12       MS. GLAESMAN:  All right.  Hold on.
13       COURT REPORTER:  The last full answer
14 -- question and answer I have:
15   "Does that include the swap liability?"
16   "ANSWER:  You'd need to ask the bank.  I
17 don't recall."
18       And then everything, talking over each
19 other.
20   Q.  All right, if you'll -- Mr. Salmon [sic], if
21 you'll look to page 20, "CREDITORS HOLDING UNSECURED
22 NONPRIORITY CLAIMS," the second item is Bank of
23 America, N.A., Swap Agreement with PFG AspenWalk,
24 628,661.  Can you tell me why you listed that as an
25 unsecured claim as opposed to part of a secured claim

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In the Matter of:

Case No. 10-47089-RJK

PFG ASPENWALK, LLC,

Chapter 11

        Debtor.

Honorable Robert J. Kressel

_____/

## MEMORANDUM IN SUPPORT OF BANK OF AMERICA'S MOTION FOR DETERMINATION THAT PFG ASPENWALK, LLC'S BANKRUPTCY CASE IS A SINGLE ASSET REAL ESTATE CASE PURSUANT TO BANKRUPTCY CODE SECTION 101(51)(B)

**Miller, Canfield, Paddock & Stone, PLC**

**Timothy A. Fusco**
**Marc N. Swanson**
**Ronald A. Spinner**
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
fusco@millercanfield.com

**Attorneys for Bank of America, N.A.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT IN SUPPORT OF OBJECTION ........................................................................ 1

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND .............................................................................................. 1

III.    ARGUMENT ................................................................................................... 3

        A.      The Property Constitutes a Single Property or Project ....................... 4

        B.      The Property Generates Substantially All of the Income of the Debtor ............ 6

        C.      The Debtor is Not Involved in any Substantial Business Other than the Operation of the Property and Activities Incidental Thereto ............... 7

IV.    CONCLUSION ............................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*In re Cambridge Woodbridge Apartments, L.L.C.*, 292 B.R. 832 (Bankr. N.D. Ohio 2003) ............4

*In re CBJ Dev., Inc.*, 202 B.R. 467 (9th Cir. B.A.P. 1996)...................................................8

*In re Kara Homes,* 363 B.R. 399 (Bankr. D.N.J. 2007)..........................................3, 7, 8, 9

*In re Kkemko, Inc.*, 181 B.R. 47 (Bankr. S.D. Ohio. 1995) ...............................................4

*In re MTM Realty Trust*, 2009 WL 612147 (Bankr. D.N.H. 2009)....................................6

*In re Philmont Dev. Co.*, 181 B.R. 220 (Bankr. E.D. Pa. 1995)..............................4, 5, 6

*In re Pioneer Austin E. Dev. I, Ltd.*, 2010 WL 2671732 (Bankr. N.D. Tex. 2010) .................6, 7, 9

*In re Rear Still Hill Road, LLC*, 2007 WL 2935483 (Bankr. D. Conn 2007) ...................5

*In re Sargent Ranch, LLC*, 2010 WL 3189714 (Bankr. S.D. Cal. 2010) .........................5

*In re Syed*, 238 B.R. 133 (Bankr. N.D. Ill. 1999)............................................................4

*In re The McGreals*, 201 B.R. 736 (Bankr. E.D. Pa. 1996)..............................................5

*Webb Mtn, LLC*, 2008 WL 656271 (Bankr. E.D. Tenn. 2008) .........................................5

## STATUTES

11 U.S.C. § 101(51B) ................................................................................... passim

11 U.S.C. § 362(d)(3) ...........................................................................................3, 8, 11

ARGUMENT IN SUPPORT OF OBJECTION

## I.    INTRODUCTION

PFG AspenWalk, LLC's ("Debtor") sole tangible asset is a single apartment building that generates all of its income.  The only business the Debtor conducts is collecting rent from its tenants and trying to formulate a plan to further develop real estate.  As a result, the Debtor's case is a single asset real estate case pursuant to Bankruptcy Code § 101(51B).

## II.    BACKGROUND

The Debtor is the owner of a 14-unit apartment building located at 404 Park Avenue, Aspen, Colorado ("Property").  The Property is the only tangible property owned by the Debtor.  The Property generates income by leasing the units in the building.  *See* Debtor's Schedule A.  The Debtor is also a party to a Joint Development Agreement and an Agreement to Buy and Sell Real Estate ("Sale Agreement"), each dated June 26, 2006, with the Aspen-Pitkin County Housing Authority.  *See* DIP Financing Motion ¶ 9.[1]  Under the Joint Development Agreement and the Sale Agreement, the Debtor and the Aspen-Pitkin County Housing Authority agreed to consolidate the Property with an adjacent parcel located at 414 Park Circle, Aspen, Colorado,[2] and to construct a single building containing 14 free-market units, 24 deed restricted affordable units, and 53 underground parking spaces to be purchased by the Debtor.  *Id.* at 10.  The only other assets listed on the Debtor's schedules are an insurance policy and an account receivable in the amount of $4,580 from Petters Real Estate Group.  *See* Debtor's Schedule B.

---

[1] The "DIP Financing Motion" was filed by the Debtor under the caption Notice of Hearing and Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide Adequate Protection. [Doc. No. 6].

[2] The Debtor has an option to purchase this property for $750,000 but has not exercised it.

Before the Debtor can begin to demolish the existing apartment building on the Property or to construct the Project, it must obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD") approval for the Project from the Aspen City Council. In or about October 2007, the Debtor submitted an application to the Aspen City Council requesting Conceptual PUD approval for the Project. On October 27, 2008, the Aspen City Council passed Resolution No. 74, granting the Debtor Conceptual PUD approval for a period of one year. *See* Exhibit 1, Resolution No. 74, at 3. On September 28, 2009, the Debtor submitted a request for an extension to the Conceptual PUD approval. *See* Exhibit 2, Resolution No. 84 at 1. On October 13, 2009, the Aspen City Council passed Resolution No. 84, granting the Debtor's request and extending Conceptual PUD approval until October 28, 2010. *See* Exhibit 2.

The Debtor submitted its application for Final PUD approval on October 12, 2010. *See* Verified Statement and Affidavit of Thomas Klassen ¶ 17.[3] In the application, the Debtor explains that "The two properties that have come together to form this PUD are of originally sub-standard construction and show considerable deterioration" and that it "proposes to redevelop both parcels in a unified multi-family redevelopment project. The most efficient redevelopment of either of the subject properties is through a master plan for both. A single plan will allow for greater sustainable design and construction techniques, as well as minimize construction activity in the neighborhood." *See* Exhibit 3, Final Planned Unit Development Application, Project Overview, pp. 1-2. The Debtor alleges that it will obtain Final PUD approval around May 31, 2010. DIP Financing Motion ¶ 31.

---

[3] The "Verified Statement and Affidavit of Thomas Klassen" was filed by the Debtor under the caption Debtor's Verified Statement and Affidavit of Thomas Klassen in Connection with Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide Adequate Protection [Doc. No. 27].

## III.  ARGUMENT

This bankruptcy case is a single asset real estate case under Bankruptcy Code § 101(51B) and is therefore subject to the requirements set forth in Bankruptcy Code § 362(d)(3).

Bankruptcy Code § 101(51B) provides that the term single asset real estate means

> real property constituting a single property or single project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B).

Three criteria must be satisfied for a bankruptcy case to fall within the scope of section 101(51B):

> (1) The real property must constitute a single property or project, and if it is residential real property, it must consist of four or more residential units;
>
> (2) The real property must generate substantially all of the income of the debtor; and
>
> (3) The debtor must not be involved in any substantial business other than the operation of its real property and the activities incidental thereto.

*In re Kara Homes,* 363 B.R. 399, 404 (Bankr. D.N.J. 2007).

A Motion for determination of SARE status is properly filed as a motion under Federal Rule 9013, which becomes a contested matter under Federal Rule 9014 if an objection is filed. *See* Federal Rule 7001 (listing actions requiring the filing of an adversary proceeding); *see also*, *e.g.*, *In re Sundale, Ltd.*, 400 B.R. 890, 897 (Bankr. S.D. Fla. 2009) (discussing disposition of earlier motion for determination of SARE status); *In re Costa Bonita Beach Resort, Inc.*, 2009 WL 2900035 (Bankr. D.P.R. July 24, 2009) (granting motion for determination of SARE status); *In re Charterhouse Boise Downtown Props., LLC*, 2008 WL 4735264 (Bankr. D. Idaho Oct. 24,

2008) (same); *In re Club Golf Partners, L.P.*, 2007 WL 1176010 (E.D. Tex. Feb. 15, 2007) (unpub) (denying motion for SARE status and treating it as a contested matter since an objection was filed). Thus, Bank of America files the Motion under Federal Rule 9014 and Local Rules 9013-1, 9013-2, and 9013-3.

### A. The Property Constitutes a Single Property or Project

This requirement is satisfied because the sole real property asset owned by the Debtor (as evidenced by the Debtor's schedules) is the 14-unit apartment building located on the Property. *See also* Thomas Salmen Deposition at 53:2-54:5.[4] Several courts have held that an apartment building constitutes a "single property" under section 101(51B). *See In re Kkemko, Inc.*, 181 B.R. 47, 50 (Bankr. S.D. Ohio. 1995) ("Thus, apartment buildings and residential projects are within the scope of the definition."); *In re Philmont Dev. Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995) ("The common situation, i.e., typically an apartment building, office building or 'strip' shopping center . . . clearly falls within the criteria enumerated by section 101(51B)."); *In re Syed*, 238 B.R. 133, 140 (Bankr. N.D. Ill. 1999) (same); *In re Cambridge Woodbridge Apartments, L.L.C.*, 292 B.R. 832 (Bankr. N.D. Ohio 2003) (holding that the debtor's apartment building was a single property).

Furthermore, even if this Court were to consider the Debtor's unexercised option under the Sale Agreement to purchase the neighboring parcel of land to somehow constitute a separate piece of property from 404 Park Avenue, both properties together constitute a "single project" under section 101(51B). If two or more separate properties are linked together in some fashion in a common plan or scheme involving their use they are collectively a "singe project". *In re Rear Still Hill Rd., LLC*, 2007 WL 2935483 (Bankr. D. Conn 2007) (*quoting In re The McGreals*, 201 B.R. 736, 742 (Bankr. E.D. Pa. 1996)).

---

[4] Mr. Salmen is the Debtor's Vice President of Finance. *See* Debtor's Schedule at 6 of 47. Relevant portions of his deposition are attached as Exhibit 4.

In *In re Webb Mtn, LLC*, 2008 WL 656271 (Bankr. E.D. Tenn. 2008), the court held that the debtor's five separate contiguous parcels of real property which it acquired from different parties at different times were a "single project." *Id.* at * 4. The debtor planned to construct two golf courses, a luxury hotel, a convention center, a spa, a retail commercial center, a development of single-family homes and condominiums on the five parcels. *Id.* Based upon the differing uses and goals for these projects, the debtor argued that they could not be lumped within the "single project" label because there "are multiple uses planned for the property, its gross income would not be generated from one source, nor would the income produced be passive, as the business conducted by the debtor following development would be varied and substantial." *Id.* The court rejected the debtor's argument, holding that the five properties constituted a "single project" because even though the debtor had plans to development a number of different businesses on the five properties, the "plans are still part and parcel of one large land development." *Id.* at *5.

Similarly, the court in *In re Sargent Ranch, LLC*, 2010 WL 3189714 (Bankr. S.D. Cal. 2010), held that the debtor's 6,400 acres on 14 separate legal parcels were one single project. As of the commencement of that case, the 14 separate legal parcels remained undeveloped and the debtor's sole source of income was rent from three leases for a cell tower, cattle grazing, and hunting. *Id.* at *1. The debtor planned to use the 14 separate legal parcels to construct a large residential development. *Id.* The debtor's plans also included sand excavation, wildlife habitat migration, liquid asphalt extraction, and solar energy production. *Id.* The court held that even though the debtor's future plans might constitute separate projects, the debtor currently owned 14 separate legal parcels which constituted a single project. *Id.* *See also Philmont Dev. Co.*, 181 B.R. at 224-25 (holding that each limited partnership which owned several different semi-detached houses constituted a "single project"); *Rear Still Hill Rd.*, 2007 WL 2935483 at **4-5 (holding that

the debtor's plan to construct single family homes on its two parcels of land was a "single project");
*In re Pioneer Austin E. Dev. I, Ltd.*, 2010 WL 2671732 at ** 1-2 (Bankr. N.D. Tex. 2010) (holding that eight parcels of land used to develop homes constituted a "single project.").

The Debtor here currently owns one piece of real property that has an apartment building on it. As such, its real property constitutes a "single property" within the meaning of section 101(51B). Pursuant to *Sargent Ranch,* the Debtor's future plans with respect to the Property are not relevant to the determination of whether, as of the commencement of this case, the Property constituted a "single project." Even if this Court were to consider the Debtor's future plan, this plan envisions that the two properties will "come together" in a "unified multi-family redevelopment project" using a "master plan for both." Just as in *Webb Mountain*, the Debtor's plan is "part and parcel one large land development" constituting a "single project."

### B. The Property Generates Substantially All of the Income of the Debtor

This requirement is also satisfied because the Debtor's only income is from the rents it receives from the tenants residing at the Property and the washing and drying machines that are located on the Property. *See In re MTM Realty Trust*, 2009 WL 612147 at *1 (Bankr. D.N.H. 2009) (holding that the second element under § 101(51B) was satisfied where the debtor's income comprised of rents from tenants); *Philmont Dev. Co.*, 181 B.R. at 223 (finding that the property generated substantially all of the income of the debtors because the debtors' income comprised of rentals derived from the real property).

Mr. Salmen confirmed that the Property generates substantially all of the income of the Debtor in his deposition:

> Q: For the past – from the date the Receiver was put in place, has AspenWalk received any income of any kind other than income from the rental units?

> A: There's vending income.
>
> Q: But, again, that's on site?
>
> A: Correct.
>
> Q: Vending machines provided for tenants, the laundry, the washing machines, those things?
>
> A: Correct.
>
> Q: Okay. What have been the primary expenses of the LLC over the past two years?
>
> A: The regular monthly operating expenses. There's some repairs and maintenance that are fairly regular. Property insurance and the real estate taxes I would say are the primary expenses.

Salmen Dep. 44:8-23.

Furthermore, this requirement would still be satisfied even if the Debtor were to allege that it might derive future income from improving and selling the Property. *See Kara Homes,* 363 B.R. at 405 (holding that the second element under § 101(51B) was satisfied where the debtors derived substantially all of their income from the improvement and sale of real property); *Pioneer Austin E. Dev. I*, 2010 WL 2671732 at *2 (sale of developed lots to third parties satisfied the second element under §101(51B)).

### C. The Debtor is Not Involved in any Substantial Business Other than the Operation of the Property and Activities Incidental Thereto

The Debtor is engaged in two activities: collecting rents from the tenants residing at the Property, and attempting to further develop the Property or, alternatively, sell the undeveloped Property once Final PUD approval is received. As such, the Debtor is not involved in any substantial business other than the operation of the Property and activities incidental thereto.

The *Kara Homes* court addressed this criteria, explaining that "a 'single asset real estate' case is one in which the debtor performs functions intrinsic to owning and developing the real estate

and not one where the debtor generates income from other activities not incidental thereto." *Id.* at

406. Further, only the debtor's current activities may be considered in determining whether it is

conducting substantial business activities other than the operation of the property because any other

interpretation of § 101(51B) would "allow all debtors with unrented commercial space to evade

§ 362(d)(3) by simply declaring an intention to start a business." *In re CBJ Dev., Inc.*, 202 B.R.

467, 473 (9th Cir. B.A.P. 1996).

In *Kara Homes*, Kara Homes, Inc. and its affiliates each filed separate bankruptcy petitions.

Kara Homes, Inc. owned 90% of each affiliate and the affiliates each owned separate real estate

development projects for the construction of single family homes and condominiums. 363 B.R. at

401.

The debtors asserted that each separate affiliate operated a business sufficiently active so as

to be excluded from § 101(51B). *Id.* at 403. As detailed by the court and as set forth in the debtors'

pleadings:

> [I]t is the business of each Affiliated Debtor to acquire developable
> land, to design homes and/or condominiums suitable to that land, to
> arrange for the construction of these homes and/or condominiums
> and then to market and sell them to generate cash. [The affiliates]
> must obtain site plan approvals or register with the Department of
> Community Affairs and file Public Offering Statements. Marketing,
> sales and construction are handled from a construction trailer and
> model located on each property. Employees are detailed to particular
> properties by Kara Homes and those employees conduct the closing
> and monitor the work that needs to be completed on each home. The
> Affiliated Debtors maintain that in addition to all these tasks, the
> Affiliated Debtors build the common space, amenities and roadways.
> . . . The Debtors maintain that in addition to holding the real estate,
> each affiliate researches and purchases developable land, conducts
> planning and construction of homes, markets and sells the homes and
> maintains each development.

*Id.* at 402-03, 405 (internal quotation marks omitted). The debtors argued that "because substantial

business other than the business of operating the real estate and activities incidental thereto are

conducted on the property of each Affiliated Debtor," they were not single asset real estate entities. *Id.* at 405.

The court rejected this argument, holding that all of the activities identified by the debtors were reflective of business operations that were merely incidental to the affiliates' efforts to sell homes or condominium units. *Id.* at 406. In reaching this conclusion, the court took a

> pragmatic approach to gauging the substantiality of the Debtors' business operations unrelated to the real estate. Simply put, the Court queries whether the nature of the activities are of such materiality, that a reasonable business person would expect to generate substantial revenues from the operation activities-separate and apart from the sale or lease of the underlying real estate. By way of example, with a country club or hotel, one could reasonably anticipate generating significant revenues from catering events, operating restaurants or casinos, providing services or selling merchandise-whether or not the operator was the owner of the real estate. In marked contrast, no one could reasonably expect to generate income from activities undertaken by the Affiliated Debtors if the eventual sale of the real estate were not possible.

*Id.* at 406; *see also Pioneer Austin E. Dev. I.*, 2010 WL 2671732 at *3 (holding that designing and redesigning subdivisions and making improvement to unimproved land were incidental to the sale of the debtor's real property).

In the present case, the Debtor conducts far fewer activities than the debtors in *Kara Homes*. As Mr. Salmen testified, the Debtor's only activities are leasing the rental units and seeking Final PUD approval:

> Q: Is AspenWalk engaged in any substantial business other than the lease of the rental units at 404 and the – at this point seeking final PUD approval?
>
> A: Those are the two primary activities of AspenWalk.

Salmen Dep. 54:6-11. Both of these activities are intrinsic to owning and developing the Property. Leasing the rental units is "operation of the Property." Seeking Final PUD approval is an "activity incidental to ownership," as it contemplates either sale of the Property or operation of an improved

Property.  Unlike a country club or hotel, no reasonable business person would expect to generate substantial revenues apart from the current leasing or potential future development of the Property. Accordingly, this requirement is satisfied.

## IV.  CONCLUSION

The Debtor's bankruptcy case is a single asset real estate case because all three requirements under § 101(51B) are satisfied.  The Property constitutes a "single property."  All or substantially all of the Debtor's income is derived from the Property.  And, both of the Debtor's activities involve either operating the Property or activities incidental thereto.   Accordingly, the Debtor is subject to Bankruptcy Code § 362(d)(3) because its case is a single asset real estate case.

Dated:  December 14, 2010.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By:  ___/s/ Timothy A. Fusco_____
         Timothy A. Fusco (P13768)
         Marc N. Swanson (P71149)
         Ronald A. Spinner (P73198)
         Attorneys for Secured Creditor Bank of America, N.A.
         150 West Jefferson, Suite 2500
         Detroit, MI  48226
         (313) 963-6420
         fusco@millercanfield.com


GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.


By  /s/  William J. Fisher_____
         William J. Fisher, #167137
         500 IDS Center
         80 South 8th Street
         Minneapolis, Minnesota 55402
         Telephone:  (612) 632-3000
         Facsimile:   (612) 632-4444
         william.fisher@gpmlaw.com

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In the Matter of:                                             Case No. 10-47089-RJK

PFG ASPENWALK, LLC,                                           Chapter 11

        Debtor.                                      Honorable Robert J. Kressel

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on December 14, 2010, I caused the following:

1.      Bank of America's Notice of Hearing and Motion for Determination that PFG Aspenwalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51)(B);

2.      Memorandum in Support of Bank of America's Notice of Hearing and Motion for Determination that PFG Aspenwalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51)(B); and

3.      Determination that PFG Aspenwalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy code Section 101(51)(B).

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | |
|---|---|
| Adam D. Maier | Adam.maier@leonard.com |
| Lara O. Glaesman | Lara.glaesman@leonard.com |
| Robert T. Kugler | Robert.kugler@leonard.com |
| Michael Fadlovich | Michael.fadlovich@usdoj.gov |
| U.S. Trustee | Ustpregion12.mn.ecf@usdoj.gov |

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

| | |
|---|---|
| IRS District Counsel | Internal Revenue Service |
| 380 Jackson St., Ste. 650 | Wells Fargo Place |
| St. Paul, MN 55101-4804 | 30 E 7th St., Mail Stop 5700 |
| | St. Paul, MN 55101 |
| | |
| MN Dept. of Economic Security | US Attorney |
| 332 Minnesota Street | 600 US Courthouse |
| St. Paul, MN 55101-1351 | 300 S. 4th Street |
| | Minneapolis, MN 55415 |

MN Dept. of Revenue
Collection Enforcement
551 Bankruptcy Section
600 No. Robert Street
PO Box 64447
St. Paul, MN 55101-2228

PFG AspenWalk, LLC
3208 West Lake St PMB 5
Minneapolis, MN 55416


Dated:  December 14, 2010

GRAY, PLANT, MOOTY,
  MOOTY & BENNETT, P.A.


    /e/ William J. Fisher
William J. Fisher (MN# 167137)

GP:2896299 v1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In the Matter of:                                    Case No. 10-47089-RJK

PFG ASPENWALK, LLC,                      Chapter 11

           Debtor.                                Honorable Robert J. Kressel

_____/

**DETERMINATION THAT PFG ASPENWALK, LLC'S BANKRUPTCY**
**CASE IS A SINGLE ASSET REAL ESTATE CASE**
**<u>PURSUANT TO BANKRUPTCY CODE SECTION 101(51)(B)</u>**

       This case is before the court on Bank of America, N.A.'s motion for a determination that

the debtor's bankruptcy case is a single asset real estate case pursuant to 11 U.S.C. § 101(51)(B)

and is thus subject to 11 U.S.C. § 362(d)(3).  Based upon the motion, the arguments of counsel,

the pleadings, exhibits, and record in this case,

      **THE COURT DETERMINES THAT:**

       1.      The debtor's bankruptcy case is a single asset real estate case pursuant to 11 U.S.C.

§ 101(51)(B), and

       2.      The debtor is subject to 11 U.S.C. § 362(d)(3).

Dated:

                                     _____
                                     United States Bankruptcy Judge