# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

       Debtor.

Chapter 11
Case No. 10-47089-RJK

Honorable Robert J. Kressel

---

### MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION FOR DETERMINATION THAT PFG ASPENWALK, LLC'S BANKRUPTCY CASE IS A SINGLE ASSET REAL ESTATE CASE PURSUANT TO BANKRUPTCY CODE SECTION 101(51B)

---

PFG AspenWalk, LLC (the "Debtor") respectfully submits this memorandum in opposition to Bank of America, N.A.'s Motion for Determination that PFG AspenWalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51B) (the "Motion").

### <u>INTRODUCTION</u>

This is not a single asset real estate case pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3). The Debtor's assets do not constitute a single property or project that generates substantially all of the Debtor's income and on which no substantial business is being conducted by the Debtor other than operating the real property and activities incidental thereto. Even if the Debtor's business is a single asset real estate case as defined under Section 101(51B) such that the Debtor is subject to the provisions of 11 U.S.C. § 362(d)(3), relief from the automatic stay should be conditioned to afford the Debtor an opportunity to obtain confirmation of a plan of reorganization pursuant to deadlines already established by this Court's order.

## BACKGROUND

When the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code") on September 23, 2010 (the "Petition Date"), the Debtor did not check the "single asset real estate" box because the nature of its business is not a single asset real estate as defined in 11 U.S.C. § 101(51B). Indeed, the Debtor's primary assets consist of the following: (i) real property located at 404 Park Avenue, Aspen, Pitkin County, Colorado (the "Rental Property") and the proceeds generated therefrom; (ii) the Debtor's rights under an Agreement to Buy and Sell Real Estate (the "Sale Agreement") dated June 26, 2006, for 414 Park Circle, Aspen, Pitkin County, Colorado; and (iii) a joint development agreement with the Aspen Pitkin County Housing Authority covering the development of the Rental Property and the 414 Park Circle, Aspen, Pitkin County, Colorado property (collectively, the "Development Property"), all for the purpose of constructing a residential condominium project composed of fourteen (14) luxury units to be sold to the general public and twenty-five (25) work-force units to be sold to the Aspen Pitkin County Housing Authority (the "Project"). (Stipulation Regarding Debtor's Motion for Final Orders at 1[1]; DIP Financing Motion ¶ 10.)[2] Under the Sale Agreement, which the Debtor entered into with the Aspen Pitkin County Housing Authority, the Debtor has an asset consisting of an option to purchase the parcel located at 414 Park Circle, Aspen, Colorado for $750,000. The Debtor's

---

[1] The "Stipulation Regarding Debtor's Motion for Final Orders" was filed by the Debtor under the caption Stipulation by and among Bank of America and the Debtor Regarding the Debtor's Motion for Final Orders (A) Authorizing Debtor-in-Possession Financing and (B) Approving a Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d). (Doc. No. 39.)

[2] The "DIP Financing Motion" was filed by the Debtor under the caption Notice of Hearing and Motion for (i) Expedited Relief, (ii) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide Adequate Protection. (Doc. No. 6.)

other assets consist of an account receivable in the amount of $4,580 from Petters Real Estate Group and an insurance policy. (*See* Debtor's Schedule B (Doc. No. 1).)

As of the Petition Date, Bank of America, N.A. ("Bank of America") had a valid, binding, perfected, enforceable first priority security interest and lien on the Rental Property, which is not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtor pursuant to the Bankruptcy Code or applicable non-bankruptcy law. (Stipulation Regarding Debtor's Motion for Final Orders at 1 (Doc. No. 39).) Further, as part of the security granted to Bank of America, the Debtor executed, and Bank of America properly recorded, an Assignment of Rents on or about December 21, 2007, whereby the Debtor sold, conveyed, and assigned to Bank of America all "rents, revenues, issues, profits, proceeds, receipts, income, accounts and other receivables" arising out of or from the Rental Property (the "Rents"). (*Id.*)

Before the Debtor could begin the Project, it had to obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD") approval for the Project from the Aspen City Council. In or about October 2007, the Debtor submitted an application to the Aspen City Council requesting Conceptual PUD approval for the Project. On or about October 27, 2008, the Aspen City Council passed Resolution No. 74, granting Conceptual PUD approval for the Debtor's Project. (Stipulation Regarding Debtor's Motion for Final Orders at 1 (Doc. No. 39).) Conceptual PUD approval for the Project was to expire on or about October 29, 2009. (*Id.*) In or around September 2009, the Debtor submitted a request to the Aspen City Council for extension of the Conceptual PUD approval. (*Id.*; *see also* Bank of America's Mem., Ex. 2.)[3] On or about October 13, 2009, the Aspen City Council

---

[3] The "Bank of America's Mem." was filed by Bank of America under the caption Memorandum in Support of Bank of America's Motion for Determination that PFG AspenWalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51B). (Doc. No. 44.)

granted the Debtor's request, extending Conceptual PUD approval until October 28, 2010. (Stipulation Regarding Debtor's Motion for Final Orders at 2 (Doc. No. 39).)

On or about October 12, 2010, the Debtor filed an application with the City of Aspen seeking Final PUD approval. (*Id.*) On or about October 18, 2010, the City of Aspen confirmed that the Debtor's submittal package for application for Final PUD approval was deemed complete. (*See id.*) While Final PUD approval is currently pending, the Debtor estimates that the entire final governmental approval process will be completed by May 31, 2011. (*See* DIP Financing Motion ¶ 31 (Doc. No. 6).)

On October 25, 2010, Bank of America filed notice pursuant to 11 U.S.C. § 546(b)(2) (the "Notice"), and thus has a perfected lien in the Rents, either as a direct result of the Assignment of Rents or as a result of the filing of the Notice. (Stipulation Regarding Debtor's Motion for Final Orders at 2 (Doc. No. 39).) Bank of America's lien in the Rents means that the Rents are its cash collateral as defined in 11 U.S.C. § 363 of the Bankruptcy Code. (*Id.*) On November 19, 2010, the Debtor and Bank of America entered into a stipulation with respect to the Debtor's authorization to obtain and make use of Debtor-in-Possession ("DIP") Loan financing (the "November 19 Stipulation"). (*Id.*) On November 24, 2010, the Debtor and Bank of America entered into the Stipulation Regarding Debtor's Motion for Final Orders with respect to the Debtor's authorization to use cash collateral. (*See* Stipulation Regarding Debtor's Motion for Final Orders (Doc. No. 39).) This Court entered an order approving the Stipulation on November 24, 2010, thereby allowing the Debtor to use the Rents to pay for Operating Expenses associated with the management and operation of the Rental Property and Allowed Expenses, as

both are defined in the November 19 Stipulation and the Stipulation Regarding Debtor's Motion for Final Orders. (*See* Order.)[4]

## <u>ARGUMENT</u>

**THIS CASE SHOULD NOT BE SUBJECTED TO THE PROVISIONS OF 11 U.S.C. § 362(d)(3).**

11 U.S.C. § 362(d)(3) mandates a termination, annulment, modification, or conditioning of an automatic stay in a single asset real estate case, unless,

> not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> > (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> >
> > (B) the debtor has commenced monthly payments that—
> >
> > > (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
> > >
> > > (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; . . . .

11 U.S.C. § 362(d)(3).

In order for Section 362(d)(3) to apply, a debtor's business must be first and foremost single asset real estate under Section 101(51B). *See In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 46–47 (Bankr. D. Minn. 2007) (concluding debtor's protection under the automatic stay was subject to § 362(d)(3) because debtor conceded its property was single asset real estate).

---

[4] The "<u>Order</u>" was filed by this Court under the caption Order (i) Authorizing Debtor to Obtain Debtor-in-Possession Financing, and (ii) Approving the Debtor-in-Possession Loan that Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Adequate Protection. (Doc. No. 40.)

The present action is not a single asset real estate case pursuant to Section 362(d)(3), as it does not involve single asset real estate as defined by 11 U.S.C. § 101(51B). Even if the Debtor's business is single asset real estate (which it is not) such that the Debtor is subject to the provisions of Section § 362(d)(3), relief from the automatic stay is neither mandatory nor warranted in this instance, as this Court has already entered an order extending the time by which the Debtor must file its plan of reorganization.

    **A.    The Debtor's business does not meet the definition of a "single asset real estate" under 11 U.S.C. § 101(51B).**

In order for Section 362(d)(3) to apply, the Debtor's business must constitute "single asset real estate" under 11 U.S.C. § 101(51B) of the Bankruptcy Code. "Single asset real estate" is defined as the following:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B).

In its petition, the Debtor deliberately chose not to select the status of a single asset real estate because its business is indeed not "single asset real estate" as defined by Section 101(51B). Courts have acknowledged that the heart of the single asset real estate analysis is "whether the real estate is used in the operation of a business or whether it is simply held for income." *In re Scotia Dev., LLC*, 375 B.R. 764, 777 (Bankr. S.D. Tex. 2007) (quoting *In re Prairie Hills Golf & Ski Club, Inc.*, 255 B.R. 228, 229 (Bankr. D. Neb. 2000)). A debtor who actively operates a business on its property, even when the operation of such business centers around the use of a debtor's property, does not constitute a "single asset real estate" debtor. *Id.*; *see, e.g.*, *In re Whispering Pines Estate, Inc.*, 341 B.R. 134, 136 (Bankr. D.N.H. 2006) (holding

hotel operations, even without restaurant and gift shop, constitute more than "the business of operating the real property"); *In re Prairie Hills Golf & Ski Club, Inc.,* 255 B.R. at 230 (holding where a debtor "'constructs and maintains roads to the golf ski and residential areas, mows and removes snow from the golf course and residential area, continues to develop the golf and ski areas,' operates concessions and operates farmland, the debtor is engaged in substantial business"). Passive activities that fall within the meaning of Section 101(51B) are limited to those "passive types of activities [such as] the mere receipt of rent and truly incidental activities such as arranging for maintenance . . . or mowing the grass and waiting for the market to turn." *In re Scotia Dev., LLC*, 375 B.R. at 777–78.

There is no dispute that while the Debtor's assets include an account receivable in the amount of $4,580 from Petters Real Estate Group, an insurance policy, and a purchase option, its primary assets include the Rental Property, the Sale Agreement, and the Development Property. However, rather than passively holding these assets for resale or merely collecting rents, the Debtor has used its primary assets to actively operate its business, which currently involves constructing the Project. As the Debtor's Vice President of Finance, Thomas Salmen, testified (and as Bank of America stated in its brief), the primary activities of the Debtor include the leasing of the rental units at the Rental Property *and* "at this point seeking [F]inal PUD approval." (Bank of America's Mem. at 9 (Doc. No. 44).) Moreover, when describing the services that the Debtor has utilized and costs expended for the Project, Thomas Klassen, the Debtor's Vice President of Operations, testified:

> [W]e had a detailed line item budget for all pre-development activities, we had a tentative timeline laid against that, and every single month as I drew down funds for payment of those, we prepared a monthly report detailing the activities accomplished, sending them copies of every single invoice all the way through to conceptual.

(Thomas Klassen Depo. 20:17-24, Oct. 18, 2010.)[5]

Further, similar to the non-single asset real estate debtor in *In re Scotia Dev., LLC*, the Debtor has not operated its business alone. *Cf.* 375 B.R. at 768–74 (holding debtor was not a single asset real estate, in part, because debtor not only owned real property but employed third-party employees, "without whom nothing would have happened on the property"). Rather, the Debtor has hired several vendors and contractors to assist it with the Project, from obtaining Conceptual PUD approval and supporting the final governmental approval process, to drawing and updating plan drawings and budget reports. (*See, e.g.*, *id.* at 26:15-18 ("Mechanical, he would have – he would have also done – and I need to see the name of the vendor, we had two, and I believe we ended up with Geotech as our – doing our civil engineering reports.").)

In sum, looking at the Debtor's business as a whole, the Debtor's business does not meet the definition of a "single asset real estate" under 11 U.S.C. § 101(51B). The Debtor is not a passive entity, solely leasing its property to tenants for income. Rather, the Debtor actively operates its business, using its assets and hiring vendors and contractors to assist it with the development of the Project.

**B.     Even if the Court concludes that the Debtor's business is single asset real estate and that 11 U.S.C. § 362(d)(3) applies, relief from the automatic stay is neither mandatory nor warranted in this instance.**

Even if this Court concludes that this case involves a single asset real estate debtor and that 11 U.S.C. § 362(d)(3) consequently applies, relief from the automatic stay is neither mandatory nor warranted in this instance, as courts have discretion to fashion appropriate relief under such circumstances. *See In re Hope Plantation Group, LLC*, 393 B.R. 98, 104 (Bankr. D.S.C. 2007); *see also E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 172 (2d Cir. 1998) ("Bankruptcy courts have the plastic powers to modify or condition an automatic stay so

---

[5] Relevant portions of the "Thomas Klassen Depo." are attached hereto as Exhibit A.

as to fashion the appropriate scope of relief."); *see, e.g.*, *In re Terraces Subdivision, LLC*, No. A07-00048-DMD, 2007 WL 2220448, at *4 (Bankr. D. Alaska Aug. 2, 2007) (conditioning stay upon confirmation of a plan and holding failure to do so would result in termination of stay without any further action); *Condor One v. Archway Apartments, Ltd.* (*In re Archway Apartments, Ltd.*), 206 B.R. 463, 465 (Bankr. M.D. Tenn. 1997) (imposing a time limit on debtor within which plan of reorganization had to be confirmed or relief from stay would be granted outright); *Carteret Savings Bank, F.A. v. Nastasi-White, Inc.* (*In re East-West Assocs.*), 106 B.R. 767, 772 (S.D.N.Y. 1989) (conditioning stay). As the court noted in *In re Hope Plantation Group, LLC*:

> While Congress may have enacted § 362(d)(3) to protect the interests of secured creditors in single asset real estate cases, it did not completely abrogate the bankruptcy court's discretion to tailor the appropriate relief for failure to strictly comply with the requirements of § 362(d)(3). The language of the statute unambiguously states that the court "**shall grant relief** from the stay provided under subsection (a) of this section, such as **by terminating, annulling, modifying, or conditioning such stay**."

393 B.R. at 104 (quoting *In re Archway Apartments, Ltd.*, 206 B.R. at 465 (emphasis in original)).

Given that this Court retains discretion, even under Section 362(d)(3), to fashion less than absolute stay relief, appropriate relief in this case would be conditioning the automatic stay to afford the Debtor an opportunity to obtain confirmation of its plan of reorganization. *Cf. In re Crown Ohio Invs. LLC*, No. 1-09-46767-dem, 2010 WL 935576, slip op. at *5–6 (Bankr. E.D.N.Y. Mar. 12, 2010) (conditioning stay to allow debtor to file a reserve fund application until the reserve fund was exhausted and to file and seek confirmation of its plan of reorganization). On November 24, 2010, this Court entered an order establishing deadlines concerning the Debtor's filing of such a plan (the "Deadline Order" (Doc. No. 41)). Pursuant to

the Deadline Order, this Court explicitly ordered that the Debtor "shall file a plan and a proposed disclosure statement no later than May 31, 2011" and that the Debtor "shall obtain confirmation of a plan no later than August 31, 2011." (Deadline Order (Doc. No. 41).)[6]  Conditioning the automatic stay in order to allow the Debtor to file a plan that must be confirmed no later than August 31, 2011, is in all of the parties' best interests, as it increases the likelihood that Bank of America and all of the remaining creditors will recover on their claims.

Furthermore, conditioning the automatic stay is appropriate relief in this case because the Deadline Order has, in effect, extended the time limitations in Section 362(d)(3), and thus, any other form of relief under Section 362(d) would be premature. *See In re Hope Plantation Group, LLC*, 393 B.R. at 102–04 (refusing to terminate automatic stay because creditor's motion for relief from stay, which was filed before expiration of 90-day period that debtor had either to commence interest payments or to file plan, was premature); *cf. In re MHS Mgmt. Group, LLC*, No. 08-63116, 2009 WL 3644415, slip op. at *1 n.1 (Bankr. N.D.N.Y. Oct. 26, 2009) (granting creditor's motion for relief from automatic stay pursuant to § 362(d)(2) where court initially granted debtor's motion requesting extension of the time limitations in § 362(d)(3), which creditor's counsel consented to, and debtor failed to comply with consented motion terms).

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that this Court deny Bank of America's Motion and determine that the Debtor is not a single asset real estate debtor subject to the provisions of 11 U.S.C. § 362(d)(3).  In the alternative, the Debtor respectfully requests that if the Court determines that the Debtor is a single asset real estate debtor, the Court conditions relief from stay, such that if the Debtor does not obtain confirmation of a plan of

---

[6] At the Court ordered Status Conference on November 24, 2010, neither Bank of America nor its counsel objected to this Court setting deadlines by which the Debtor was to file a plan and disclosure statement and the Debtor's plan was to be confirmed.

reorganization either pursuant to the Deadline Order or by any extension of the deadlines set forth in the Deadline Order, the stay will be terminated.

Dated:  December 30, 2010

Respectfully submitted,

/e/ Lara O. Glaesman
Robert T. Kugler (#0194116)
Lara O. Glaesman (#0316866)
Adine S. Momoh (#390085)
**LEONARD, STREET AND DEINARD**
   *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657

**ATTORNEYS FOR PFG ASPENWALK, LLC**

# EXHIBIT A

 1                    UNITED STATES BANKRUPTCY COURT

 2                       DISTRICT OF MINNESOTA

 3     _____

 4      In Re:                        Chapter 11

 5      PFG AspenWalk, LLC,           Case No. 10-47089-rjk

 6                  Debtor.

 7     _____

 8

 9                         DEPOSITION OF

10                      THOMAS H. KLASSEN

11                   Taken October 18, 2010

12

13

14

15

16

17

18

19

20

21

22

23            CINDY L. SCHULTZ, RMR, CRR, CLR

24

25

```
 1              The deposition of THOMAS H. KLASSEN, taken on

 2    October 18, 2010, commencing at 1:15 p.m., taken at 150

 3    South Fifth Street, Minneapolis, Minnesota, before

 4    Cindy L. Schultz, Registered Merit Reporter, Certified

 5    Realtime Reporter, Certified LiveNote Reporter, and

 6    Notary Public of and for the State of Minnesota.

 7

 8                        A P P E A R A N C E S

 9

10    ON BEHALF OF BANK OF AMERICA:

11      Timothy A. Fusco, Esq.

12      MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

13      Suite 2500

14      150 West Jefferson

15      Detroit, Michigan 48226-4415

16      313.496.8435

17      fusco@millercanfield.com

18              and

19      William J. Fisher, Esq.

20      GRAY PLANT MOOTY

21      500 IDS Center

22      80 South Eighth Street

23      Minneapolis, Minnesota 55402

24      612.632.3000

25      william.fisher@gpmlaw.com
```

```
 1   APPEARANCES (Continued):

 2

 3   ON BEHALF OF PFG ASPENWALK, LLC:

 4     Lara O. Glaesman, Esq.

 5     LEONARD, STREET AND DEINARD, PA

 6     Suite 2300

 7     150 South Fifth Street

 8     Minneapolis, Minnesota 55402

 9     612.335.7074

10     lara.glaesman@leonard.com

11

12

13

14

15

16

17

18

19

20            NOTE:  The original transcript will be filed

21   with MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

22   pursuant to the applicable Rules of Civil Procedure.

23

24

25
```

1   what rings a bell.  They would have done the

2   topographical and other surveys required for a drainage

3   plan for the conceptual.  Again, it would be detailed

4   in the reports that are held by your client.

5        Q.   Well, what reports -- You obtained conceptual

6   approval on October, I believe, 27th, 2008, by

7   Resolution No. 74 of the City of Aspen?

8        A.   Correct.

9        Q.   And in order to -- in order to obtain that

10  approval, you had to submit various things to the -- to

11  the City?

12       A.   Correct.

13       Q.   Do you have a -- a -- a list somewhere of the

14  cost of obtaining that of -- of whose services you

15  utilized and how much you paid?

16       A.   Our format, which started with LaSalle but

17  carried on thereafter with Bank of America, was we had

18  a detailed line item budget for all pre-development

19  activities, we had a tentative timeline laid against

20  that, and every single month as I drew down funds for

21  payment of those, we prepared a monthly report

22  detailing the activities accomplished, sending them

23  copies of every single invoice all the way through to

24  conceptual.  So, yes, I think somewhere in our IT

25  archives those reports still exist.  They also -- Your

1       Q.   Go ahead.

2       A.   I'd have to go through and look at our

3   submittal package, but we also had to have a water,

4   sewer, drainage plan; we had to have a roadway,

5   parking, sidewalks plan; we had to have a storm water

6   drainage plan; we had to have a draft PUD agreement; we

7   had to have a revised title opinion; we had to have two

8   authorizations, one from, actually, the Aspen Pitkin

9   County Housing Authority and ourself, all of that

10  defined in the submittal requirements by the City.  The

11  largest chunk of work, architectural and -- and civil

12  engineering.

13      Q.   Your architectural work, again, Mr. O'Bryan.

14  Who would the engineer have been?

15      A.   Mechanical, he would have -- he would have

16  also done -- and I need to see the name of the vendor,

17  we had two, and I believe we ended up with Geotech as

18  our -- doing our civil engineering reports.

19      Q.   Now, this is a PUD because you have mixed

20  low-income and market-rate housing?

21      A.   The City of Aspen requires a PUD for almost

22  everything.

23      Q.   Okay.

24      A.   But it also, as I understand it, ties

25  specifically to the underlying zoning on where the

## **VERIFICATION**

I, Thomas Salmen, an Officer of the Debtor, hereby verifies, under penalty of perjury, that I have read the foregoing Memorandum in Opposition to Bank of America, N.A.'s Motion for Determination that PFG AspenWalk, LLC's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51B), including Exhibits, I know the contents thereof, and the information contained therein is true and correct to the best of my knowledge, information, and belief.

Dated: December 30, 2010 _____

Thomas Salmen, Officer

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

PFG ASPENWALK, LLC,

       Debtor.

Chapter 11
Case No. 10-47089 (RJK)

---

**CERTIFICATE OF SERVICE**

---

    I, Ma Xiong, declare, under penalty of perjury, that on December 30, 2010, I filed:

**MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION FOR
DETERMINATION THAT PFG ASPENWALK, LLC'S BANKRUPTCY CASE IS A
SINGLE ASSET REAL ESTATE CASE PURSUANT TO BANKRUPTCY CODE
SECTION 101(51B)**

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of

electronic filing to the following:

> **William Fisher;** william.fisher@gpmlaw.com
> **Timothy A. Fusco;** fusco@millercanfield.com
> **Marc N Swanson;** swansonm@millercanfield.com
> **Michael Fadlovich**; michael.fadlovich@usdoj.gov
> **US Trustee**; ustpregion12.mn.ecf@usdoj.gov

    I further certify that I caused a copy of the foregoing document and the Notice of

Electronic Filing to be served by First Class Mail on the following parties:

AMANDA SCHMITT
404 PARK AVENUE #1
ASPEN CO 81611

ASPEN CUSTOM GLASS
601 RIO GRANDE PLACE, STE 119A
ASPEN CO 81611

ASPEN PITKIN HOUSING AUTHORITY
ATTN: TOM MCCABE, EXEC. DIR.
530 EAST MAIN STREET
ASPEN CO 81611

BANK OF AMERICA, N.A.
ATTN: RICHARD L. CARTER
2990 LAVA RIDGE CT, SUITE 120
ROSEVILLE CA 95661

BRITTANY BUFFALINO
404 PARK AVENUE #1
ASPEN CO 81611

CAMERON LEONARD
404 PARK AVENUE #9
ASPEN CO 81611

CITY OF ASPEN
130 SOUTH GALENA STREET
ASPEN CO 81611

CLAYTON DAY
404 PARK AVENUE #2
ASPEN CO 81611

HOLY CROSS ENERGY
P.O. BOX 2150
3799 HWY 82
GLENWOOD SPRINGS CO 81602

INTEGRITY PLUMBING AND HEATING
218 CODY LANE
BASALT CO 81621

JOAQUINN TARANGO
404 PARK AVENUE #5
ASPEN CO 81611

JONATHAN RIVERS
404 PARK AVENUE #3
ASPEN CO 81611

JULIE COOK
404 PARK AVENUE #0
ASPEN CO 81611

LAURENCE MONJI
404 PARK AVENUE #6A
ASPEN CO 81611

LINDSAY FORSTER
404 PARK AVENUE #3
ASPEN CO 81611

MANUEL CORRIPIO NORIEGA
PO BOX 2565
ASPEN CO 81612

REBECCA POLAN
404 PARK AVENUE #1
ASPEN CO 81611

ROSA GONGORA
404 PARK AVENUE #10
ASPEN CO 81611

SHAUN HEALY
404 PARK AVENUE #12
ASPEN CO 81611

SHERIDAN REAL ESTATE, LLC
ATTN: MARY ELLEN SHERIDAN
P.O. BOX 7757
ASPEN CO 81612

SOPRIS CONSULTING GROUP, LLC
ATTN: PAUL LOTZER
5400 NORWOOD LANE
PLYMOUTH MN 55442

STAN CLAUSON ASSOCIATES, INC
ATTN: STAN CLAUSON
412 N MILL STREET
ASPEN CO 81611

TERMINIX
2907 D 1/2 ROAD
GRAND JUNCTION CO 81504

WASTE MANAGEMENT-
CARBONDALE
PO BOX 78251
PHOENIX AZ 85062

IRS
CINCINNATI, OH  45999-0025

UNITED STATES ATTORNEY
600 U.S. COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN  55415

INTERNAL REVENUE SERVICE
STOP 5700
30 EAST SEVENTH STREET, #1222
SAINT PAUL, MN  55101-4940

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
SAINT PAUL, MN  55101

SOURCE GAS
DISTRIBUTION LLC
P.O. BOX 13288
FAYETTEVILLE, AR 72703

MINNESOTA DEPARTMENT OF
REVENUE
BANKRUPTCY SECTION
P.O. BOX 64447
SAINT PAUL, MN  55164-00447

HONEYCOMB INTERNET
SERVICES LL
77 13TH AVE. NE SUITE 210
MINNEAPOLIS, MN 55413

Dated:  December 30, 2010

*/e/ Ma Xiong*
Ma Xiong

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

PFG ASPENWALK, LLC,

        Debtor.

Chapter 11
Case No. 10-47089-RJK

Honorable Robert J. Kressel

**ORDER DENYING BANK OF AMERICA'S MOTION FOR DETERMINATION THAT
PFG ASPENWALK, LLC'S BANKRUPTCY CASE IS A SINGLE ASSET REAL
ESTATE CASE PURSUANT TO BANKRUPTCY CODE SECTION 101(51B)**

Upon consideration of Bank of America's motion for a determination that the debtor's

bankruptcy case is a single asset real estate case pursuant to 11 U.S.C. § 101(51B) and is thus

subject to 11 U.S.C. § 362(d)(3),

**IT IS ORDERED:**

1.      Bank of America's motion for a determination that the debtor's bankruptcy case is

a single asset real estate case pursuant to 11 U.S.C. § 101(51B) is denied.

2.      The debtor is not subject to 11 U.S.C. § 362(d)(3).

Dated:

_____
Robert J. Kressel,
U.S. Bankruptcy Court Judge