UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

Chapter 11
Case No. 10-47089-RJK

Debtor.

**NOTICE OF HEARING AND MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING**

**TO: THE PARTIES IN INTEREST AS SPECIFIED IN BANKRUPTCY RULE 4001(c)(1)(C) AND LOCAL RULE 9013-3(a)(2).**

1. PFG AspenWalk, LLC (the "Debtor"), through its undersigned attorneys, moves this Court for the relief requested below and gives notice of hearing.

2. The Court will hold a hearing on the Debtor's Motion for Order Authorizing Debtor to Obtain Debtor-in-Possession Financing (the "Motion") at 10:00 a.m. on March 30, 2011, before the Honorable Robert J. Kressel, in Courtroom 8W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3. Any response to this Motion must be filed and served by delivery no later than March 25, 2011, which is five (5) days before the time set for the hearing (including Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT A HEARING**.

4. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1. This is a core proceeding.

7489645v2

5. On September 23, 2010 (the "Petition Date"), the Debtor filed a petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code"). The case is now pending before this Court.

6. This Motion arises under 11 U.S.C. §§ 363(c), 364(c) and (d), and Bankruptcy Rule 4001(c). This Motion is filed under Bankruptcy Rule 9014 and Local Rules 9013-1 to 9013-5 and 4001-2.

7. With the Court having (i) granted the request for expedited relief, and (ii) entered an interim order authorizing the Debtor to obtain credit secured by, among other things, a senior lien under 11 U.S.C. § 364(d) pursuant to the terms of a loan agreement (the "DIP Loan") by and between Rapid Funding, LLC (the "DIP Lender") and the Debtor,[1] and approving the DIP Loan, the Debtor now requests an order authorizing the Debtor to obtain another advance from the DIP Loan.

## BACKGROUND

8. Since the Petition Date, the Debtor has operated its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Code. No creditors' or other official committee has been appointed pursuant to Section 1102 of the Bankruptcy Code. The primary parties-in-interest have been served with this Motion.

9. The Debtor's primary assets consist of the following: (i) real property located at 404 Park Avenue, Aspen, Pitkin County, Colorado (the "Rental Property") and the proceeds generated therefrom; (ii) the Debtor's rights under a purchase agreement for 414 Park Circle, Aspen, Pitkin County, Colorado; and (iii) a joint development agreement with Aspen Pitkin County Housing Authority covering the development of the Rental Property and the 414 Park

---

[1] A true and correct copy of the Loan Agreement is attached as **Exhibit C** to the Verified Statement and Affidavit of Thomas Salmen in Connection With Motion for Order Authorizing Debtor to Obtain Debtor-in-Possession Financing.

Circle, Aspen, Pitkin County, Colorado property (collectively, the "Development Property"), all for the purpose of constructing a residential condominium project (the "Project").

10. Before the Debtor could begin the Project, it had to obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD") approval (collectively, "Preliminary Government Approvals") for the Project from the Aspen City Council.

11. In or around October 2007, the Debtor submitted an application to the Aspen City Council requesting Conceptual PUD approval for the Project.

12. On or about October 27, 2008, the Aspen City Council passed Resolution No. 74, granting Conceptual PUD approval for the Debtor's Project.

13. Conceptual PUD approval for the Project was to expire on or about October 29, 2009. In or around September 2009, the Debtor submitted a request to the Aspen City Council for extension of the Conceptual PUD approval.

14. On or about October 13, 2009, the Aspen City Council granted the Debtor's request, extending Conceptual PUD approval until October 28, 2010.

15. On or about October 12, 2010, the Debtor filed an application with the City of Aspen seeking Final PUD approval.

16. On or about October 18, 2010, the City of Aspen confirmed that the Debtor's submittal package for application for Final PUD approval was deemed complete. While Final PUD approval is currently pending, the Debtor estimates that the entire final governmental approval process will be completed by May 31, 2011.

17. To finance the acquisition of the Development Property, obtain Project approvals, and construct the Project, the Debtor used the proceeds of a loan (the "Bank of America Loan")

from Bank of America, N.A., as successor in interest to LaSalle Bank National Association, a national banking association ("Bank of America").

18. As of the Petition Date, Bank of America had a valid, binding, perfected, enforceable first priority security interest and lien on the Development Property, which is not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtor pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

19. As part of the security granted to Bank of America, the Debtor executed, and Bank of America properly recorded, an Assignment of Rents on or about December 21, 2007, whereby the Debtor sold, conveyed, and assigned to Bank of America all "rents, revenues, issues, profits, proceeds, receipts, income, accounts and other receivables" arising out of or from the Property (the "Rents").

20. On the Petition Date, the Debtor filed its Notice of Hearing and Motion for (I) Expedited Relief, (II) Interim and Final Orders Authorizing Debtor to Obtain Debtor-in-Possession Financing and Approving the Debtor-in-Possession Loan That Includes the Grant of a Senior Lien Under 11 U.S.C. § 364(d) and Provide [sic] Adequate Protection (the "DIP Motion"). (Doc. No. 6.)

21. The DIP Motion requested, among other things, court authorization for the DIP Loan, on an interim and final basis, from the DIP Lender and an order granting the DIP Lender a senior priming lien on the Property pursuant to 11 U.S.C. § 364(d) of the Bankruptcy Code.

22. On September 28, 2010, an expedited hearing was held on the portion of the DIP Motion seeking an interim order (the "Interim Hearing"), and the Debtor and Bank of America entered into a stipulation to resolve their dispute with respect to the relief sought at the Interim Hearing (the "First Stipulation"). (Doc. No. 16.)

23. On September 29, 2010, this Court approved the First Stipulation (the "September 29, 2010 Order"). (Doc. No. 17.)

24. On October 8, 2010, the Debtor and Bank of America entered into a second stipulation to continue the final hearing on the DIP Motion (the "Second Stipulation"). (Doc. No. 21.)

25. On October 12, 2010, this Court approved the Second Stipulation. (Doc. No. 22.)

26. On October 25, 2010, Bank of America filed notice pursuant to 11 U.S.C. § 546(b)(2) (the "Notice"), and thus has a perfected lien in the Rents, either as a direct result of the Assignment of Rents or as a result of the filing of the Notice. Bank of America's lien in the Rents means that the Rents are its cash collateral as defined in Bankruptcy Code § 363.

27. On November 1, 2010, a hearing was scheduled with respect to the portion of the DIP Motion seeking this Court's authorization to draw an additional $452,500.00 from the DIP Loan. This hearing was continued to November 24, 2010. (Doc. No. 36.)

28. On November 19, 2010, the Debtor and Bank of America entered into a third stipulation to resolve their dispute with respect to the relief sought at the Interim Hearing (the "Third Stipulation"). (Doc. No. 39.)

29. On November 24, 2010, this Court approved the Third Stipulation, thereby authorizing the Debtor to draw an additional $320,000.00 from the DIP Loan. (Doc. No. 40.)

30. The Debtor now seeks an order allowing the Debtor to obtain another advance from the DIP Loan up to a maximum amount of $585,000.00, with such funds being used solely in the amounts and for the specific purposes set forth in the table below:

| Use of DIP Loan Proceeds | Funding Date | | Total |
| --- | --- | --- | --- |
| | 3/30/2011 | 4/15/2011 | |
| Architectural / Engineering | $65,000 | $138,250 | $203,250 |
| Planning Consultant | $20,000 | $15,000 | $35,000 |

7489645v2

| Local Project Management | | $5,000 | $5,000 |
|---|---|---|---|
| Travel and Misc. | | $7,000 | $7,000 |
| Legal (Debtor) | $50,000 | $50,000 | $100,000 |
| Legal (Amend/Update APCHA Agmts.) | | | |
| Developer Overhead | $40,000 | $40,000 | $80,000 |
| City Fees/Costs | | $14,500 | $14,500 |
| Closing Costs for Project Recap / Chap 11 filing | | | |
| Lender Points/Fees | | | |
| Contingency (Chap 11/addl. approval. costs, etc.) | $40,250 | $100,000 | $140,250 |
| **TOTAL** | **$215,250** | **$369,750** | **$585,000** |

## PRE-PETITION DEBT STRUCTURE

31. The Debtor is indebted to Bank of America under the terms of certain loan documents, which were previously listed in the DIP Motion and defined as the "Loan Documents."

32. The Debtor's obligations to Bank of America are secured by the Deed of Trust and the Financing Statement (both previously defined in the DIP Motion), which grant Bank of America a security interest in all of the Debtor's property related to or arising from the Development Property (hereinafter and together with the Development Property, the "Collateral").

33. As of July 27, 2010, the outstanding amount of the Debtor's obligations to Bank of America under the Loan Documents, excluding interest, totals approximately $6,408,373.93.

## RULE 4001 STATEMENT

34. Pursuant to Bankruptcy Rule 4001, the Debtor requested in its DIP Motion (a) an interim order preliminarily authorizing the DIP Loan so that the Debtor could continue its negotiations with the DIP Lender, and (b) a final order authorizing and approving the DIP Loan to be made in three separate advances to the Debtor. The Court authorized the DIP Loan in its September 29, 2010 Order. Now, the Debtor requests an order authorizing the Debtor to obtain another advance from the DIP Loan.

35. Both before and following the Petition Date, the Debtor engaged in negotiations with the DIP Lender to make a post-petition loan to the Debtor for use in obtaining Preliminary Government Approvals for the Development Project. At the time of filing of the DIP Motion, the Debtor was continuing to negotiate with the DIP Lender and was able to provide the basic terms of the DIP Loan in its motion. Since the DIP Motion was filed, both the Debtor and the DIP Lender have executed the DIP Loan and have been operating under its terms. (*See* Salmen Verified Statement).

36. Pursuant to Bankruptcy Rule 4001(c) and the Instructions for Filing a Chapter 11 Case in the U.S. Bankruptcy Court, District of Minnesota, the Debtor notes that the following provisions are included in the DIP Loan and the September 29, 2010 Order approving the DIP Loan:

    a. **DIP Availability**: The DIP Loan in the amount of $1,400,000.00 may be drawn on by the Debtor on a non-revolving basis to fund costs associated with final Planned Unit Development of the Development Project by the City of Aspen.

    b. **First-Priority Lien and Administrative Expense**: First priority Deed of Trust on the Rental Property and all of the Debtor's other assets. The DIP Lender's security interest will obtain a senior position to Bank of America pursuant to Section 364(c) and (d) of the Code.

    c. **DIP Maturity**: The DIP Loan will mature on October 31, 2011. The Debtor may extend the term of the DIP Loan until April 30, 2012 by paying the DIP Lender a $10,000.00 extension fee.

    d. **Interest Rates**: Amounts outstanding under the DIP Loan will bear interest at an annual rate of the 13%, and the Debtor must pay the DIP Lender a minimum interest payment of $91,000.00, notwithstanding the amounts advanced under the DIP Loan. Additionally, the DIP Lender will receive 5% of the common equity interests in the Debtor.

    e. **DIP Facility Fee**: The DIP Lender will receive an origination fee of $50,000.00 upon closing of the loan facility. Additionally, the Debtor will pay $7,500.00 to Nantucket Capital and $2,500.00 to CB Richard Ellis for loan origination fees.

f. **Conditions of Approval**: The DIP Lender's obligation to make an advance under the DIP Loan is conditioned upon the DIP Lender's satisfaction, in its sole and absolute discretion, of (i) the value and marketability of the Rental Property; (ii) the Debtor's plan to repay the DIP Loan; (iii) the Debtor's creditworthiness; (iv) title insurance commitments for the Collateral; and (v) completion of typical commercial real estate loan documentation.

## ADEQUATE PROTECTION

37. To adequately protect Bank of America's interest, the Debtor granted Bank of America a post-petition replacement lien of the same priority, dignity, and effect as its pre-petition interest in the Debtor's collateral. The Debtor will also increase the value of the Development Property for Bank of America's benefit by using the proceeds of the DIP Loan to obtain final governmental approvals for the Development Project.

38. The Debtor also asserts that Bank of America's interest in the Collateral is adequately protected by the approximately $5,781,913.30 equity cushion in the Rental Property.

39. In the September 29, 2010 Order, this Court approved of the aforementioned adequate protection measures and ordered that "Bank of America, N.A. is deemed to be adequately protected with respect to its collateral."

40. The Debtor's offer of adequate protection and the approximately $5,781,913.30 equity cushion in the Rental Property continues to provide Bank of America with adequate protection. The Debtor's DIP Loan allows the Debtor to continue its operation until a plan of reorganization can be confirmed, which will greatly enhance the value of the Debtor and its estate. If the Debtor had not been granted authority to obtain the DIP Loan, the only alternative would have been to cease the Development Project because the Preliminary Government Approvals would have expired on October 28, 2010, and the Debtor's only asset would have been the Rental Property, which would have greatly reduced the value of Bank of America's interest.

41. By asking the Court to hold a hearing regarding another advance under the DIP Loan, the Debtor is providing Bank of America with an opportunity to review the Debtor's progress in obtaining final governmental approvals of the Development Project and bring any perceived deficiencies to the Court's attention before it approves the next advance under the DIP Loan.

42. Being able to obtain another advance from the DIP Loan will allow the Debtor to continue operations and work towards a successful reorganization of its operations and the Development Property. Such a result is in the best interest of the Debtor's estate, Bank of America and the Debtor's other creditors.

43. Prior to the hearing on this Motion, and in settlement of any and all of the matters raised in this Motion, the Debtor may enter into a stipulation or agreed order with Bank of America concerning the Debtor's next advance from the DIP Loan and other related matters. In the event the Debtor enters into any such stipulation, it will seek approval of the stipulation without further notice or hearing pursuant to Bankruptcy Rule 4001(d)(4), and the **DEBTOR HEREBY GIVES NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

44. Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call the following people to testify on behalf of the Debtor about the factual matters raised in this Motion: (a) Thomas Salmen, Vice President, Finance, of the Debtor, business address: 3208 W. Lake St. #5, Minneapolis, Minnesota 55416; (b) Thomas H. Klassen, Vice President, Operations, of the Debtor, business address: 3208 W. Lake St. #5, Minneapolis, Minnesota 55416; and (c) the person most knowledgeable from Bank of America with respect to the Bank of America Loan.

WHEREFORE, the Debtor moves the Court for an order allowing the Debtor to obtain up to a maximum amount of $585,000.00 from the DIP Loan and providing such other and further relief as the Court deems just and equitable.

Dated:  March 16, 2011　　　　　　　　　　/e/  Lara O. Glaesman
　　　　　　　　　　　　　　　　　　　Robert T. Kugler (#0194116)
　　　　　　　　　　　　　　　　　　　Lara O. Glaesman (#0316866)
　　　　　　　　　　　　　　　　　　　Adine S. Momoh (#0390085)
　　　　　　　　　　　　　　　　　　　**LEONARD, STREET AND DEINARD**
　　　　　　　　　　　　　　　　　　　　*Professional Association*
　　　　　　　　　　　　　　　　　　　150 South Fifth Street, Suite 2300
　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　　　　Telephone:  (612) 335-1500
　　　　　　　　　　　　　　　　　　　Facsimile:  (612) 335-1657

　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR PFG ASPENWALK, LLC**

## VERIFICATION

I, Thomas Salmen, an Officer of the Debtor, hereby verifies, under penalty of perjury, that I have read the foregoing Debtor's Motion for Order Authorizing Debtor to Obtain Debtor-in-Possession Financing, including Exhibits, I know the contents thereof, and the information contained therein is true and correct to the best of my knowledge, information, and belief.

Dated: March 14, 2011

*Tom S.*
Thomas Salmen, Officer

7489645v2

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

Debtor.

Chapter 11
Case No. 10-47089-RJK

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING**

PFG AspenWalk, LLC (the "Debtor") respectfully submits this memorandum in support of its Motion for Order Authorizing Debtor to Obtain Debtor-in-Possession Financing (the "Motion").

## BACKGROUND

The facts upon which the Debtor relies are set forth in the Debtor's verified Motion. All capitalized terms in this memorandum have the meanings ascribed to them in the Motion.

## ARGUMENT

A debtor may grant a post-petition lender a super-priority lien superior to that of a pre-petition lien when the pre-petition lien can be protected. A debtor-in-possession has the rights, powers and duties of a trustee pursuant to 11 U.S.C. § 1107(a). Therefore, the Debtor, as a debtor-in-possession, may utilize 11 U.S.C. § 364(d) to obtain credit. *In re Hubbard Power & Light*, 202 B.R. 680, 684 (Bankr. E.D.N.Y. 1996). Section 364(d) states:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and

> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

In authorizing a debtor to grant such a priming lien, "[t]he principal considerations before the Court are, therefore whether (1) the debtor was unable to obtain this credit on another basis and (2) whether the proposed loan and subordination of the existing lender's liens can be made while protecting the existing lender's interests." *In re Campbell Sod, Inc.*, 378 B.R. 647, 652–53 (Bankr. D. Kan. 2007). In the present case, the Debtor is entitled to obtain another advance from the DIP Loan, as both factors under 11 U.S.C. § 364(d) have been satisfied and this Court has previously found that the Debtor is entitled to grant a senior lien to the DIP Lender. Specifically, the Debtor has expended significant efforts to secure a lender willing to provide the needed financing. In addition to the equity cushion in the Development Property and Development Project, the Debtor will continue to protect Bank of America's interests by granting a lien on unencumbered assets and using the DIP Loan to significantly increase the value of the Development Property and Development Project.

I. **The DIP Lender Is the Only Available Financing Source, as the Debtor Has Unsuccessfully Sought Credit from Numerous Bases.**

The Debtor has been seeking financing since late 2008 to continue developing the Development Project. To secure a capital source, the Debtor contacted several potential lenders regarding financing for the Debtor. Three financing sources agreed to capitalize the project if the Bank of America Loan could be satisfied at a discount. Bank of America rejected this proposal and has refused to fund further advances under the Bank of America Loan. Thus, the only viable option to fund the next phase of the Development Project was and still is the DIP Lender.

Given that the Debtor remains under significant time pressure to obtain the Final PUD approval for the Development Project, it has done everything possible to obtain alternative

financing. As one court has stated, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. This is particularly true when, as the court determined here, time is of the essence." *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, the Debtor has shown that credit is not otherwise available and that it is entitled to obtain another advance from the DIP Loan.

## II. Bank of America Will Continue to be Adequately Protected by the Equity Cushion in the Development Property.

Pursuant to 11 U.S.C. § 364(d), the Debtor must present evidence that Bank of America's interest as an existing lien holder is adequately protected. Adequate protection can be a combination of (1) cash payments, (2) additional or replacement liens, or (3) some other provision to assure the secured creditor the indubitable equivalent of its interest. 11 U.S.C. § 361. The Debtor proposes to continue providing Bank of America with adequate protection in the form of the indubitable equivalent of its interest and a replacement lien.

### A. Bank of America will continue to receive adequate protection through the increased value of the Development Property after the DIP Loan is used to obtain the Preliminary Governmental Approvals.

The flexible provision of Section 361(3) allows for a wide variety of adequate protection. For instance, in *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996), the court held that a subordinated creditor was adequately protected because the proceeds of the priming loan would be used to increase the value of the collateral to the benefit of the estate, all secured creditors and parties-in-interest. Moreover, in *In re Aqua Assoc.*, 123 B.R. 192 (Bankr. E.D. Pa. 1991), the court noted that using the proceeds of a loan to enhance the value of a lender's collateral was a sufficient basis on which to allow a priming lien.

Much like the debtors in *Hubbard* and *Aqua*, the Debtor will continue to use the proceeds of the DIP Loan to enhance the value of the Rental Property. The Development Property is

4

currently valued at $12,000,000.00. Continuing to use the DIP Loan to fund the costs of obtaining final governmental approval of the Development Project will increase the value of the Development Property. This added value will inure to the benefit of not only Bank of America, but also to other creditors and parties-in-interest including the municipalities involved. In contrast, if the Preliminary Governmental Approvals are not obtained, the Development Project will have to start over in the governmental approval process. This would result in the Rental Property, valued at approximately $6,300,000.00, as the only asset of the Debtor and collateral for Bank of America. *Cf. In re Aqua Assoc.*, 123 B.R. at 198–99 (holding that using priming loan to prevent what would otherwise be loss in collateral value constitutes adequate protection). Thus, the Debtor's plan to increase the value of Bank of America's collateral while at the same time preventing a significant loss of value continues to constitute adequate protection.

    **B.    The Debtor will continue to grant Bank of America a replacement lien in Rents arising from the Rental Property.**

The Deed of Trust, which is governed by Colorado law, grants Bank of America an assignment of the rents arising from the Rental Property. The extent to which Bank of America holds that interest in rents post-petition is determined by state law. *Butner v. United States*, 440 U.S. 48, 99 (1979). Under Colorado law, an assignee of rent acquires no claim to rents until such assignee has taken certain affirmative steps to protect its lien, including taking possession of the premises or successfully appointing a receiver. *In re Colter, Inc.*, 46 B.R. 510, 512 (Bankr. D. Colo. 1984). On October 25, 2010, Bank of America filed notice pursuant to 11 U.S.C. § 546(b)(2) (the "<u>Notice</u>"), and thus has a perfected lien in the Rents, either as a direct result of the Assignment of Rents or as a result of the filing of the Notice. Bank of America's lien in the Rents means that the Rents are its cash collateral as defined in Bankruptcy Code § 363. On November 24, 2010, the Debtor and Bank of America entered into a stipulation for

5

the Debtor's use of cash collateral, including the rents arising from the Rental Property ("Cash Collateral Stipulation"). (Doc. No. 42, Exhibit A). The Cash Collateral Stipulation was approved by this Court on December 15, 2010. (Doc. No. 46).

The Debtor proposes to continue to grant Bank of America a post-petition replacement assignment of rents arising from the Rental Property on the same terms and conditions as its pre-petition assignment. While it will continue to be subordinate to the interests of the DIP Lender, Bank of America will still have the benefit of the replacement lien that it would not otherwise hold.

In sum, the replacement lien along with the equity cushion and enhanced value of the Development Property following investment of the DIP Loan proceeds continues to constitute adequate protection of Bank of America's interest. Accordingly, the requirements of Section 364(d) continue to have been met for this Court to authorize another advance from the DIP Loan.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order allowing the Debtor to obtain another advance from the DIP Loan up to a maximum amount of $585,000.00 and providing such other and further relief as the Court deems just and equitable.

Dated: March 16, 2011
/e/ Lara O. Glaesman
Robert T. Kugler (#0194116)
Lara O. Glaesman (#0316866)
Adine S. Momoh (#0390085)
**LEONARD, STREET AND DEINARD**
  *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

**ATTORNEYS FOR PFG ASPENWALK, LLC**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

Debtor.

Chapter 11
Case No. 10-47089-RJK

# CERTIFICATE OF SERVICE

I, Aong Moua, declare, under penalty of perjury, that on March 16, 2011, I filed:

**NOTICE OF HEARING AND MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING**

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of electronic filing to the following:

**William Fisher;** william.fisher@gpmlaw.com
**Timothy A. Fusco;** fusco@millercanfield.com
**Marc N Swanson;** swansonm@millercanfield.com
**Michael Fadlovich**; michael.fadlovich@usdoj.gov
**US Trustee**; ustpregion12.mn.ecf@usdoj.gov

I further certify that I caused a copy of the foregoing document and the Notice of Electronic Filing to be served by First Class Mail on the following parties:

| | |
|---|---|
| AMANDA SCHMITT<br>404 PARK AVENUE #1<br>ASPEN, CO 81611 | BANK OF AMERICA, N.A.<br>ATTN: RICHARD L. CARTER<br>2990 LAVA RIDGE CT, SUITE 120<br>ROSEVILLE, CA 95661 |
| ASPEN CUSTOM GLASS<br>601 RIO GRANDE PLACE, STE 119A<br>ASPEN, CO 81611 | BRITTANY BUFFALINO<br>404 PARK AVENUE #1<br>ASPEN, CO 81611 |
| ASPEN PITKIN HOUSING AUTHORITY<br>ATTN: TOM MCCABE, EXEC. DIR.<br>530 EAST MAIN STREET<br>ASPEN, CO 81611 | CAMERON LEONARD<br>404 PARK AVENUE #9<br>ASPEN, CO 81611 |

7489645v2

CITY OF ASPEN
130 SOUTH GALENA STREET
ASPEN, CO 81611

CLAYTON DAY
404 PARK AVENUE #2
ASPEN, CO 81611

HOLY CROSS ENERGY
P.O. BOX 2150
3799 HWY 82
GLENWOOD SPRINGS,
CO 81602

INTEGRITY PLUMBING AND HEATING
218 CODY LANE
BASALT, CO 81621

JOAQUINN TARANGO
404 PARK AVENUE #5
ASPEN, CO 81611

JONATHAN RIVERS
404 PARK AVENUE #3
ASPEN, CO 81611

JULIE COOK
404 PARK AVENUE #0
ASPEN, CO 81611

LAURENCE MONJI
404 PARK AVENUE #6A
ASPEN, CO 81611

LINDSAY FORSTER
404 PARK AVENUE #3
ASPEN, CO 81611

MANUEL CORRIPIO NORIEGA
PO BOX 2565
ASPEN, CO 81612

REBECCA POLAN
404 PARK AVENUE #1
ASPEN, CO 81611

ROSA GONGORA
404 PARK AVENUE #10
ASPEN, CO 81611

SHAUN HEALY
404 PARK AVENUE #12
ASPEN, CO 81611

SHERIDAN REAL ESTATE, LLC
ATTN: MARY ELLEN SHERIDAN
P.O. BOX 7757
ASPEN, CO 81612

SOPRIS CONSULTING GROUP, LLC
ATTN: PAUL LOTZER
5400 NORWOOD LANE
PLYMOUTH, MN 55442

STAN CLAUSON ASSOCIATES, INC
ATTN: STAN CLAUSON
412 N MILL STREET
ASPEN, CO 81611

TERMINIX
2907 D 1/2 ROAD
GRAND JUNCTION, CO 81504

WASTE MANAGEMENT-
CARBONDALE
PO BOX 78251
PHOENIX, AZ 85062

IRS
CINCINNATI, OH 45999-0025

UNITED STATES ATTORNEY
600 U.S. COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
SAINT PAUL, MN 55101

7489645v2

| | |
|---|---|
| MINNESOTA DEPARTMENT OF REVENUE<br>BANKRUPTCY SECTION<br>P.O. BOX 64447<br>SAINT PAUL, MN  55164-00447 | SOURCE GAS DISTRIBUTION LLC<br>P.O. BOX 13288<br>FAYETTEVILLE, AR 72703 |
| INTERNAL REVENUE SERVICE<br>STOP 5700<br>30 EAST SEVENTH STREET, #1222<br>SAINT PAUL, MN  55101-4940 | HONEYCOMB INTERNET SERVICES LL<br>77 13TH AVE. NE SUITE 210<br>MINNEAPOLIS, MN 55413 |
| Dated:  March 16, 2011 | /e/  Aong Moua<br>Aong Moua |

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

Chapter 11
Case No. 10-47089-RJK

          Debtor.

## ORDER AUTHORIZING DEBTOR TO OBTAIN
## DEBTOR-IN-POSSESSION FINANCING

Upon consideration of the debtor's motion for an order authorizing the debtor to obtain debtor-in-possession financing,

**IT IS ORDERED:**

The debtor is authorized to draw $585,000.00 under the debtor-in-possession loan as provided in the debtor's motion.

Dated:

          Robert J. Kressel,
          U.S. Bankruptcy Court Judge