## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

               Debtor.

Chapter 11
Case No. 10-47089-RJK

Honorable Robert J. Kressel

## RESPONSE MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION FOR RELIEF FROM STAY

PFG AspenWalk, LLC (the "Debtor") respectfully submits this memorandum in opposition to Bank of America, N.A.'s Motion for Relief from Stay (the "Motion").

## INTRODUCTION

Upon confirmation, the Debtor's Amended Plan will pay all creditors, including Bank of America, in full, and will further allow for the Debtor's successful reorganization. Despite these facts, and despite the fact that the Debtor is now only a few weeks away from approvals that will dramatically increase the value of its property and almost certainly lead to the confirmation of its Amended Plan, Bank of America is now asking for relief from the automatic stay to pursue its remedies against the Debtor's property.

The circumstances of this case do not justify the relief that Bank of America seeks. The Debtor has done everything in its power to move this case forward efficiently, there is every reason to believe that the Debtor will obtain the financing and approvals necessary to confirm its Amended Plan in the very near term, and once the Debtor obtains such approvals, it will pay all of its creditors in full and proceed with development of the Project in its reorganization. Further, Bank of America is not entitled to relief from the stay as a matter of law. The Debtor satisfied its obligations under 11 U.S.C. § 362(d)(3) by filing a plan within the Court-ordered timeframe.

The only question that the Court needs to address at this juncture is whether or not the Debtor's confirmation deadline should be enlarged.

Accordingly, because the relief sought by Bank of America is not justified by the facts of this case or by Section 362(d)(3), the Debtor respectfully asks the Court to deny Bank of America's motion in its entirety.

## BACKGROUND

A.     **DEBTOR'S EFFORTS TO OBTAIN FINAL PUD APPROVAL AND FINANCING**[1]

Since the filing of its petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), the Debtor has operated its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Code. The Debtor's primary assets consist of: (i) real property located at 404 Park Avenue, Aspen, Pitkin County, Colorado (the "Rental Property") and the proceeds generated therefrom; (ii) the Debtor's rights under a purchase agreement for 414 Park Circle, Aspen, Pitkin County, Colorado; and (iii) a joint development agreement with Aspen Pitkin County Housing Authority covering the development of the Rental Property and the 414 Park Circle, Aspen, Pitkin County, Colorado property (collectively, the "Development Property"), all for the purpose of constructing a residential condominium project (the "Project"). To finance the acquisition of the Development Property, obtain Project approvals, and construct the Project, the Debtor used the proceeds of a loan (the "Bank of America Loan") from Bank of America, N.A., as successor in interest to LaSalle Bank National Association, a national banking association ("Bank of America").

Before the Debtor could begin the Project, it had to obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD")

---

[1]  *See* the attached Affidavits of Thomas Salmen and Stan Clauson in support of the recitation of facts in this section.

approval (collectively, "Preliminary Government Approvals") for the Project from the Aspen City Council.  In or around October 2007, the Debtor submitted an application to the Aspen City Council ("City Council") requesting Conceptual PUD approval for the Project.  On or about October 27, 2008, the City Council passed Resolution No. 74, granting Conceptual PUD approval for the Debtor's Project.  Conceptual PUD approval for the Project was to expire on or about October 29, 2009.  In or around September 2009, the Debtor submitted a request to the City Council for a one-year extension of the Conceptual PUD approval.  On or about October 13, 2009, the City Council granted the Debtor's request, extending Conceptual PUD approval until October 28, 2010.  On or about October 12, 2010, the Debtor filed an application with the City of Aspen seeking Final PUD approval.  On or about October 18, 2010, the City of Aspen confirmed that the Debtor's submittal package for application for Final PUD approval was deemed complete.

On February 15, 2011, the Debtor attended a hearing before the City of Aspen Planning and Zoning Commission ("Commission") in relation to the Project.  The Debtor attended additional hearings before the Commission on March 15, 2011 and May 3, 2011.  During the May 3, 2011 hearing, the Commission granted certain approvals under its purview and voted to recommend the Project to the City Council for consideration of the Debtor's submission for Final PUD approval.  On May 6, 2011, the City Council provided its appearance schedule for the following months.  Scheduling of the City Council hearings is subject to its availability.

The City Council scheduled the first reading (the "First Reading") of an approval ordinance for June 13, 2011.  The date for the First Reading was selected by the Community Development Department as the members of the City Council had recently changed; the City Council was not in a position to schedule an earlier date due to the recent change in membership.

8041599v3

The First Reading is a brief introduction to the project and an opportunity for the City Council members to ask some initial questions and make a few points of what they would like addressed when the Debtor has a second reading. The City Council heard a presentation from Community Development Department staff at the First Reading, articulated a number of questions they had regarding the Project, and voted to approve the application for a second reading to be heard on July 11, 2011 ("Second Reading"). This date allowed for the required public notification period prior to Second Reading. The Debtor was subsequently scheduled as the second agenda item for this date. Another project that was ahead of the Debtor in the City Council's queue took up the June dates and the first part of the July 11, 2011 hearing.

The second reading is the first substantive hearing or series of hearings, typically lasting several hours and consisting of presentations, public comment, etc  The date for the Second Reading was selected by the Community Development Department because it is the first meeting for the newly seated City Council. At the end of the July 11 appearance,  the City Council voted to continue the Second Reading hearing to July 25, 2011, to allow for further presentation and public comment. The City Council also reserved hearing dates for August 8, 2011, August 22, 2011, and September 12, 2011, in the event that additional dates are necessary.  Because additional hearing dates may be required by the City Council on the Debtor's application for Final PUD approval, the Debtor is seeking to enlarge the timeframe in which it may obtain confirmation of its Amended Plan through September 14, 2011, or a later date deemed appropriate by the Court.

Assuming Final PUD approval, the Debtor has been working with potential lenders in order to obtain financing sufficient to fund the Amended Plan. The Debtor has not obtained an appraisal for the Project to date as it was not worth incurring the large expense in the unlikely

event that Final PUD approval is not obtained.  Now that Final PUD approval is likely, working on the financing (which will require an appraisal) makes sense.  On July 18, 2011, the Debtor received a "2nd Revised Letter of Interest" ("LOI") from Kennedy Funding, Inc. ("Kennedy Funding"), which outlines the terms of a proposed commitment to provide funding in the amount of $9 million.  In accordance with Paragraph 5 of the LOI, the Debtor delivered a check in the amount of $10,000.00 to Kennedy Funding as a deposit for obtaining a loan commitment from Kennedy Funding.  According to the LOI, the closing of the proposed loan could occur "as quickly as seven (7) to ten (10) days after completion of [Kennedy Funding's] due diligence . . . ."  On or about July 20, 2011, in accordance with Paragraph 5 of the LOI, the Debtor received a draft commitment ("Draft Commitment") from Kennedy Funding related to the proposed financing identified in the LOI.  Under the Proposed Commitment, closing for the $9 million loan will take place "no later than August 17, 2011" as "time is of the essence."  This, however, contemplates that a final commitment is executed on July 27, 2011 – therefore, closing will occur three weeks after execution of a firm commitment.  The Debtor is simply waiting on Final PUD approval prior to finalizing the loan commitment and closing the loan three weeks thereafter.

## B.      PROCEDURAL HISTORY

On November 24, 2010, this Court entered an order providing, among other things, that the Debtor would file a plan and a proposed disclosure statement no later than May 31, 2011 ("Order Setting Deadlines") [Doc. No. 41].  On December 14, 2010, Bank of America filed its Motion for Determination that the Debtor's Bankruptcy Case is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51)(B) ("Bank of America's Motion") [Doc. No. 44].  On January 4, 2011, the Debtor and Bank of America entered into a stipulation setting March 15,

2011, as the Debtor's deadline to file a plan and proposed disclosure statement and August 1, 2011, as the Debtor's deadline to obtain confirmation of a plan ("Stipulation") [Doc. No. 51]. The Court entered an order approving the Stipulation on January 5, 2011 ("Order") [Doc. No. 52].

On March 15, 2011, the Debtor filed its disclosure statement ("Disclosure Statement") [Doc. No. 71] and plan of reorganization ("Plan of Reorganization") [Doc. No. 72]. The Debtor filed an amended disclosure statement ("Amended Disclosure Statement") [Doc. No. 93] and amended plan of reorganization ("Amended Plan") [Doc. No. 94] on May 10, 2011. On May 12, 2011, the Court entered an order approving the Amended Disclosure Statement and set a confirmation hearing date of June 22, 2011, and related deadlines [Doc. No. 98], which was continued to July 27, 2011 [Doc. No. 101].

Because the City Council notified the Debtor at the conclusion of the July 11 hearing that the Debtor needs to appear before the City Council again on July 25, for presentation and public comment and also reserved three additional hearing dates if necessary, the Debtor immediately filed a motion for an order authorizing the enlargement of the Debtor's deadline to obtain confirmation of the Amended Plan [Doc. no. 107] ("Enlargement Motion"). Specifically, in the Enlargement Motion, the Debtor seeks to extend the confirmation deadline from August 1, 2011, to September 14, 2011. The hearing on the Enlargement Motion is set for July 27, 2011, which is the day before the hearing on Bank of America's Motion. Additionally, the Debtor filed a notice of continued confirmation hearing [Doc. No. 111]. Earlier today, Bank of America filed an objection to the Enlargement Motion [Doc. No. 112] ("Enlargement Objection").

## ARGUMENT

The Debtor's Amended Plan will pay all of the Debtor's creditors in full upon its confirmation. Since February 2011, the Debtor has worked extensively with the Commission and City Council and has complied with all requirements to date in order to obtain Final PUD Approval. The Debtor has also taken all steps necessary to secure financing to confirm its Amended Plan. Unfortunately, despite making every possible effort, through no fault of its own, the Debtor likely will not have an opportunity to obtain Final PUD approval by August 1, 2011. The City Council's agenda was pushed back – something the Debtor could neither have anticipated nor controlled – and the Debtor was thus unable to appear before the City Counsel to obtain approval prior to the Court's original confirmation deadline. The Debtor is currently scheduled to appear before the City Counsel in July and August, and possibly early September. Permitting the Debtor an additional forty-five days to obtain confirmation is more than justified by the imminent prospect of confirmation, which will not only satisfy Bank of America's entire debt, but also the debts of all unsecured creditors, and also will result in a successful reorganization.

**A.      The Debtor has done everything reasonable to obtain Final PUD approval and secure financing**

In its Enlargement Objection, Bank of America argues that even if the Debtor is in a position to obtain Final PUD approval, it has made "little, if any, meaningful progress on obtaining financing." (Enlargement Objection at ¶ 1) In reality, the Debtor has secured letters of interest from a lender, made a $10,000.00 deposit to initiate the financing process and obtain a loan commitment, and received a draft loan commitment in the amount of $9 million. Further, despite scheduling issues with the City Council, the Debtor has navigated the PUD approval process as best it could, and will likely obtain Final PUD approval in the next few weeks. Upon

execution of the loan commitment shortly after Final PUD approval, the lender will conduct its due diligence (including an appraisal of the Project) and the loan will close three weeks thereafter. The Debtor has as efficiently as possible set in motion the processes to obtain Final PUD approval and replacement financing in order to satisfy the debts of all creditors, including Bank of America, and allow for successful reorganization of the Debtor. The Debtor's significant progress toward obtaining confirmation of its plan warrants additional time to do so.

**B.** **The Court has discretion to enlarge the Debtor's confirmation deadline**

Rule 9006(b) of the Federal Rules of Bankruptcy Procedure provides that the Court for cause shown may at any time in its discretion enlarge a specified period of time in an order:

> [E]xcept as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . . .[2]

Fed. R. Bankr. P. 9006(b).

11 U.S.C. § 105 also provides the Court with broad discretion to issue any order, process, or judgment necessary and appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105 (2011); *see In re Chaterhouse, Inc.*, 84 B.R. 147, 154 (Bankr. D. Minn. 1988) (stating that bankruptcy courts have "considerable latitude to fashion the ultimate form of the relief which it accords to parties before it"). Because the Court established the confirmation deadline applicable in this case, the Court has explicit discretion to enlarge the deadline pursuant to Rule 9006(b) and 11 U.S.C. § 105.

---

[2] The Debtor has already requested an extension of the August 1, 2011 plan confirmation deadline in its Enlargement Motion.

8041599v3

## C.     The Debtor complied with 11 U.S.C. § 362(d)(3)(A)

The Debtor satisfied § 362(d)(3) of the Bankruptcy Code by filing a plan that had a "reasonable possibility of being confirmed within a reasonable time," and by doing so within the timeframe prescribed by the Order. 11 U.S.C. § 362(d)(3)(A). The mere fact that, despite its best efforts, the Debtor will be unable to meet the August 1, 2011 plan confirmation deadline does not justify granting Bank of America's Motion for relief from stay.

Bank of America provides no argument (let alone authority) in its Motion for the proposition that merely extending a confirmation deadline under circumstances like those present in this case would constitute a deviation from the requirements of 11 U.S.C. § 362(d)(3)(A). Moreover, Bank of America provides no authority for the extraordinary proposition that a creditor should be granted relief from the automatic stay under 11 U.S.C. § 362(d)(3) after a debtor has satisfied the expedited ***proposal*** requirements of § 362(d)(3)(A). The determination as to whether or not a confirmation deadline extension is warranted is properly analyzed (as indicated above) under Rule 9006(b) and § 105 of the Bankruptcy Code. Accordingly, because the Debtor satisfied the proposal requirements of 11 U.S.C. § 362(d)(3)(A), Bank of America is not entitled to relief from the stay under that provision.

## D.     Even if granted, relief from stay should be conditioned to allow the Debtor time to confirm its plan

Even if relief is granted under § 362(d)(3), such relief should be conditioned to allow the Debtor time to confirm its Amended Plan under the present circumstances.

> While Congress may have enacted § 362(d)(3) to protect the interests of secured creditors in single asset real estate cases, it did not completely abrogate the bankruptcy court's discretion to tailor the appropriate relief for failure to strictly comply with the requirements of § 362(d)(3).

8041599v3

*In re Archway Apts., Ltd.*, 206 B.R. 463, 465 (Bankr. M.D. Tenn. 1997); s*ee In re Hope Plantation Group, LLC*, 393 B.R. 98, 104 (Bankr. D.S.C. 2007) (enforcing stay to allow for further hearings regarding the progress of the debtor's plan, despite failure to strictly comply with § 362(d)(3)); *In re Planet 10, L.C.*, 213 B.R. 478 (Bankr. E.D. Va. 1997) ("[T]he unconditional lifting of the stay is not mandatory."); *cf. NationsBank, N.A. v. LDN Corp.*, 191 B.R. 320 (Bankr. E.D. Va. 1996) (holding that mandatory relief is required when § 362(d)(3) is not strictly complied with).

This Court retains discretion to fashion less than absolute stay relief even if relief is granted under § 362(d)(3). Appropriate relief (if granted) in this case would be conditioning the automatic stay to afford the Debtor an opportunity to obtain Final PUD approval and confirmation of its plan of reorganization as requested in the Debtor's Enlargement Motion. *See e.g.*, *In re Terraces Subdivision, LLC*, No. A07-00048-DMD, 2007 WL 2220448, at *4 (Bankr. D. Alaska Aug. 2, 2007) (conditioning stay upon confirmation of a plan and holding failure to do so would result in termination of stay without any further action); *Archway Apts.*, 206 B.R. 463 (rather than lifting the stay, the court imposed a time limit on the debtor within which the plan had to be confirmed, or relief from stay would be granted); *see Hope Plantation*, 393 B.R. at 104.

Conditioning the automatic stay in order to allow the Debtor to obtain final PUD approval and confirm its Amended Plan by September 14, 2011, is in the best interest of all parties. Without Final PUD approval and confirmation of the Amended Plan, the unsecured creditors stand to recover very little, if anything. Therefore, extending the confirmation deadline an additional forty-five days is of significant value.

By extending the confirmation deadline, the Debtor will be in a much better position to obtain Final PUD approval – the main issue causing confirmation to be delayed. Since this case was commenced ten months ago, the Debtor has moved the Project successfully through the Conceptual PUD Approval process and the numerous Commission hearings, and is now navigating its way through the last phase of the Final PUD approval process — the hearings before the City Council. The Commission and City Council added additional hearing dates to the Final PUD Approval process, which the Debtor could not have anticipated when it entered into the Stipulation over seven months ago. The Debtor had every intention of obtaining confirmation by August 1, 2011, but the City Council's hearing agenda got pushed back due to other matters. The Debtor remains confident in its ability to obtain Final PUD approval, but will simply need more time based on the unforeseen delays.

Contrary to Bank of America's assertions, the Debtor has obtained a letter of intent, made a $10,000.00 deposit, and received a proposed loan commitment in the amount of $9 million from Kennedy Funding, which is sufficient to fund the Debtor's Amended Plan (*see* Affidavit of Thomas R. Salmen). The loan can close as early as August 17, 2011, or as soon as possible after Final PUD approval is obtained. The new financing can therefore close in plenty of time to allow for confirmation of the Amended Plan under the Debtor's proposed extended deadline of September 14, 2011. Financing is not an issue that will prevent confirmation, but is definitely contingent upon Final PUD approval. As such, the Debtor recently obtained a proposed commitment and stands to close within the next month if things proceed as planned.

The only major issue standing in the way of confirmation resulting in payment to all creditors and a successful reorganization is a relatively short period of time. The Debtor made best efforts to confirm its Amended Plan by the August 1, 2011 deadline. The delays are through

no fault of its own, and the prospect of confirmation is likely to occur on or prior to September 14, 2011. If the Court grants Bank of America's relief from the stay, the Debtor requests that such relief be conditioned upon its failure to obtain confirmation by September 14, 2011, or a later date deemed appropriate by the Court.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Debtor respectfully requests that this Court deny Bank of America's Motion for Relief from Stay. In the alternative, the Debtor respectfully requests that if the Court determines that Bank of America is entitled to relief from the automatic stay, that such relief is conditioned upon the Debtor's failure to confirm a plan by September 14, 2011, or a later date deemed appropriate by the Court.

Dated: July 22, 2011

Respectfully submitted,

/e/ Lara O. Glaesman
Robert T. Kugler (#0194116)
Lara O. Glaesman (#0316866)
Edwin H. Caldie (#0388930)
**LEONARD, STREET AND DEINARD**
  *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

**ATTORNEYS FOR PFG ASPENWALK, LLC**

In re:

PFG ASPENWALK, LLC,

      Debtor.

Chapter 11
Case No. 10-47089-RJK

**AFFIDAVIT OF THOMAS SALMEN IN SUPPORT OF THE**
**DEBTOR'S RESPONSE MEMORANDUM IN OPPOSITION TO**
**BANK OF AMERICA'S MOTION FOR RELIEF FROM STAY**

STATE OF MINNESOTA      )
                            ss.:
COUNTY OF HENNEPIN     )

      Thomas Salmen, being first duly sworn upon oath, states as follows:

      1.      I serve as Vice President of Finance for PFG AspenWalk, LLC (the "Debtor"), and I make this affidavit under penalty of perjury, in connection the Debtor's Memorandum In Opposition to Bank of America's Motion For Relief From the Stay (the "Memorandum"). All capitalized terms not defined herein shall have the meaning set forth in the Memorandum.

      2.      The Debtor's primary assets consist of the following: (i) real property located at 404 Park Avenue, Aspen, Pitkin County, Colorado (the "Rental Property") and the proceeds generated therefrom; (ii) the Debtor's rights under a purchase agreement for 414 Park Circle, Aspen, Pitkin County, Colorado; and (iii) a joint development agreement with Aspen Pitkin County Housing Authority covering the development of the Rental Property and the 414 Park Circle, Aspen, Pitkin County, Colorado property (collectively, the "Development Property"), all for the purpose of constructing a residential condominium project (the "Project").

3.      To finance the acquisition of the Development Property, obtain Project approvals, and construct the Project, the Debtor used the proceeds of a loan (the "<u>Bank of America Loan</u>") from Bank of America, N.A., as successor in interest to LaSalle Bank National Association, a national banking association ("<u>Bank of America</u>").

4.      Before the Debtor could begin the Project, it had to obtain both Conceptual Planned Unit Development ("<u>Conceptual PUD</u>") approval and Final Planned Unit Development ("<u>Final PUD</u>") approval (collectively, "<u>Preliminary Government Approvals</u>") for the Project from the Aspen City Council ("<u>City Council</u>").

5.      In or around October 2007, the Debtor submitted an application to the City Council requesting Conceptual PUD approval for the Project.

6.      On or about October 27, 2008, the City Council passed Resolution No. 74, granting Conceptual PUD approval for the Debtor's Project.

7.      Conceptual PUD approval for the Project was to expire on or about October 29, 2009.  In or around September 2009, the Debtor submitted a request to the City Council for a one-year extension of the Conceptual PUD approval.

8.      On or about October 13, 2009, the City Council granted the Debtor's request, extending Conceptual PUD approval until October 28, 2010.

9.      On or about October 12, 2010, the Debtor filed an application with the City of Aspen seeking Final PUD approval.

10.     On or about October 18, 2010, the City of Aspen confirmed that the Debtor's submittal package for application for Final PUD approval was deemed complete.

11.     On February 15, 2011, the Debtor attended a hearing before the City of Aspen Planning and Zoning Commission ("Commission") in relation to the Project. The Debtor attended additional hearings before the Commission on March 15, 2011 and May 3, 2011.

12.     During the May 3, 2011 hearing, the Commission granted certain approvals under its purview and voted to recommend the Project to the City Council for consideration of the Debtor's submission for Final PUD approval.

13.     On May 6, 2011, the City Council provided its appearance schedule for the following months. The scheduling of appearances at City Council hearings is subject to the City Council's schedule and availability.

14.     The City Council scheduled the First Reading of an approval ordinance for June 13, 2011. The date for the First Reading was selected by the Community Development Department as the members of the City Council had recently changed; the City Council was not in a position to schedule an earlier date due to the recent change in membership.

15.     The First Reading is a brief introduction to the project and an opportunity for the City Council members to ask some initial questions and make a few points of what they would like addressed at a second reading. The second reading is the first substantive hearing or series of hearings, typically lasting several hours and consisting of presentations, public comment, etc. The City Council heard a presentation from Community Development Department staff at First Reading, articulated a number of questions they had regarding the project, and voted to approve the application for Second Reading, setting the date of July 11, 2011 for Second Reading. The Debtor was subsequently scheduled as the second agenda item at the July 11, 2011 hearing.

16.     In addition to the Second Reading date, the City Council also provided calendar dates of July 25, 2011 and August 8, 2011 for the Debtor in the event the City Council requires additional hearings.

17.     On June 13, 2011, the Debtor appeared at the First Reading.  The City of Aspen planner assigned to the project made a brief presentation about the Project on behalf of the Debtor and, following questions and comments from City Council members, the City Council voted to move the Project to a Second Reading on July 11, 2011.

18.     On July 11, 2011, the Debtor appeared at the Second Reading.  Because of another project ahead of the Debtor at the July 11 hearing, the Debtor was only given a short period of time to make its presentation and there was no public comment.  At the end of this appearance, the City Council voted to continue the Second Reading hearing to July 25, 2011, to allow for further presentation and public comment. The City Council also reserved hearing dates for August 8, 2011, August 22, 2011, and September 12, 2011, in the event that additional dates are necessary.

19.     Assuming Final PUD approval, the Debtor has been working with potential lenders in order to obtain financing sufficient to fund the Amended Plan.

20.     The Debtor has not obtained an appraisal for the Project to date as it was not worth incurring the large expense in the unlikely event the Final PUD is not approved.  Now that Final PUD approval is likely, working on the financing (which will require an appraisal) makes sense.

21.     On July 18, 2011, the Debtor received a "2nd Revised Letter of Interest" ("LOI") from Kennedy Funding, Inc. ("Kennedy Funding"), which outlines the terms of a proposed

commitment to provide funding in the amount of $9 million.  Attached as **<u>Exhibit A</u>** is a true and correct copy of the executed LOI.

22.     In accordance with Paragraph 5 of the LOI, the Debtor delivered a check in the amount of $10,000.00 to Kennedy Funding as a deposit for obtaining a loan commitment from Kennedy Funding.

23.     According to the LOI, the closing of the proposed loan could occur "as quickly as seven (7) to ten (10) days after completion of [Kennedy Funding's] due diligence . . . ."

24.     On or about July 20, 2011, in accordance with Paragraph 5 of the LOI, the Debtor received a draft commitment ("<u>Draft Commitment</u>") from Kennedy Funding related to the proposed financing identified in the LOI.  Attached as **<u>Exhibit B</u>** is a true and correct copy of the Draft Commitment provided by Kennedy Funding.

25.     Under the Draft Commitment, the closing for the $9 million loan will take place "no later than August 17, 2011" as "time is of the essence."  This, however, contemplates that a final commitment is executed on July 27, 2011 – therefore, closing will occur three weeks after execution of a firm commitment.

26.     With Final PUD approval, the value of the Project will increase substantially, thereby justifying the $9 million loan.

27.     The Debtor is simply waiting on Final PUD approval prior to finalizing and executing a firm commitment.  The Debtor will execute a final commitment and close the $9 million loan approximately three weeks after Final PUD approval.

28.     The Debtor has had no reason to seek an appraisal for the Project as that process is a part of Kennedy Funding's due diligence.

29.     The Debtor will make every effort to receive Final PUD approval by August 24, 2011, thereby allowing the loan closing to occur by the Debtor's proposed extended confirmation deadline (September 14, 2011).

30.     Assuming the $9 million loan closes and the Amended Plan is thereby confirmed, all creditors, including Bank of America, will be paid in full.

FURTHER AFFIANT SAYETH NOT.

PFG ASPENWALK, LLC



Thomas Salmen
Vice President of Finance

Subscribed and sworn to before me
this 23nd day of July, 2011.

Notary Public

NOREEN SCHERTLER
Notary Public
Minnesota
My Commission Expires January 31, 2015

# EXHIBIT A



# KENNEDY FUNDING, INC.

TWO UNIVERSITY PLAZA
SUITE 402
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-8500
FAX: (201) 342-8373
www.kennedyfunding.com

## 2nd REVISED
## LETTER OF INTEREST

July 18, 2011

Mr. Thomas R. Salmen
PFG Aspen Walk, LLC
3208 W. Lake Street #5
Minneapolis, MN 55416

Via Email: trsalmen@gmail.com

Re:    $9,000,000 Financing Request

Dear Mr. Salmen:

Pursuant to our discussion regarding the above loan request, I am pleased to submit the following <u>Letter of Interest.</u> In no way should this be considered a firm loan commitment. Outlined below are the general terms and conditions required by Kennedy Funding, Inc. (KFI). These terms are only general guidelines, and only upon issuance of a firm commitment can exact terms of the loan commitment be determined.

This <u>Letter of Interest</u> shall expire one (1) week from issuance.

TERMS:

1.    KFI would make a Loan up to Fifty Five Percent (55%) of the Market Value of the collateral used as security for the Loan. If Borrower were to dispute the value as determined by KFI, Borrower would have the right to have a third party appraiser hired, approved by KFI, and KFI would offer a Loan of Fifty Five Percent (55%) of the "as is" Market Value as determined by said appraiser or return the paid portion of the commitment fee. The Market Value would be based on a six (6) month sale to a cash buyer.

2.    The Loan would be for three years interest only with no prepayment penalty.

3.    The interest rate for the first year of the Loan shall be equal to the greater of (i) Twelve Percent (12%) or (ii) the Prime Rate plus Eight and Three Quarters Percent (8 3/4%).

   The interest rate for the second year of the Loan shall be equal to the greater of (i) Fifteen Percent (15%) or (ii) the Prime Rate (as defined below) plus Eleven and Three Quarters Percent (11 3/4%).

   The interest rate for the third year of the Loan shall be equal to the greater of (i) Eighteen Percent (18%) or (ii) the Prime Rate (as defined below) plus Fourteen and Three Quarters Percent (14 3/4%).

   As used in herein, the term "Prime Rate" shall mean the rate of interest published in The Wall Street Journal from time to time as the "Prime Rate." If more than one "Prime Rate" is published in The Wall Street Journal for a day, the average of such "Prime Rates" shall be used, and such average shall be rounded up to the nearest one-eighth of one percent (0.125%). If The Wall Street Journal ceases to publish the "Prime Rate," the Agent shall select an equivalent publication that publishes such "Prime Rate," and if such "Prime Rates" are no

longer generally published or are limited, regulated or administered by a governmental or quasigovernmental body, then Agent shall elect a comparable interest rate index.

4.  In lieu of equity, a FEE of Three Percent (3%) of the Loan amount would be paid to KFI from the loan proceeds at closing.

5.  Upon receipt of a $10,000 wire transfer or certified check, which would be applied toward the commitment fee, KFI would provide you with a draft of a commitment containing the terms and conditions of the loan commitment to be reviewed by you and your counsel. This amount is fully refundable for any reason if you do not execute a loan commitment with KFI and you request in writing within one (1) year of the date of this letter the return of the $10,000.

6.  Upon signing of the commitment, a commitment fee equal to Four Percent (4%) of the financing request is due; one half would be payable at the signing, and the remainder would be payable from the Loan proceeds at closing. This fee would be fully refundable if KFI does not perform its obligations under the loan commitment.

7.  Notwithstanding anything herein to the contrary, the obligation of the Guarantor shall be released provided the Borrower and/or Guarantor, their agents, servants and/or employees:

    (i) take no action to hinder, frustrate or delay the Lender in its efforts to enforce any right to collect the outstanding obligation from any of the property pledged as Collateral for this Loan; and

    (ii) provide a deed in lieu of foreclosure at the request of Lender, with the real estate taxes paid current, no other liens on the property, and no environmental issues on the Collateral.

8.  The loan must be closed pursuant to the terms and conditions of the KFI commitment.

9.  Closing could occur in as quickly as seven (7) to ten (10) days after completion of our due diligence and receipt of title and all required documents. Our due diligence would commence within 24 hours after KFI receives an executed loan commitment from you.

10. Notwithstanding anything to the contrary contained herein, in no event shall the interest rate contracted for, charged, or received exceed the maximum rate allowed by law.

**THIS IS NOT A LOAN COMMITMENT.**

Very truly yours,

KENNEDY FUNDING, INC.

Mark Falzone
Senior Loan Officer

I hereby acknowledge and agree to the above terms and authorize KFI to obtain credit information on myself.

Thomas R. Salmen
PFG Aspen Walk, LLC

Av/loi/Hay..PFG/MF

EXHIBIT B

July 20, 2011

PFG Aspen Walk, LLC
3208 W. Lake Street #5
Minneapolis, MN 55416
Attn:   Mr. Thomas R. Salmen

**Re:       Financing Request $9,000,000**

Dear Mr. Salmen:

We are pleased to advise you of our commitment to provide financing.  This commitment supersedes all previous communications and correspondence without limitation.  The terms of this Loan Commitment are as follows:

**LENDER:**                     Kennedy Funding, Inc. (KFI), or any other Lender designated by KFI: KFI intends to bring participants into this transaction and reserves the right to assign or sell participations in all or part of the Loan (the "Loan") described hereunder.

**BORROWER:**              PFG Aspen Walk, LLC                    FEIN#  TO BE PROVIDED
                                          3208 W. Lake Street #5
                                          Minneapolis, MN 55416


**GUARANTORS:**           Thomas R. Salmen             SS# **TO BE PROVIDED**
                                          Full Address   **TO BE PROVIDED**


                                          Notwithstanding anything herein to the contrary, the obligation of the Guarantor shall be released provided the Borrower and/or Guarantor, their agents, servants and/or employees:

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

35

36          (i) take no action to hinder, frustrate or delay the Lender in its efforts to enforce

37          any right to collect the outstanding obligation from any of the property pledged

38          as Collateral for this Loan; and

39

40          (ii) provide a deed in lieu of foreclosure at the request of Lender, with the real

41          estate taxes paid current, no other liens on the property, and no environmental

42          issues on the Collateral.

43

44  **COLLATERAL/**

45  **PROJECT:**          A first lien on the Collateral as described in Schedule "C".

46

47  **MAXIMUM**

48   **LOAN:**          A Loan of Nine Million Dollars ($9,000,000) including the FEE, fees and costs

49          in accordance with Schedule A attached.

50

51  **TERMS:**          The term of the Loan shall be three (3) years from the date of closing.   The

52          closing shall take place not later than August 17, 2011, <u>time of the essence</u>.  The

53          <u>time of the essence</u> date was included at the insistence of the Borrower who has

54          represented that it will be in a position to meet all requirements contained herein

55          by said date.

56

57          Notwithstanding anything to the contrary above, in the event Borrower has

58          accepted the Loan Offer and requires additional time to close, Borrower may

59          extend the expiration date of this Commitment until September 16, 2011, time of

60          the essence, upon written notice to KFI and payment of Ninety Thousand Dollars

61          ($90,000) no later than August 15, 2011, time of the essence.

62

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

| | | |
|---|---|---|
| 63 | **INTEREST**: | **A.** The interest rate for the first year of the Loan shall be equal to the greater of |
| 64 | | (i) Twelve Percent (12%) or (ii) the Prime Rate plus Eight and Three Quarters |
| 65 | | Percent (8 3/4%). |
| 66 | | |
| 67 | | **B.** The interest rate for the second year of the Loan shall be equal to the greater |
| 68 | | of (i) Fifteen Percent (15%) or (ii) the Prime Rate plus Eleven and Three |
| 69 | | Quarters Percent (11 3/4%). |
| 70 | | |
| 71 | | **C.** The interest rate for the third year of the Loan shall be equal to the greater of |
| 72 | | (i) Eighteen Percent (18%) or (ii) the Prime Rate plus Fourteen and Three |
| 73 | | Quarters Percent (14 3/4%). |
| 74 | | |
| 75 | | **D.** Monthly payments of interest only on the unpaid balance shall be due on the |
| 76 | | first day of each month for the prior month's interest until the maturity date, at |
| 77 | | which time the entire balance of principal and accrued and unpaid interest |
| 78 | | thereon shall be due and payable in full. |
| 79 | | |
| 80 | | **E.** Monthly payments will be computed on a 30 day month and a 360 day year. |
| 81 | | |
| 82 | | **F.** Interest from the date of closing to the end of the month in which the closing |
| 83 | | takes place shall be paid at the time of the closing. |
| 84 | | |
| 85 | | **G.** As used in herein, the term "Prime Rate" shall mean the daily rate of interest |
| 86 | | published in The Wall Street Journal from time to time as the "Prime Rate." If |
| 87 | | more than one "Prime Rate" is published in The Wall Street Journal for a day, or |
| 88 | | if the daily "Prime Rate" fluctuates over any Thirty (30) day period, the average |
| 89 | | of such daily "Prime Rates" shall be used for any monthly interest calculation, |
| 90 | | and such average shall be rounded up to the nearest one-eighth of one percent |
| 91 | | (0.125%). If The Wall Street Journal ceases to publish the "Prime Rate," the |
| 92 | | Lender shall select an equivalent publication that publishes such "Prime Rate," |

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

| 93 | | and if such "Prime Rates" are no longer generally published or are limited, |
|----|---|---|
| 94 | | regulated or administered by a governmental or quasigovernmental body, then |
| 95 | | Agent shall elect a comparable interest rate index. |
| 96 | | |
| 97 | **FEE:** | Three Percent (3%) of the Loan amount. |
| 98 | | |
| 99 | **REPAYMENT:** | The Loan may be prepaid in full or in part without penalty except there shall be |
| 100 | | no refund of the FEE, points, fees and the like. The unused portion of any |
| 101 | | Monthly Prepaid Interest is refundable. |
| 102 | | |
| 103 | **LEGAL MATTERS:** | **The interests of the Borrower and Lender are or may be different and may** |
| 104 | | **conflict, and the Lender's attorney represents only the Lender and not the** |
| 105 | | **Borrower and the Borrower is, therefore, advised to employ an attorney of** |
| 106 | | **the Borrower's choice licensed to practice in the State of New Jersey to** |
| 107 | | **represent the interests of the Borrower.** |
| 108 | | |
| 109 | | The Borrower shall be required to pay to the Lender's attorney, reasonable legal |
| 110 | | fees and expenses of Lender's attorney for services provided to Lender in |
| 111 | | connection with this transaction. |
| 112 | | |
| 113 | **DOCUMENTATION:** | KFI's commitment to provide the Loan is subject to the negotiation, execution |
| 114 | | and delivery of definitive Loan and security agreements, mortgages or deeds of |
| 115 | | trust, notes, and other documentation and customary certificates and legal |
| 116 | | opinions (collectively, the "Loan Documents"), which in each case will be in |
| 117 | | form, substance and enforceability satisfactory to KFI in its sole discretion. The |
| 118 | | Loan Documents shall contain conditions precedent, representations and |
| 119 | | warranties, covenants, events of default and other terms and conditions consistent |
| 120 | | with the terms hereof as shall be satisfactory to KFI in its sole discretion and |
| 121 | | deemed appropriate by KFI for a transaction of the type contemplated herein. |
| 122 | | |

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

123

124 **ACCEPTANCE**

125 **OF COMMITMENT:** The commitment and all of its terms and conditions will become effective only

126 upon delivery to this office of a signed copy of this commitment, duly accepted

127 by the Borrower, accompanied with the commitment fee in the amount of Three

128 Hundred Fifty Thousand Dollars ($350,000) which is non-refundable and earned

129 for, among other things, the commitment to provide funds.

130

131 Said fee is not refundable under any circumstances, except as agreed to herein.

132

133 Notwithstanding anything to the contrary contained in this commitment, the

134 Borrower agrees that the basis for the Loan is the as is market value of the real

135 estate Collateral in its present condition. Market value is defined as a six (6)

136 month sale to a cash buyer. The Borrower understands that KFI will inspect the

137 Collateral and will, in its sole discretion, determine the as is market value. Upon

138 making a determination of value, KFI will deliver to Borrower a Loan Offer

139 equal to Fifty Five Percent (55%) of the as is market value not to exceed the

140 Financing Request. Failure by the Borrower to either accept or reject in writing

141 the Loan Offer within three (3) days of receipt shall be deemed to be a rejection

142 of the Loan Offer. Acceptance by Borrower of the Loan Offer shall constitute a

143 waiver of the right to engage the services of a third party appraiser as described

144 herein. Borrower understands that KFI cannot and will not lend more than Fifty

145 Five Percent (55%) of the as is market value of the real estate Collateral. If KFI's

146 determination of the value of the property is disputed by Borrower, Borrower

147 may reject the Loan Offer and elect to engage the services of a third party

148 appraiser. If Borrower makes this election, the Borrower and KFI shall mutually

149 agree on a third party MAI appraiser, with proper credentials, contracted by KFI,

150 and any fees for said appraiser to be reimbursed to KFI by Borrower prior to the

151 appraisal being performed. Upon receipt of the determination of value by the

152 third party appraiser, KFI will, at its option, either offer a Loan (not to exceed in

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

153  any event the Financing Request) of Fifty Five Percent (55%) of the as is market
154  value of the real estate Collateral as determined by said appraiser or return the
155  paid portion of the commitment fee.

156

157  If the Collateral is determined to have a value which would require KFI to make
158  a Loan of One Million Dollars ($1,000,000) or less, KFI will not be obligated to
159  make the Loan unless the Borrower provides additional Collateral acceptable to
160  KFI in its sole discretion to increase the amount of this loan to at least One
161  Million Dollars ($1,000,000). If the Loan amount is not increased, the
162  commitment fee will be earned by KFI.

163

164  This letter will become a commitment once signed by all parties and returned
165  with the Three Hundred Fifty Thousand Dollars ($350,000) as outlined above.
166  This commitment will expire August 17, 2011, time of the essence.  KFI shall
167  have no obligation with respect to the Loan unless and until this commitment
168  letter is fully executed and received by KFI along with the commitment fee.

169

170  **RETURN OF**

171  **COMMITMENT FEE:**

172  If KFI is unable to perform its obligations under the terms of this commitment for
173  whatever reason, KFI shall only be obligated to refund the paid portion of the
174  commitment fee.  SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY
175  LIABILITY OR OBLIGATION ON THE PART OF KFI UNDER ANY
176  CIRCUMSTANCE.  There will be no refund if Borrower does not accept the
177  loan offer(s) made by KFI pursuant to this commitment or Borrower has not
178  complied with all the conditions of this commitment.

179

180  **OTHER:**       a) KFI hereby acknowledges receipt of Ten Thousand Dollars ($10,000) which is
181  non-refundable, for the preparation of this commitment.

182

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

183    b) Borrower agrees upon acceptance of the Loan Offer to forward an additional

184    Ten Thousand Dollars ($10,000) to KFI on account of preliminary due diligence

185    including, without limitation, environmental, survey and title review by KFI and

186    third parties. The acceptance of any such amount by KFI or any third party shall

187    not be construed as evidence that the Borrower has fulfilled all of its obligations

188    under the terms of this commitment. This Ten Thousand Dollars ($10,000) will

189    be applied toward third party fees due in connection with the Loan at the Loan

190    closing.

191

192  **EXPENSES:**    Borrower agrees that the Loan shall be without cost to KFI.  Borrower assumes

193    liability for and will pay all costs and expenses required to satisfy the conditions

194    hereof and the making of the Loan.  Such costs and expenses shall be paid at or

195    prior to the Loan closing, or upon demand if the Loan does not close or if this

196    commitment is terminated.  Such obligation shall survive termination.  Borrower

197    will also provide airline tickets and hotel accommodations if necessary.

198

199  **RELEASES:**    During the term of the Loan, provided all payments of principal and interest on

200    the Loan shall be current on the date of the sale and at the time of the sale and

201    there are no uncured defaults or events of uncured defaults under the Loan

202    Documents, Borrower may sell for cash individual parcels of the Collateral.  KFI

203    agrees to release such sold parcels provided that KFI receives the Release Price

204    for such parcel which will be applied to the outstanding balance.  The Release

205    price will be the greater of:

206

207    (i)    80% of the net sale price of the parcel taking into account reasonable and

208    customary closing adjustments and customary sales commissions;

209

210    (ii)    75% of the gross sale price of the parcel;

211

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

212              (iii)     the minimum release amount as agreed to on a schedule to be approved

213                       by KFI prior to closing.

214

215             (The greater of the above three amounts being the "Release Price".)

216

217   **GOVERNING**

218   **LAW, ETC.**       This commitment may be executed in counterparts which, taken together, shall

219              constitute one original. This commitment is for the benefit of the Borrower only

220              and may not be assigned except upon the prior written consent of KFI, which

221              consent may be withheld for any reason or no reason. No party other than

222              Borrower or a permitted assignee may rely upon the terms and conditions of this

223              commitment. This commitment will be governed by and construed in accordance

224              with the laws of the State of New Jersey without regard to the principles of

225              conflicts of laws thereof.

226

227   **WAIVER:**        No failure on the part of KFI to exercise and no delay in exercising any rights

228              under the Loan Documents shall operate as a waiver thereof, nor shall any single

229              or partial exercise by KFI of any right under the Loan Documents preclude any

230              further exercise thereof, or the exercise of any other right. Each and every right

231              or remedy granted under the Loan Documents or under any document delivered

232              thereunder or in connection therewith or allowed to KFI in law or equity shall be

233              deemed cumulative and may be exercised from time to time.

234

235              This Commitment is executed by an individual strictly in his capacity as a

236              representative of the Lender. By the acceptance of this Commitment, Borrower

237              agrees that no representative, member, partner, shareholder, employee or agent of

238              the Lender shall be personally liable for the payment of any claim or the

239              performance of any obligations hereunder.

240

241

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

242 **LIMITATION**

243 **OF DAMAGES:** **KFI SHALL HAVE NO LIABILITY TO BORROWER, OR ANY OTHER**

244 **ENTITY OR PERSON, UNDER ANY THEORY OF LAW OR EQUITY**

245 **FOR ANY AMOUNT IN EXCESS OF THE PAID PORTION OF THE**

246 **COMMITMENT FEE. BORROWER ACKNOWLEDGES THAT THIS**

247 **LIMITATION OF DAMAGES CLAUSE IS REASONABLE. BORROWER**

248 **AGREES NOT TO PURSUE ANY CLAIM IN EXCESS OF THE ABOVE**

249 **SUM.**

250

251 **WAIVER OF TRIAL**

252 **BY JURY:** **BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY**

253 **AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY**

254 **JURY IN ANY SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING**

255 **IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO**

256 **THIS COMMITMENT, THE OTHER LOAN DOCUMENTS, THE**

257 **OBLIGATION, THE COLLATERAL, OR ANY RELATED**

258 **TRANSACTION.**

259

260 **MISCELLANEOUS:** **BORROWER UNDERSTANDS THAT KFI CANNOT AND WOULD NOT**

261 **ENTER INTO THIS COMMITMENT WITHOUT BORROWER'S**

262 **AGREEMENT TO THE LIMITATION OF DAMAGES, CHOICE OF**

263 **FORUM AND WAIVER OF TRIAL BY JURY CLAUSES CONTAINED**

264 **HEREIN.**

265

266 **BORROWER AND GUARANTOR(S) UNDERSTAND THAT THEY ARE**

267 **OBLIGATED TO DISCLOSE TO LENDER THE NAME AND ADDRESS**

268 **OF ANY THIRD PARTY FEE PROVIDER(S). IN THE EVENT THERE**

269 **IS A THIRD PARTY FEE PROVIDER, THE THIRD PARTY FEE**

270 **PROVIDER SHALL BE REQUIRED TO SIGN THIS LOAN**

271 **COMMITMENT. IN THE EVENT THAT BORROWER FAILS TO**

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

272                **MAKE SUCH DISCLOSURE, BORROWER AND GUARANTOR(S)**
273                **AGREE TO INDEMNIFY AND HOLD HARMLESS LENDER AGAINST**
274                **ANY AND ALL CLAIMS ASSERTED BY SUCH UNDISCLOSED PARTY**
275                **AS WELL AS ANY ATTORNEYS' FEES INCURRED IN DEFENDING**
276                **AGAINST SAME.**

277

278 **COMMITMENT FEE**

279 **MODIFICATION:**     Notwithstanding the above requirement to pay Three Hundred Fifty
280                Thousand Dollars ($350,000) at the signing of the commitment, as
281                consideration for the parties unconditionally and irrevocably waiving all
282                right to trial by jury and the parties agreeing to the Choice of Forum and
283                Limitation of Damages clauses, KFI will accept payment of the
284                Three Hundred Fifty Thousand Dollars ($350,000) in the following manner:

285

286             a)      **One Hundred Eighty Thousand Dollars ($180,000) to be paid at the**
287                     **time this commitment is signed, prior to our due diligence, which**
288                     **signing will be no later than July 27, 2011, <u>time of the essence</u>;**

289

290             b)      **One Hundred Seventy Thousand Dollars ($170,000) to be paid at the**
291                     **closing or upon Borrower electing not to proceed to a Loan closing.**
292                     **In addition, any default by the Borrower under this commitment, or**
293                     **other failure of Borrower to comply with this commitment, or**
294                     **misrepresentation by Borrower of any fact or state of facts to KFI**
295                     **either in connection with this commitment or otherwise, or any**
296                     **material adverse change of any type shall not relieve Borrower of its**
297                     **obligation to pay such amount to KFI.**

298

299   Borrower acknowledges that Schedule "B" annexed hereto represents conditions of the Loan commitment
300   required by Lender and that this document would not be executed by Lender without Borrower's
301   agreement thereto. Borrower further acknowledges that each and every delivery required under this Loan

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

302    Commitment (including those required under Schedule "B") must be made directly to KFI or its

303    designated legal counsel.  Any deliveries made to any other person or entity (including without limitation

304    any appraiser or broker involved with the proposed loan transaction) shall <u>not</u> be deemed a delivery to

305    KFI as required hereunder.

306

307

308    This document is an arms length and negotiated agreement.  It shall be construed without any regard to

309    any presumption or rule requiring construction against the party causing such instrument or any portion

310    thereof to be drafted.

311

312    Sincerely,

313    KENNEDY FUNDING, INC.

314    BY:    _____

315            Gregg Wolfer, Co-Chief Executive Officer

316    DATE: _____

317

318    COMMITMENT ACCEPTED

319    PFG ASPEN WALK, LLC

320

321    BY:    _____

322            Thomas R. Salmen, Managing Member

323    _____

324    Thomas R. Salmen, Individually and as Guarantor

325    DATE: _____

326

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

327

328 **SCHEDULE "A"**

329

330

331

332 LOAN AMOUNT $9,000,000

333

334

335 <u>PROPOSED LOAN AND USE OF PROCEEDS</u>

336

337 FEE (3% of the Loan Amount) $270,000

338 (Non-Refundable)

339

340

341 MONTHLY PREPAID INTEREST UNKNOWN

342 (Refundable if unused)

343

344

345 CLOSING COSTS UNKNOWN

346

347

348 BROKERAGE COMMISSION UNKNOWN

349

350

351 BALANCE OF COMMITMENT FEE $170,000

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

352

353                                    **SCHEDULE "B"**

354

355

356   These General Conditions are part of the attached commitment and deemed a part hereof as if set forth

357   therein.

358

359   1.   **Survey:**   The Borrower shall provide a survey certified to the Lender and the title
360        company satisfactory to the title company on each piece of Collateral prepared by a
361        surveyor licensed by the State showing the project to be free of encroachments,
362        overlapped and other survey defects, delineating all wetlands on the property (if any), all
363        in accordance with the Lender's survey requirements.

364

365   2.   **Insurance:**  The Borrower must furnish liability and hazard insurance in a sum not less
366        than the replacement value of the Collateral but in no event less than the amount of the
367        Loan insured by a company or companies satisfactory to Lender.

368

369   3.   **Title:**   The Lender shall receive a first lien on the Collateral acceptable to its Counsel
370        and Borrower shall provide a paid title insurance policy in an amount no less than the
371        amount of the Loan insured by a title company or companies satisfactory to Lender.

372

373   4.   **Flood Insurance:**  If any material part of any parcel of the Collateral is located in an area
374        designated as being subject to a special flood hazard, Borrower shall obtain all available
375        flood insurance.  If insurance is not available, and if such unavailability legally precludes
376        the mortgage from covering such affected parcel, such parcel shall be removed from the
377        Collateral and all Loan amounts recalculated.

378

379   5.   **Easements:**   All necessary easements for utilities, public road access, parking or
380        otherwise shall be provided for prior to closing.

381

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

6.  **Additional Collateral:**  As additional Collateral Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower.

7.  **Approval of Lender's Counsel:**  The title in the project and the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion.

8.  **Approval of Borrower's Counsel, Etc.:**  Borrower acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Commitment and Borrower acknowledges that it will consult with counsel of its choice and with such other experts and advisors as it deems necessary in connection with the negotiation, execution and delivery of the other Loan Documents.  This Commitment and the other Loan Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or any part of them, to be drafted.

9.  **Representations and Warranties of Borrower and Guarantor:**  Customary for transactions of this type, including, but not limited to, the following:

    (a)  Neither the Loan Documents nor the performance by Borrower of its obligations thereunder violate any provisions of law, of Borrower's partnership agreement, corporate by-laws, or of any agreement which is binding upon Borrower or the Guarantors.  No action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Loan Documents by Borrower, and Borrower is not subject to filing, reporting or like requirements of any governmental commission, bureau or agency charged with control or supervision of environmental concern.

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

412      (b)     All financial information furnished or disclosed to KFI by Borrower and
413              Guarantors touching upon the financial condition of any of them is true and
414              correct as of the date furnished, and there has been no omission of any material
415              fact relating thereto, and there has been no material adverse change in the
416              financial condition, operations or business of any of them since the date of such
417              financial information. Borrower and Guarantor(s) authorize KFI to obtain any
418              credit information which KFI deems appropriate or necessary regarding the
419              Borrower and/or Guarantor(s).

420

421      (c)     Borrower or Guarantors is not in default in the performance, observance or
422              fulfillment of any of the obligations or conditions contained in any agreement or
423              instrument to which it is a party, or with respect to any evidence of indebtedness
424              or obligation for borrowed money which affects in any way the Collateral, nor
425              does any condition exist which, upon the lapse of time or giving of notice, or
426              both, would constitute an event of default under, or grounds for termination of,
427              any such agreement or instrument.

428

429      (d)     No actions, suits or proceedings at law or in equity are pending or, to the best of
430              Borrower's or Guarantor's knowledge, threatened, in any court or before any
431              federal, state, municipal or governmental department, commission, board,
432              bureau, agency or instrumentality against or affecting Borrower, the Guarantors,
433              or any of its properties or rights which, if adversely determined would materially
434              adversely affect the financial condition of Borrower or Guarantors or materially
435              impair the right of either to carry on its business substantially as now conducted,
436              nor is either in default with respect to any judgement, writ, injunction, decree,
437              rule or regulation of any court or federal, state, municipal or governmental
438              department, commission, board, bureau, agency or instrumentality.

439

440      (e)     At Lender's option, Borrower will establish and maintain reserves for ongoing
441              taxes and insurance premiums, prepaid interest and replacement reserves in

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

442                          amounts acceptable to Lender.  The tax and insurance reserve will be funded up

443                          front and from monthly cash flow and will be $1/12^{th}$ of the annual amount

444                          payable  All funds held in the reserve accounts will be held for the benefit of the

445                          Borrower, except for the tax and insurance reserve (which shall be for the benefit

446                          of the Lender).

447

448     10.     **Miscellaneous:**  Prior to the closing of the Loan and disbursement of funds, in each

449            instance the Borrower must comply with the following:

450

451          (a)     The Borrower is to produce such evidence as Lender may require to demonstrate

452                          current full compliance with all applicable zoning, health, environmental and

453                          safety laws, ordinances and regulations (including without limit approval of

454                          local, private or public sewage or water utility).  The Borrower shall certify or

455                          supply other satisfactory evidence to the Lender at the time of the closing that

456                          there is no action or proceeding pending before any Court or Administrative

457                          Agency with respect to the validity of any laws, ordinances or regulations, and

458                          any certifications or permits issued thereunder, pertaining to the premises.  The

459                          Borrower shall certify or supply other evidence satisfactory to the Lender that the

460                          Borrower is not a party to any existing or pending or threatened litigation, unless

461                          specifically noted herein.

462

463          (b)     All appropriate approvals necessary for the current use and the completed project

464                          contemplated by this commitment (if applicable) must be provided and must

465                          meet all applicable requirements of all governmental authorities having

466                          jurisdiction, including, but not limited to subdivision and site plan approvals, the

467                          Department of Environmental Protection and its several subdepartments as they

468                          pertain to potable water supply, sewage discharge and sewage connection, use of

469                          septic tanks or alternatives.  The Lender shall require prior to closing, evidence

470                          satisfactory to it and its Counsel of full compliance with all Environmental

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

471                  Clean-Up Responsibility Acts and that no action is pending or liens imposed

472                  under any Spill Compensation and/or Control Acts.

473

474     (c)      During the term of the Loan, there shall be no additional financing nor any

475                  transfer of title, not contemplated in the Loan Documents without the prior

476                  written approval of the Lender.

477

478     (d)      Execution by the Borrower of such Loan Documents including, but not limited

479                  to, a mortgage and mortgage note, satisfactory in form and substance to the

480                  Lender and its Counsel, including a prohibition against the transfer of title of any

481                  of the Collateral not contemplated in the Loan Documents, and if the Borrower is

482                  a corporation or partnership, a change in the management or controlling interest

483                  in the Borrower. Borrower may prepay the Lender at any time, in whole or in

484                  part, without penalty except for all of the FEE which is considered earned at the

485                  time of closing.

486

487     (e)      This commitment is subject to the accuracy of all information, representations,

488                  exhibits and other materials submitted with or in support of the Loan request and

489                  there must be no adverse change in the set of facts prior to the disbursements of

490                  funds or during the term of the Loan. This commitment may be terminated by

491                  KFI and the Commitment Fee retained and earned by KFI in the event of the

492                  following:

493

494         (i)      If the Borrower shall fail to comply with any of the terms or conditions

495                     hereof.

496         (ii)     In the event of a sale, conveyance or other disposition of any of the

497                     Collateral.

498        (iii)    In the event of a materially adverse change in the financial condition of

499                     the Borrower or any Guarantor.

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

500          (iv)     Any fraudulent material misrepresentation or any omission or

501                  concealment by the Borrower or any Guarantor of any material fact.

502          (v)      For any good faith reason.

503

504      (f)      In the event of any default during the term of this Commitment, KFI may, at its

505              option, require immediate payment of the balance of the Commitment Fee and

506              KFI may terminate the Commitment and retain the paid portion of the

507              Commitment Fee.

508

509      (g)     The Borrower has the obligation to disclose all material facts, past and present,

510              related to the Borrower, Guarantors, the Collateral, the transaction, etc.

511

512      (h)     The Borrower specifically acknowledges and agrees that KFI and/or Lender rely

513              on counsel opinion letters relating to, among other items, usury. This

514              commitment is subject to the express condition that at no time will the Borrower

515              be obligated or required to pay interest at a rate which could subject KFI and/or

516              Lender to either civil or criminal liability as a result of being in excess of the

517              maximum rate which the Borrower is permitted by law to contract or agree to

518              pay. If, by the terms of this commitment or the Loan Documents the Borrower is

519              at any time required or obligated to pay interest at a rate in excess of such

520              maximum rate, the rate of interest shall be deemed to be immediately reduced to

521              such maximum rate and the portion, if any, of all prior interest payments in

522              excess of such maximum rate shall be applied and shall be deemed to have been

523              payments in reduction of the principal balance.

524

525      (i)      At Lender's option at closing, the owner of the collateral and the Borrower shall

526              be a newly formed single-purpose "bankruptcy remote" limited liability company

527              or limited partnership acceptable to Lender. The Borrower's organizational

528              documents shall contain provisions satisfactory to Lender. These provisions may

529              not be amended in any material respect during the term of the Loan without

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

530      Lender's consent. The sole business activity of the Borrower shall be the

531      ownership and operation of the Mortgage Property. The Borrower shall have no

532      debt other than the Loan at closing. The Borrower shall be prohibited from

533      incurring additional debt other than the Loan throughout the Loan term, including

534      without limitation, partnership debt. Any advances made to Borrower from any

535      partner, member of Borrower or shareholder shall be in the form of equity not

536      debt.

537

538    11.    **Validity of Loan:** The Loan and the closing thereof shall in all respects be legal and not

539      violate any applicable law or other requirements of any governmental authority. The

540      Borrower will submit to the Lender at closing a current written opinion by the Borrower's

541      legal Counsel, satisfactory to Lender, to the effect, among other things, that all Loan

542      Documents are valid and binding upon the Borrower and any other mortgagor and are

543      enforceable in accordance with their terms and are legal and do not violate any local,

544      state or federal laws including, but not limited to, all usury laws. Once the Loan is closed

545      and funded by the Lender, the Loan shall be governed and construed pursuant to the laws

546      of the State of New Jersey. Borrower understands that KFI has entered into this

547      Commitment expecting to receive a return on the Loan as set forth in this Loan

548      Commitment. In the event that the jurisdiction in which the Collateral is located and/or

549      from which payment is made requires the payment of a tax, assessment, or other charges

550      in connection with the Loan by Lender, Borrower will be responsible for the payment of

551      such tax, assessment or charge and shall reimburse Lender for any payment required to

552      be made by the Lender.

553

554    12.    **Governing Law:** This Commitment and the other Loan Documents (except the

555      Mortgage which shall be construed in accordance with the law of the situs of the realty),

556      shall be governed by and construed in accordance with the internal substantive laws of

557      the State of New Jersey, without regard to the choice of law principles of such state.

558

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

559    13.    **Usury:**  It is expressly understood and acknowledged by the Borrower that KFI may not
560           be familiar with the usury statutes in the Collateral's jurisdiction and relies on counsel
561           opinions delivered at closing.  This commitment is subject to the express condition that at
562           no time shall the Borrower be obligated or required to pay interest at a rate which could
563           subject KFI or the Co-Lenders to either civil or criminal liability as a result of being in
564           excess of the maximum rate which the Borrower is permitted by law to contract or agree
565           to pay.  If by the terms of this commitment or the note the Borrower is at any time
566           required or obligated to pay interest at a rate in excess of such maximum rate, the rate of
567           interest hereunder and/or under the note shall be deemed to be immediately reduced to
568           such maximum rate and interest payable shall be computed at such maximum rate and the
569           portion of all prior interest payments in excess of such maximum rate shall be applied
570           and shall be deemed to have been payments in reduction of principal balance or, if the
571           Loan has not closed shall be void, and if KFI deems it a hardship to close the Loan under
572           the usury statutes, all fees paid to KFI shall be refunded and this commitment shall be
573           null and void.

574

575    14.    **Choice of Forum:**   Borrower and Guarantor(s) consent to the jurisdiction of any state or
576           federal court sitting in the State of New Jersey for adjudication of any dispute between
577           the Borrower and Guarantor(s), their agents, servants and/or employees and KFI under
578           any theory of law in connection with, out of, or otherwise relating to this Commitment
579           and any related transactions and that venue shall be proper in any such court to the
580           exclusion of the courts in any other state or country.  The Borrower further agrees that
581           such designated forum is proper and convenient. By executing this commitment,
582           Borrower and Guarantor(s) authorize KFI to obtain credit information on Borrower and
583           Guarantor.

584

585    15.    **WAIVER OF TRIAL BY JURY:   Borrower and Lender each hereby**
586           **unconditionally and irrevocably waive any and all right to trial by jury in any suit,**
587           **counterclaim, or cross-claim arising in connection with, out of, or otherwise relating**

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

588    **to this Commitment, the other Loan Documents, the Obligation, the Collateral, or**
589    **any related transaction.**

590

591    16.    **No Oral Modifications:**  Notwithstanding any course of dealing between the parties, no
592            amendment, modification, rescission, waiver, or release of any provision of this
593            Commitment shall be effective unless the same shall be in writing and signed by the
594            Borrower and Lender.

595

596    17.    **Complete Agreement:**  This Commitment, together with the other Loan Documents,
597            constitutes the entire agreement and understanding among the parties relating to the
598            subject matter of this Mortgage Loan, and supersedes all prior proposals, negotiations,
599            agreements, and understanding relating to such subject matter.   In entering into this
600            agreement, Borrower acknowledges that it is relying on no statement, representation or
601            agent of the Lender, except for the agreements of Lender set forth herein.

602

603    18.    **Survival of Commitment:**  Borrower and Lender hereby acknowledge and agree that
604            this commitment shall not survive closing.  Furthermore, notwithstanding the provisions
605            of paragraph 16 above, the parties specifically acknowledge and agree that the terms and
606            conditions of this Loan may be modified by mutual agreement at any time up to and
607            including the date of closing and that any such modifications shall be incorporated
608            directly into the Loan Documents without the need to amend this Commitment.

609

610    19.    **Execution.**       This Loan Commitment may be executed in any number of counterparts,
611            each in which shall be considered an original.  Delivery of an executed copy by one party
612            to the other, via facsimile, shall constitute a valid delivery.

613

614    The undersigned does hereby accept this Commitment and does hereby agree to keep and perform each
615    and every item and condition herein before set forth and do acknowledge that the performance of such
616    terms and conditions are obligations of the undersigned. The undersigned acknowledges and agrees that
617    Lender requires satisfaction of the conditions herein (and in the Loan Documents) at least 48 hours prior

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

618    to the closing and funding of the Loan.  The attorney for the Borrower has reviewed this commitment and

619    has explained all of its terms and ramifications to the Borrower and the Guarantor.

620

621    **ACCEPTED:**

622    PFG ASPEN WALK, LLC

623

624    BY:    _____

625           Thomas R. Salmen, Managing Member

626    _____

627    Thomas R. Salmen, Individually and as Guarantor

628

629    DATE: _____

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

630

631                                        **SCHEDULE "C"**

632                       (COLLATERAL / PROJECT DESCRIPTION)

633                           TO BE PROVIDED BY BORROWER

634

635

636

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

           Debtor.

Chapter 11
Case No. 10-47089-RJK

---

## AFFIDAVIT OF STAN CLAUSON IN CONNECTION WITH THE DEBTOR'S RESPONSE MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION FOR RELIEF FROM STAY

STATE OF COLORADO        )
                                   ss.:
COUNTY OF PITKIN         )

        Stan Clauson, being first duly sworn upon oath, states as follows:

        1.      I serve as President of Stan Clauson Associates, Inc. and I make this affidavit under penalty of perjury, in connection with the Debtor's Memorandum in Opposition to Bank of America's Motion for Relief From Stay (the "Memorandum").  All capitalized terms not defined herein shall have the meaning set forth in the Memorandum.

        2.      I formerly served as Community Development Director for the City of Aspen Community Development Department, and now operate as a private consultant for parties attempting to obtain approval of various land planning issues from public review boards, including the Aspen Planning and Zoning Commission (the "Commission") and Aspen City Council ("City Council").

        3.      I have been retained by the Debtor to serve as its local consultant in Aspen, Colorado.  In this capacity, I am acting as the Debtor's advocate in its attempt to obtain approval

from the Commission and City Council related to the proposed planned unit development for the Project.

4.      Before the Debtor could begin the Project, it had to obtain both Conceptual Planned Unit Development ("Conceptual PUD") approval and Final Planned Unit Development ("Final PUD") approval (collectively, "Preliminary Government Approvals") for the Project from the City Council.

5.      In or around October 2007, the Debtor submitted an application to the City Council requesting Conceptual PUD approval for the Project.

6.      On or about October 27, 2008, the City Council passed Resolution No. 74, granting Conceptual PUD approval for the Debtor's Project.

7.      Conceptual PUD approval for the Project was to expire on or about October 29, 2009.  In or around September 2009, the Debtor submitted a request to the City Council for a one-year extension of the Conceptual PUD approval.

8.      On or about October 13, 2009, the City Council granted the Debtor's request, extending Conceptual PUD approval until October 28, 2010.

9.      On or about October 12, 2010, the Debtor filed an application with the City of Aspen seeking Final PUD approval.

10.      On or about October 18, 2010, the City of Aspen confirmed that the Debtor's submittal package for application for Final PUD approval was deemed complete.

11.      On February 15, 2011, I attended a hearing before the Commission in relation to the Project.  I attended additional hearings on behalf of the Debtor on March 15, 2011, and May 3, 2011.

12.     During the May 3, 2011 hearing before the Commission, the Commission granted certain approvals under its purview and voted to recommend the Project to the City Council for consideration of the Debtor's submission for Final PUD approval.

13.     On May 6, 2011, the City Council provided its appearance schedule for the following months.  The scheduling of appearances at City Council hearings is subject to the City Council's schedule and availability.

14.     The City Council scheduled the First Reading of an approval ordinance for June 13, 2011.   The date for the First Reading was selected by the Community Development Department as the members of the City Council had recently changed; the City Council was not in a position to schedule an earlier date due to the recent change in membership.

15.     The First Reading is a brief introduction to the project and an opportunity for the City Council members to ask some initial questions and make a few points of what they would like addressed at a second reading.  The Second Reading is the first substantive hearing or series of hearings, typically lasting several hours and consisting of presentations, public comment, etc. The City Council heard a presentation from Community Development Department staff at First Reading, articulated a number of questions they had regarding the project, and voted to approve the application for Second Reading, setting the date of July 11, 2011 for Second Reading.  This date allowed for the required public notification period prior to Second Reading.  The Debtor was subsequently scheduled as the second agenda item at the July 11, 2011 hearing.

16.     In addition to the Second Reading date, the City Council also provided calendar dates of July 25, 2011 and August 8, 2011 for the Debtor in the event the City Council requires additional hearings.

17.     On June 13, 2011, I appeared at the First Reading.  The City of Aspen planner assigned to the project made a brief presentation about the Project on behalf of the Debtor and, following questions and comments from City Council members, the City Council voted to move the project to a Second Reading on July 11, 2011.

18.     On July 11, 2011, I appeared at the Second Reading.  Because of another project ahead of the Debtor at the July 11 hearing, I was only given a short period of time to make a presentation, and there was no public comment period.  At the end of this appearance, the City Council voted to continue the Second Reading hearing to July 25, 2011, to allow for further presentation and public comment.  The City Council also reserved hearing dates for August 8, 2011, August 22, 2011, and September 12, 2011, in the event that additional dates are necessary.

19.     Because of the additional hearing dates likely to be required by the City Council, Final PUD approval will not be obtained until after August 1, 2011.

20.     The failure to obtain Final PUD approval by August 1, 2011 is, in my estimation, primarily a result of (i) delays caused by other significant agenda items pushing back the City Council's hearing calendar; and (ii) delays caused by the change in City Council members.

21.     Based on my recent dealings with the City Council in this matter and experience regarding the approval process in such matters, it is my estimation that (i) the Debtor will be able to make its full presentations at the scheduled upcoming hearings, and (ii) Final PUD approval will likely be obtained on or before September 14, 2011.

FURTHER AFFIANT SAYETH NOT.

STAN CLAUSON ASSOCIATES, INC.

_____

Stan Clauson, President

Subscribed and sworn to before me in the county of Pitkin, State of Colorado, this **2 2** day of July, 2011.

_Patrick S. Rawley_
(Notary's official signature)

**7 / 23 / 2012**
(Commission expiration date)

Notary Seal

PATRICK S. RAWLEY
NOTARY
— ◆ —
PUBLIC
STATE OF COLORADO

My Commission Expires 07/23/2012

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

        Debtor.

Chapter 11
Case No. 10-47089 (RJK)

## CERTIFICATE OF SERVICE

    I, Aong Moua, declare, under penalty of perjury, that on July 22, 2011, I filed:

## RESPONSE MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION FOR RELIEF FROM STAY

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of electronic filing to the following:

        **William Fisher;** william.fisher@gpmlaw.com
        **Timothy A. Fusco;** fusco@millercanfield.com
        **Marc N Swanson;** swansonm@millercanfield.com
        **Michael Fadlovich;** michael.fadlovich@usdoj.gov
        **Mark J. Kalla**; mark.kalla@btlaw.com
        **US Trustee**; ustpregion12.mn.ecf@usdoj.gov

    I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following parties:

AMANDA SCHMITT
404 PARK AVENUE #1
ASPEN CO 81611

ASPEN CUSTOM GLASS
601 RIO GRANDE PLACE, STE 119A
ASPEN CO 81611

ASPEN PITKIN HOUSING AUTHORITY
ATTN: TOM MCCABE, EXEC. DIR.
530 EAST MAIN STREET
ASPEN CO 81611

BANK OF AMERICA, N.A.
ATTN: RICHARD L. CARTER
2990 LAVA RIDGE CT, SUITE 120
ROSEVILLE CA 95661

BRITTANY BUFFALINO
404 PARK AVENUE #1
ASPEN CO 81611

CAMERON LEONARD
404 PARK AVENUE #9
ASPEN CO 81611

CITY OF ASPEN
130 SOUTH GALENA STREET
ASPEN CO 81611

CLAYTON DAY
404 PARK AVENUE #2
ASPEN CO 81611

HOLY CROSS ENERGY
P.O. BOX 2150
3799 HWY 82
GLENWOOD SPRINGS CO 81602

INTEGRITY PLUMBING AND HEATING
218 CODY LANE
BASALT CO 81621

JOAQUINN TARANGO
404 PARK AVENUE #5
ASPEN CO 81611

JONATHAN RIVERS
404 PARK AVENUE #3
ASPEN CO 81611

JULIE COOK
404 PARK AVENUE #0
ASPEN CO 81611

LAURENCE MONJI
404 PARK AVENUE #6A
ASPEN CO 81611

LINDSAY FORSTER
404 PARK AVENUE #3
ASPEN CO 81611

MANUEL CORRIPIO NORIEGA
PO BOX 2565
ASPEN CO 81612

REBECCA POLAN
404 PARK AVENUE #1
ASPEN CO 81611

ROSA GONGORA
404 PARK AVENUE #10
ASPEN CO 81611

SHAUN HEALY
404 PARK AVENUE #12
ASPEN CO 81611

SHERIDAN REAL ESTATE, LLC
ATTN: MARY ELLEN SHERIDAN
P.O. BOX 7757
ASPEN CO 81612

SOPRIS CONSULTING GROUP, LLC
ATTN: PAUL LOTZER
5400 NORWOOD LANE
PLYMOUTH MN 55442

STAN CLAUSON ASSOCIATES, INC
ATTN: STAN CLAUSON
412 N MILL STREET
ASPEN CO 81611

TERMINIX
2907 D 1/2 ROAD
GRAND JUNCTION CO 81504

WASTE MANAGEMENT-
CARBONDALE
PO BOX 78251
PHOENIX AZ 85062

IRS
CINCINNATI, OH  45999-0025

UNITED STATES ATTORNEY
600 U.S. COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN  55415

8041599v3

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
SAINT PAUL, MN  55101

MINNESOTA DEPARTMENT OF
REVENUE
BANKRUPTCY SECTION
P.O. BOX 64447
SAINT PAUL, MN  55164-00447

INTERNAL REVENUE SERVICE
STOP 5700
30 EAST SEVENTH STREET, #1222
SAINT PAUL, MN  55101-4940

SOURCE GAS
DISTRIBUTION LLC
P.O. BOX 13288
FAYETTEVILLE, AR 72703

HONEYCOMB INTERNET
SERVICES LL
77 13TH AVE. NE SUITE 210
MINNEAPOLIS, MN 55413

Dated:  July 22, 2011

*/e/ Aong Moua*
Aong Moua

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

    Debtor.

Chapter 11
Case No. 10-47089-RJK

Honorable Robert J. Kressel

## ORDER DENYING BANK OF AMERICA'S MOTION FOR RELIEF FROM THE STAY

   Upon consideration of Bank of America's motion for relief from the stay,

**IT IS HEREBY ORDERED:**

   Bank of America's motion for relief from the stay is denied.

Dated:

            _____
            Robert J. Kressel
            U.S. Bankruptcy Court Judge