# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PFG ASPENWALK, LLC,

       Debtor.

Chapter 11
Case No. 10-47089-RJK

---

### AFFIDAVIT OF THOMAS SALMEN IN SUPPORT OF THE
### DEBTOR'S MOTION FOR ORDER AUTHORIZING THE ENLARGEMENT OF THE
### DEBTOR'S DEADLINE TO OBTAIN CONFIRMATION OF A PLAN

---

STATE OF MINNESOTA       )
                            ss.:
COUNTY OF HENNEPIN     )

Thomas Salmen, being first duly sworn upon oath, states as follows:

1.      I serve as Vice President of Finance for PFG AspenWalk, LLC (the "Debtor"), and I make this affidavit under penalty of perjury, in connection the Debtor's Motion for Order Authorizing the Enlargement of the Debtor's Deadline to Obtain Confirmation of a Plan (the "Motion").  All capitalized terms not defined herein shall have the meaning set forth in my Verified Statement in Support of the Motion filed on July 14, 2011 as Doc. No. 108.

2.      The Debtor appeared at the continued Second Reading on July 25, 2011, and made a full presentation regarding the Project.  As expected, the City Council requested additional information from the Debtor at the reserved hearing dates of August 8, 2011, September 12, 2011, and possibly August 22, 2011 if that hearing date becomes available.  Thus, additional time is necessary.

3.      Assuming Final PUD approval, the Debtor has been working with potential lenders in order to obtain financing sufficient to fund the Amended Plan.

4.     On July 18, 2011, the Debtor received a "2nd Revised Letter of Interest" ("LOI") from lender Kennedy Funding, Inc. ("Kennedy Funding"), which outlines the terms of a proposed commitment to provide funding in the amount of $9 million.  Attached as **Exhibit A** is a true and correct copy of the executed LOI.

5.     In accordance with Paragraph 5 of the LOI, the Debtor delivered a check in the amount of $10,000.00 to Kennedy Funding as a deposit for obtaining a loan commitment from Kennedy Funding.

6.     According to the LOI, the closing of the proposed loan could occur "as quickly as seven (7) to ten (10) days after completion of [Kennedy Funding's] due diligence . . . ."

7.     On or about July 20, 2011, in accordance with Paragraph 5 of the LOI, the Debtor received a draft commitment ("Draft Commitment") from Kennedy Funding related to the proposed financing identified in the LOI.  Attached as **Exhibit B** is a true and correct copy of the Draft Commitment provided by Kennedy Funding.

8.     Under the Draft Commitment, the closing for the $9 million loan will take place "no later than August 17, 2011" as "time is of the essence."  This, however, contemplates that a final commitment is executed on July 27, 2011 – therefore, closing will occur three weeks after execution of a firm commitment.

9.     The Debtor is making proposed revisions to the Draft Commitment, which it plans on delivering to Kennedy Funding in order to finalize the terms pending Final PUD approval.

10.    The Debtor will execute the firm commitment and close the $9 million loan approximately three weeks after Final PUD approval

11.     With Final PUD approval, the value of the Project will increase substantially, thereby justifying the $9 million loan.

12.     An updated appraisal for the Project has not been obtained for the following reasons: (i) the appraisal for the Project is a part of Kennedy Funding's due diligence (as is typical in similar lending transactions), and it is unwilling to use an appraiser already used by the Debtor; (ii) it has not made fiscal sense for the Debtor to pay for an appraisal in advance when the Final PUD approval process was not moving along as expected; and (iii) Kennedy Funding has been (and still is) unwilling to perform an "as entitled" appraisal, despite numerous requests (most recently on July 22, 2011) by the Debtor to do so.  Now that Final PUD approval is moving forward, working on the financing (which will require an appraisal) makes sense for both the Debtor and, more importantly, Kennedy Funding.

13.     The Debtor will make every effort to receive Final PUD approval by August 24, 2011, thereby allowing the loan closing to occur by the Debtor's proposed extended confirmation deadline (September 14, 2011).

14.     Assuming the $9 million loan closes and the Amended Plan is thereby confirmed, all creditors, including Bank of America, will be paid in full, and the Debtor will be able to continue its efforts relating to the Project.

*(signature on following page)*

FURTHER AFFIANT SAYETH NOT.

PFG ASPENWALK, LLC



Thomas Salmen
Vice President of Finance

Subscribed and sworn to before me
this 26 day of July, 2011.

Notary Public

TERESA A. GAUKEL
Notary Public
Minnesota
My Commission Expires January 31, 2015

# EXHIBIT A


# KENNEDY FUNDING, INC.

TWO UNIVERSITY PLAZA
SUITE 402
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-8500
FAX: (201) 342-8373
www.kennedyfunding.com

## 2nd REVISED
## LETTER OF INTEREST

July 18, 2011

Mr. Thomas R. Salmen
PFG Aspen Walk, LLC
3208 W. Lake Street #5
Minneapolis, MN 55416

Via Email: trsalmen@gmail.com

Re:   $9,000,000 Financing Request

Dear Mr. Salmen:

Pursuant to our discussion regarding the above loan request, I am pleased to submit the following Letter of Interest. In no way should this be considered a firm loan commitment. Outlined below are the general terms and conditions required by Kennedy Funding, Inc. (KFI). These terms are only general guidelines, and only upon issuance of a firm commitment can exact terms of the loan commitment be determined.

This Letter of Interest shall expire one (1) week from issuance.

TERMS:

1.   KFI would make a Loan up to Fifty Five Percent (55%) of the Market Value of the collateral used as security for the Loan. If Borrower were to dispute the value as determined by KFI, Borrower would have the right to have a third party appraiser hired, approved by KFI, and KFI would offer a Loan of Fifty Five Percent (55%) of the "as is" Market Value as determined by said appraiser or return the paid portion of the commitment fee. The Market Value would be based on a six (6) month sale to a cash buyer.

2.   The Loan would be for three years interest only with no prepayment penalty.

3.   The interest rate for the first year of the Loan shall be equal to the greater of (i) Twelve Percent (12%) or (ii) the Prime Rate plus Eight and Three Quarters Percent (8 3/4%).

   The interest rate for the second year of the Loan shall be equal to the greater of (i) Fifteen Percent (15%) or (ii) the Prime Rate (as defined below) plus Eleven and Three Quarters Percent (11 3/4%).

   The interest rate for the third year of the Loan shall be equal to the greater of (i) Eighteen Percent (18%) or (ii) the Prime Rate (as defined below) plus Fourteen and Three Quarters Percent (14 3/4%).

   As used in herein, the term "Prime Rate" shall mean the rate of interest published in The Wall Street Journal from time to time as the "Prime Rate." If more than one "Prime Rate" is published in The Wall Street Journal for a day, the average of such "Prime Rates" shall be used, and such average shall be rounded up to the nearest one-eighth of one percent (0.125%). If The Wall Street Journal ceases to publish the "Prime Rate," the Agent shall select an equivalent publication that publishes such "Prime Rate," and if such "Prime Rates" are no

longer generally published or are limited, regulated or administered by a governmental or quasigovernmental body, then Agent shall elect a comparable interest rate index.

4.  In lieu of equity, a FEE of Three Percent (3%) of the Loan amount would be paid to KFI from the loan proceeds at closing.

5.  Upon receipt of a $10,000 wire transfer or certified check, which would be applied toward the commitment fee, KFI would provide you with a draft of a commitment containing the terms and conditions of the loan commitment to be reviewed by you and your counsel. This amount is fully refundable for any reason if you do not execute a loan commitment with KFI and you request in writing within one (1) year of the date of this letter the return of the $10,000.

6.  Upon signing of the commitment, a commitment fee equal to Four Percent (4%) of the financing request is due; one half would be payable at the signing, and the remainder would be payable from the Loan proceeds at closing. This fee would be fully refundable if KFI does not perform its obligations under the loan commitment.

7.  Notwithstanding anything herein to the contrary, the obligation of the Guarantor shall be released provided the Borrower and/or Guarantor, their agents, servants and/or employees:

    (i) take no action to hinder, frustrate or delay the Lender in its efforts to enforce any right to collect the outstanding obligation from any of the property pledged as Collateral for this Loan; and

    (ii) provide a deed in lieu of foreclosure at the request of Lender, with the real estate taxes paid current, no other liens on the property, and no environmental issues on the Collateral.

8.  The loan must be closed pursuant to the terms and conditions of the KFI commitment.

9.  Closing could occur in as quickly as seven (7) to ten (10) days after completion of our due diligence and receipt of title and all required documents. Our due diligence would commence within 24 hours after KFI receives an executed loan commitment from you.

10. Notwithstanding anything to the contrary contained herein, in no event shall the interest rate contracted for, charged, or received exceed the maximum rate allowed by law.

**THIS IS NOT A LOAN COMMITMENT.**

Very truly yours,

KENNEDY FUNDING, INC.

Mark Falzone
Senior Loan Officer

I hereby acknowledge and agree to the above terms and authorize KFI to obtain credit information on myself.

Thomas R. Salmen
PFG Aspen Walk, LLC

Av/loi/Hay..PFG/MF

# EXHIBIT B

July 20, 2011

PFG Aspen Walk, LLC
3208 W. Lake Street #5
Minneapolis, MN 55416
Attn:   Mr. Thomas R. Salmen

**Re:      Financing Request $9,000,000**

Dear Mr. Salmen:

We are pleased to advise you of our commitment to provide financing.  This commitment supersedes all previous communications and correspondence without limitation.  The terms of this Loan Commitment are as follows:

**LENDER:**          Kennedy Funding, Inc. (KFI), or any other Lender designated by KFI: KFI intends to bring participants into this transaction and reserves the right to assign or sell participations in all or part of the Loan (the "Loan") described hereunder.

**BORROWER:**     PFG Aspen Walk, LLC                    FEIN#  TO BE PROVIDED
                            3208 W. Lake Street #5
                            Minneapolis, MN 55416

**GUARANTORS:**   Thomas R. Salmen          SS# **TO BE PROVIDED**
                            Full Address   **TO BE PROVIDED**

                            Notwithstanding anything herein to the contrary, the obligation of the Guarantor shall be released provided the Borrower and/or Guarantor, their agents, servants and/or employees:

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

    (i) take no action to hinder, frustrate or delay the Lender in its efforts to enforce any right to collect the outstanding obligation from any of the property pledged as Collateral for this Loan; and

    (ii) provide a deed in lieu of foreclosure at the request of Lender, with the real estate taxes paid current, no other liens on the property, and no environmental issues on the Collateral.

**COLLATERAL/**

**PROJECT:**    A first lien on the Collateral as described in Schedule "C".

**MAXIMUM**

 **LOAN:**    A Loan of Nine Million Dollars ($9,000,000) including the FEE, fees and costs in accordance with Schedule A attached.

**TERMS:**    The term of the Loan shall be three (3) years from the date of closing.  The closing shall take place not later than August 17, 2011, <u>time of the essence</u>.  The <u>time of the essence</u> date was included at the insistence of the Borrower who has represented that it will be in a position to meet all requirements contained herein by said date.

    Notwithstanding anything to the contrary above, in the event Borrower has accepted the Loan Offer and requires additional time to close, Borrower may extend the expiration date of this Commitment until September 16, 2011, time of the essence, upon written notice to KFI and payment of Ninety Thousand Dollars ($90,000) no later than August 15, 2011, time of the essence.

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

| | |
|---|---|
| 63 **INTEREST**: | **A.** The interest rate for the first year of the Loan shall be equal to the greater of |
| 64 | (i) Twelve Percent (12%) or (ii) the Prime Rate plus Eight and Three Quarters |
| 65 | Percent (8 3/4%). |

66

**B.** The interest rate for the second year of the Loan shall be equal to the greater of (i) Fifteen Percent (15%) or (ii) the Prime Rate plus Eleven and Three Quarters Percent (11 3/4%).

**C.** The interest rate for the third year of the Loan shall be equal to the greater of (i) Eighteen Percent (18%) or (ii) the Prime Rate plus Fourteen and Three Quarters Percent (14 3/4%).

**D.** Monthly payments of interest only on the unpaid balance shall be due on the first day of each month for the prior month's interest until the maturity date, at which time the entire balance of principal and accrued and unpaid interest thereon shall be due and payable in full.

**E.** Monthly payments will be computed on a 30 day month and a 360 day year.

**F.** Interest from the date of closing to the end of the month in which the closing takes place shall be paid at the time of the closing.

**G.** As used in herein, the term "Prime Rate" shall mean the daily rate of interest published in The Wall Street Journal from time to time as the "Prime Rate." If more than one "Prime Rate" is published in The Wall Street Journal for a day, or if the daily "Prime Rate" fluctuates over any Thirty (30) day period, the average of such daily "Prime Rates" shall be used for any monthly interest calculation, and such average shall be rounded up to the nearest one-eighth of one percent (0.125%). If The Wall Street Journal ceases to publish the "Prime Rate," the Lender shall select an equivalent publication that publishes such "Prime Rate,"

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

| 93 | | and if such "Prime Rates" are no longer generally published or are limited, |
|---|---|---|
| 94 | | regulated or administered by a governmental or quasigovernmental body, then |
| 95 | | Agent shall elect a comparable interest rate index. |
| 96 | | |
| 97 | **FEE:** | Three Percent (3%) of the Loan amount. |
| 98 | | |
| 99 | **REPAYMENT:** | The Loan may be prepaid in full or in part without penalty except there shall be |
| 100 | | no refund of the FEE, points, fees and the like. The unused portion of any |
| 101 | | Monthly Prepaid Interest is refundable. |
| 102 | | |
| 103 | **LEGAL MATTERS:** | **The interests of the Borrower and Lender are or may be different and may** |
| 104 | | **conflict, and the Lender's attorney represents only the Lender and not the** |
| 105 | | **Borrower and the Borrower is, therefore, advised to employ an attorney of** |
| 106 | | **the Borrower's choice licensed to practice in the State of New Jersey to** |
| 107 | | **represent the interests of the Borrower.** |
| 108 | | |
| 109 | | The Borrower shall be required to pay to the Lender's attorney, reasonable legal |
| 110 | | fees and expenses of Lender's attorney for services provided to Lender in |
| 111 | | connection with this transaction. |
| 112 | | |
| 113 | **DOCUMENTATION:** | KFI's commitment to provide the Loan is subject to the negotiation, execution |
| 114 | | and delivery of definitive Loan and security agreements, mortgages or deeds of |
| 115 | | trust, notes, and other documentation and customary certificates and legal |
| 116 | | opinions (collectively, the "Loan Documents"), which in each case will be in |
| 117 | | form, substance and enforceability satisfactory to KFI in its sole discretion. The |
| 118 | | Loan Documents shall contain conditions precedent, representations and |
| 119 | | warranties, covenants, events of default and other terms and conditions consistent |
| 120 | | with the terms hereof as shall be satisfactory to KFI in its sole discretion and |
| 121 | | deemed appropriate by KFI for a transaction of the type contemplated herein. |
| 122 | | |

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

123

124 **ACCEPTANCE**

125 **OF COMMITMENT:** The commitment and all of its terms and conditions will become effective only

126 upon delivery to this office of a signed copy of this commitment, duly accepted

127 by the Borrower, accompanied with the commitment fee in the amount of Three

128 Hundred Fifty Thousand Dollars ($350,000) which is non-refundable and earned

129 for, among other things, the commitment to provide funds.

130

131 Said fee is not refundable under any circumstances, except as agreed to herein.

132

133 Notwithstanding anything to the contrary contained in this commitment, the

134 Borrower agrees that the basis for the Loan is the as is market value of the real

135 estate Collateral in its present condition. Market value is defined as a six (6)

136 month sale to a cash buyer. The Borrower understands that KFI will inspect the

137 Collateral and will, in its sole discretion, determine the as is market value. Upon

138 making a determination of value, KFI will deliver to Borrower a Loan Offer

139 equal to Fifty Five Percent (55%) of the as is market value not to exceed the

140 Financing Request. Failure by the Borrower to either accept or reject in writing

141 the Loan Offer within three (3) days of receipt shall be deemed to be a rejection

142 of the Loan Offer. Acceptance by Borrower of the Loan Offer shall constitute a

143 waiver of the right to engage the services of a third party appraiser as described

144 herein. Borrower understands that KFI cannot and will not lend more than Fifty

145 Five Percent (55%) of the as is market value of the real estate Collateral. If KFI's

146 determination of the value of the property is disputed by Borrower, Borrower

147 may reject the Loan Offer and elect to engage the services of a third party

148 appraiser. If Borrower makes this election, the Borrower and KFI shall mutually

149 agree on a third party MAI appraiser, with proper credentials, contracted by KFI,

150 and any fees for said appraiser to be reimbursed to KFI by Borrower prior to the

151 appraisal being performed. Upon receipt of the determination of value by the

152 third party appraiser, KFI will, at its option, either offer a Loan (not to exceed in

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

153 any event the Financing Request) of Fifty Five Percent (55%) of the as is market

154 value of the real estate Collateral as determined by said appraiser or return the

155 paid portion of the commitment fee.

156

157 If the Collateral is determined to have a value which would require KFI to make

158 a Loan of One Million Dollars ($1,000,000) or less, KFI will not be obligated to

159 make the Loan unless the Borrower provides additional Collateral acceptable to

160 KFI in its sole discretion to increase the amount of this loan to at least One

161 Million Dollars ($1,000,000). If the Loan amount is not increased, the

162 commitment fee will be earned by KFI.

163

164 This letter will become a commitment once signed by all parties and returned

165 with the Three Hundred Fifty Thousand Dollars ($350,000) as outlined above.

166 This commitment will expire August 17, 2011, time of the essence.  KFI shall

167 have no obligation with respect to the Loan unless and until this commitment

168 letter is fully executed and received by KFI along with the commitment fee.

169

170 **RETURN OF**

171 **COMMITMENT FEE:**

172 If KFI is unable to perform its obligations under the terms of this commitment for

173 whatever reason, KFI shall only be obligated to refund the paid portion of the

174 commitment fee.  SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY

175 LIABILITY OR OBLIGATION ON THE PART OF KFI UNDER ANY

176 CIRCUMSTANCE.  There will be no refund if Borrower does not accept the

177 loan offer(s) made by KFI pursuant to this commitment or Borrower has not

178 complied with all the conditions of this commitment.

179

180 **OTHER:** a) KFI hereby acknowledges receipt of Ten Thousand Dollars ($10,000) which is

181 non-refundable, for the preparation of this commitment.

182

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

183            b) Borrower agrees upon acceptance of the Loan Offer to forward an additional

184            Ten Thousand Dollars ($10,000) to KFI on account of preliminary due diligence

185            including, without limitation, environmental, survey and title review by KFI and

186            third parties. The acceptance of any such amount by KFI or any third party shall

187            not be construed as evidence that the Borrower has fulfilled all of its obligations

188            under the terms of this commitment. This Ten Thousand Dollars ($10,000) will

189            be applied toward third party fees due in connection with the Loan at the Loan

190            closing.

191

192    **EXPENSES:**         Borrower agrees that the Loan shall be without cost to KFI.  Borrower assumes

193            liability for and will pay all costs and expenses required to satisfy the conditions

194            hereof and the making of the Loan.  Such costs and expenses shall be paid at or

195            prior to the Loan closing, or upon demand if the Loan does not close or if this

196            commitment is terminated.  Such obligation shall survive termination.  Borrower

197            will also provide airline tickets and hotel accommodations if necessary.

198

199    **RELEASES:**         During the term of the Loan, provided all payments of principal and interest on

200            the Loan shall be current on the date of the sale and at the time of the sale and

201            there are no uncured defaults or events of uncured defaults under the Loan

202            Documents, Borrower may sell for cash individual parcels of the Collateral.  KFI

203            agrees to release such sold parcels provided that KFI receives the Release Price

204            for such parcel which will be applied to the outstanding balance.  The Release

205            price will be the greater of:

206

207            (i)       80% of the net sale price of the parcel taking into account reasonable and

208                     customary closing adjustments and customary sales commissions;

209

210            (ii)      75% of the gross sale price of the parcel;

211

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

212          (iii)     the minimum release amount as agreed to on a schedule to be approved

213                  by KFI prior to closing.

214

215          (The greater of the above three amounts being the "Release Price".)

216

217   **GOVERNING**

218   **LAW, ETC.**         This commitment may be executed in counterparts which, taken together, shall

219          constitute one original.  This commitment is for the benefit of the Borrower only

220          and may not be assigned except upon the prior written consent of KFI, which

221          consent may be withheld for any reason or no reason.  No party other than

222          Borrower or a permitted assignee may rely upon the terms and conditions of this

223          commitment.  This commitment will be governed by and construed in accordance

224          with the laws of the State of New Jersey without regard to the principles of

225          conflicts of laws thereof.

226

227   **WAIVER:**         No failure on the part of KFI to exercise and no delay in exercising any rights

228          under the Loan Documents shall operate as a waiver thereof, nor shall any single

229          or partial exercise by KFI of any right under the Loan Documents preclude any

230          further exercise thereof, or the exercise of any other right.  Each and every right

231          or remedy granted under the Loan Documents or under any document delivered

232          thereunder or in connection therewith or allowed to KFI in law or equity shall be

233          deemed cumulative and may be exercised from time to time.

234

235          This Commitment is executed by an individual strictly in his capacity as a

236          representative of the Lender.  By the acceptance of this Commitment, Borrower

237          agrees that no representative, member, partner, shareholder, employee or agent of

238          the Lender shall be personally liable for the payment of any claim or the

239          performance of any obligations hereunder.

240

241

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

| | |
|---|---|
| 242 | **LIMITATION** |
| 243 | **OF DAMAGES:**      **KFI SHALL HAVE NO LIABILITY TO BORROWER, OR ANY OTHER** |
| 244 | **ENTITY OR PERSON, UNDER ANY THEORY OF LAW OR EQUITY** |
| 245 | **FOR ANY AMOUNT IN EXCESS OF THE PAID PORTION OF THE** |
| 246 | **COMMITMENT FEE. BORROWER ACKNOWLEDGES THAT THIS** |
| 247 | **LIMITATION OF DAMAGES CLAUSE IS REASONABLE. BORROWER** |
| 248 | **AGREES NOT TO PURSUE ANY CLAIM IN EXCESS OF THE ABOVE** |
| 249 | **SUM.** |
| 250 | |
| 251 | **WAIVER OF TRIAL** |
| 252 | **BY JURY:**      **BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY** |
| 253 | **AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY** |
| 254 | **JURY IN ANY SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING** |
| 255 | **IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO** |
| 256 | **THIS COMMITMENT, THE OTHER LOAN DOCUMENTS, THE** |
| 257 | **OBLIGATION, THE COLLATERAL, OR ANY RELATED** |
| 258 | **TRANSACTION.** |
| 259 | |
| 260 | **MISCELLANEOUS:**      **BORROWER UNDERSTANDS THAT KFI CANNOT AND WOULD NOT** |
| 261 | **ENTER INTO THIS COMMITMENT WITHOUT BORROWER'S** |
| 262 | **AGREEMENT TO THE LIMITATION OF DAMAGES, CHOICE OF** |
| 263 | **FORUM AND WAIVER OF TRIAL BY JURY CLAUSES CONTAINED** |
| 264 | **HEREIN.** |
| 265 | |
| 266 | **BORROWER AND GUARANTOR(S) UNDERSTAND THAT THEY ARE** |
| 267 | **OBLIGATED TO DISCLOSE TO LENDER THE NAME AND ADDRESS** |
| 268 | **OF ANY THIRD PARTY FEE PROVIDER(S). IN THE EVENT THERE** |
| 269 | **IS A THIRD PARTY FEE PROVIDER, THE THIRD PARTY FEE** |
| 270 | **PROVIDER SHALL BE REQUIRED TO SIGN THIS LOAN** |
| 271 | **COMMITMENT. IN THE EVENT THAT BORROWER FAILS TO** |

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

**MAKE SUCH DISCLOSURE, BORROWER AND GUARANTOR(S) AGREE TO INDEMNIFY AND HOLD HARMLESS LENDER AGAINST ANY AND ALL CLAIMS ASSERTED BY SUCH UNDISCLOSED PARTY AS WELL AS ANY ATTORNEYS' FEES INCURRED IN DEFENDING AGAINST SAME.**

**COMMITMENT FEE**

**MODIFICATION:**   Notwithstanding the above requirement to pay Three Hundred Fifty Thousand Dollars ($350,000) at the signing of the commitment, as consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Limitation of Damages clauses, KFI will accept payment of the Three Hundred Fifty Thousand Dollars ($350,000) in the following manner:

a)   One Hundred Eighty Thousand Dollars ($180,000) to be paid at the time this commitment is signed, prior to our due diligence, which signing will be no later than July 27, 2011, time of the essence;

b)   One Hundred Seventy Thousand Dollars ($170,000) to be paid at the closing or upon Borrower electing not to proceed to a Loan closing. In addition, any default by the Borrower under this commitment, or other failure of Borrower to comply with this commitment, or misrepresentation by Borrower of any fact or state of facts to KFI either in connection with this commitment or otherwise, or any material adverse change of any type shall not relieve Borrower of its obligation to pay such amount to KFI.

Borrower acknowledges that Schedule "B" annexed hereto represents conditions of the Loan commitment required by Lender and that this document would not be executed by Lender without Borrower's agreement thereto.  Borrower further acknowledges that each and every delivery required under this Loan

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

302  Commitment (including those required under Schedule "B") must be made directly to KFI or its

303  designated legal counsel.  Any deliveries made to any other person or entity (including without limitation

304  any appraiser or broker involved with the proposed loan transaction) shall <u>not</u> be deemed a delivery to

305  KFI as required hereunder.

306

307

308  This document is an arms length and negotiated agreement.  It shall be construed without any regard to

309  any presumption or rule requiring construction against the party causing such instrument or any portion

310  thereof to be drafted.

311

312  Sincerely,

313  KENNEDY FUNDING, INC.

314  BY: _____

315       Gregg Wolfer, Co-Chief Executive Officer

316  DATE: _____

317

318  COMMITMENT ACCEPTED

319  PFG ASPEN WALK, LLC

320

321  BY: _____

322       Thomas R. Salmen, Managing Member

323  _____

324  Thomas R. Salmen, Individually and as Guarantor

325  DATE: _____

326

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

327

328                              **SCHEDULE "A"**

329

330

331

332     LOAN AMOUNT                                          $9,000,000

333

334

335                     PROPOSED LOAN AND USE OF PROCEEDS

336

337     FEE (3% of the Loan Amount)              $270,000

338     (Non-Refundable)

339

340

341     MONTHLY PREPAID INTEREST                 UNKNOWN

342     (Refundable if unused)

343

344

345     CLOSING COSTS                            UNKNOWN

346

347

348     BROKERAGE COMMISSION                     UNKNOWN

349

350

351     BALANCE OF COMMITMENT FEE                $170,000

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

352

353                              **SCHEDULE "B"**

354

355

356     These General Conditions are part of the attached commitment and deemed a part hereof as if set forth

357     therein.

358

359     1.    **Survey:**   The Borrower shall provide a survey certified to the Lender and the title

360           company satisfactory to the title company on each piece of Collateral prepared by a

361           surveyor licensed by the State showing the project to be free of encroachments,

362           overlapped and other survey defects, delineating all wetlands on the property (if any), all

363           in accordance with the Lender's survey requirements.

364

365     2.    **Insurance:**  The Borrower must furnish liability and hazard insurance in a sum not less

366           than the replacement value of the Collateral but in no event less than the amount of the

367           Loan insured by a company or companies satisfactory to Lender.

368

369     3.    **Title:**   The Lender shall receive a first lien on the Collateral acceptable to its Counsel

370           and Borrower shall provide a paid title insurance policy in an amount no less than the

371           amount of the Loan insured by a title company or companies satisfactory to Lender.

372

373     4.    **Flood Insurance:**  If any material part of any parcel of the Collateral is located in an area

374           designated as being subject to a special flood hazard, Borrower shall obtain all available

375           flood insurance.  If insurance is not available, and if such unavailability legally precludes

376           the mortgage from covering such affected parcel, such parcel shall be removed from the

377           Collateral and all Loan amounts recalculated.

378

379     5.    **Easements:**   All necessary easements for utilities, public road access, parking or

380           otherwise shall be provided for prior to closing.

381

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

6.   **Additional Collateral:**  As additional Collateral Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower.

7.   **Approval of Lender's Counsel:**  The title in the project and the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion.

8.   **Approval of Borrower's Counsel, Etc.:**  Borrower acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Commitment and Borrower acknowledges that it will consult with counsel of its choice and with such other experts and advisors as it deems necessary in connection with the negotiation, execution and delivery of the other Loan Documents.  This Commitment and the other Loan Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or any part of them, to be drafted.

9.   **Representations and Warranties of Borrower and Guarantor:**   Customary for transactions of this type, including, but not limited to, the following:

(a)   Neither the Loan Documents nor the performance by Borrower of its obligations thereunder violate any provisions of law, of Borrower's partnership agreement, corporate by-laws, or of any agreement which is binding upon Borrower or the Guarantors.  No action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Loan Documents by Borrower, and Borrower is not subject to filing, reporting or like requirements of any governmental commission, bureau or agency charged with control or supervision of environmental concern.

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

412       (b)     All financial information furnished or disclosed to KFI by Borrower and
413                      Guarantors touching upon the financial condition of any of them is true and
414                      correct as of the date furnished, and there has been no omission of any material
415                      fact relating thereto, and there has been no material adverse change in the
416                      financial condition, operations or business of any of them since the date of such
417                      financial information.  Borrower and Guarantor(s) authorize KFI to obtain any
418                      credit information which KFI deems appropriate or necessary regarding the
419                      Borrower and/or Guarantor(s).

420

421       (c)     Borrower or Guarantors is not in default in the performance, observance or
422                      fulfillment of any of the obligations or conditions contained in any agreement or
423                      instrument to which it is a party, or with respect to any evidence of indebtedness
424                      or obligation for borrowed money which affects in any way the Collateral, nor
425                      does any condition exist which, upon the lapse of time or giving of notice, or
426                      both, would constitute an event of default under, or grounds for termination of,
427                      any such agreement or instrument.

428

429       (d)     No actions, suits or proceedings at law or in equity are pending or, to the best of
430                      Borrower's or Guarantor's knowledge, threatened, in any court or before any
431                      federal, state, municipal or governmental department, commission, board,
432                      bureau, agency or instrumentality against or affecting Borrower, the Guarantors,
433                      or any of its properties or rights which, if adversely determined would materially
434                      adversely affect the financial condition of Borrower or Guarantors or materially
435                      impair the right of either to carry on its business substantially as now conducted,
436                      nor is either in default with respect to any judgement, writ, injunction, decree,
437                      rule or regulation of any court or federal, state, municipal or governmental
438                      department, commission, board, bureau, agency or instrumentality.

439

440       (e)     At Lender's option, Borrower will establish and maintain reserves for ongoing
441                      taxes and insurance premiums, prepaid interest and replacement reserves in

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

442          amounts acceptable to Lender.  The tax and insurance reserve will be funded up
443          front and from monthly cash flow and will be 1/12th of the annual amount
444          payable  All funds held in the reserve accounts will be held for the benefit of the
445          Borrower, except for the tax and insurance reserve (which shall be for the benefit
446          of the Lender).

447
448    10.    **Miscellaneous:**  Prior to the closing of the Loan and disbursement of funds, in each
449          instance the Borrower must comply with the following:

450
451    (a)    The Borrower is to produce such evidence as Lender may require to demonstrate
452          current full compliance with all applicable zoning, health, environmental and
453          safety laws, ordinances and regulations (including without limit approval of
454          local, private or public sewage or water utility).  The Borrower shall certify or
455          supply other satisfactory evidence to the Lender at the time of the closing that
456          there is no action or proceeding pending before any Court or Administrative
457          Agency with respect to the validity of any laws, ordinances or regulations, and
458          any certifications or permits issued thereunder, pertaining to the premises.  The
459          Borrower shall certify or supply other evidence satisfactory to the Lender that the
460          Borrower is not a party to any existing or pending or threatened litigation, unless
461          specifically noted herein.

462
463    (b)    All appropriate approvals necessary for the current use and the completed project
464          contemplated by this commitment (if applicable) must be provided and must
465          meet all applicable requirements of all governmental authorities having
466          jurisdiction, including, but not limited to subdivision and site plan approvals, the
467          Department of Environmental Protection and its several subdepartments as they
468          pertain to potable water supply, sewage discharge and sewage connection, use of
469          septic tanks or alternatives.  The Lender shall require prior to closing, evidence
470          satisfactory to it and its Counsel of full compliance with all Environmental

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

471          Clean-Up Responsibility Acts and that no action is pending or liens imposed

472          under any Spill Compensation and/or Control Acts.

473

474    (c)    During the term of the Loan, there shall be no additional financing nor any

475          transfer of title, not contemplated in the Loan Documents without the prior

476          written approval of the Lender.

477

478    (d)    Execution by the Borrower of such Loan Documents including, but not limited

479          to, a mortgage and mortgage note, satisfactory in form and substance to the

480          Lender and its Counsel, including a prohibition against the transfer of title of any

481          of the Collateral not contemplated in the Loan Documents, and if the Borrower is

482          a corporation or partnership, a change in the management or controlling interest

483          in the Borrower.  Borrower may prepay the Lender at any time, in whole or in

484          part, without penalty except for all of the FEE which is considered earned at the

485          time of closing.

486

487    (e)    This commitment is subject to the accuracy of all information, representations,

488          exhibits and other materials submitted with or in support of the Loan request and

489          there must be no adverse change in the set of facts prior to the disbursements of

490          funds or during the term of the Loan.  This commitment may be terminated by

491          KFI and the Commitment Fee retained and earned by KFI in the event of the

492          following:

493

494       (i)      If the Borrower shall fail to comply with any of the terms or conditions

495             hereof.

496      (ii)      In the event of a sale, conveyance or other disposition of any of the

497             Collateral.

498    (iii)      In the event of a materially adverse change in the financial condition of

499             the Borrower or any Guarantor.

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

500                 (iv)     Any fraudulent material misrepresentation or any omission or
501                         concealment by the Borrower or any Guarantor of any material fact.

502                 (v)      For any good faith reason.

503

504        (f)      In the event of any default during the term of this Commitment, KFI may, at its
505                option, require immediate payment of the balance of the Commitment Fee and
506                KFI may terminate the Commitment and retain the paid portion of the
507                Commitment Fee.

508

509        (g)     The Borrower has the obligation to disclose all material facts, past and present,
510                related to the Borrower, Guarantors, the Collateral, the transaction, etc.

511

512        (h)     The Borrower specifically acknowledges and agrees that KFI and/or Lender rely
513                on counsel opinion letters relating to, among other items, usury.   This
514                commitment is subject to the express condition that at no time will the Borrower
515                be obligated or required to pay interest at a rate which could subject KFI and/or
516                Lender to either civil or criminal liability as a result of being in excess of the
517                maximum rate which the Borrower is permitted by law to contract or agree to
518                pay.  If, by the terms of this commitment or the Loan Documents the Borrower is
519                at any time required or obligated to pay interest at a rate in excess of such
520                maximum rate, the rate of interest shall be deemed to be immediately reduced to
521                such maximum rate and the portion, if any, of all prior interest payments in
522                excess of such maximum rate shall be applied and shall be deemed to have been
523                payments in reduction of the principal balance.

524

525        (i)      At Lender's option at closing, the owner of the collateral and the Borrower shall
526                be a newly formed single-purpose "bankruptcy remote" limited liability company
527                or limited partnership acceptable to Lender.   The Borrower's organizational
528                documents shall contain provisions satisfactory to Lender.  These provisions may
529                not be amended in any material respect during the term of the Loan without

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

530      Lender's consent. The sole business activity of the Borrower shall be the

531      ownership and operation of the Mortgage Property. The Borrower shall have no

532      debt other than the Loan at closing. The Borrower shall be prohibited from

533      incurring additional debt other than the Loan throughout the Loan term, including

534      without limitation, partnership debt. Any advances made to Borrower from any

535      partner, member of Borrower or shareholder shall be in the form of equity not

536      debt.

537

538    11.    **Validity of Loan:** The Loan and the closing thereof shall in all respects be legal and not

539      violate any applicable law or other requirements of any governmental authority. The

540      Borrower will submit to the Lender at closing a current written opinion by the Borrower's

541      legal Counsel, satisfactory to Lender, to the effect, among other things, that all Loan

542      Documents are valid and binding upon the Borrower and any other mortgagor and are

543      enforceable in accordance with their terms and are legal and do not violate any local,

544      state or federal laws including, but not limited to, all usury laws. Once the Loan is closed

545      and funded by the Lender, the Loan shall be governed and construed pursuant to the laws

546      of the State of New Jersey. Borrower understands that KFI has entered into this

547      Commitment expecting to receive a return on the Loan as set forth in this Loan

548      Commitment. In the event that the jurisdiction in which the Collateral is located and/or

549      from which payment is made requires the payment of a tax, assessment, or other charges

550      in connection with the Loan by Lender, Borrower will be responsible for the payment of

551      such tax, assessment or charge and shall reimburse Lender for any payment required to

552      be made by the Lender.

553

554    12.    **Governing Law:** This Commitment and the other Loan Documents (except the

555      Mortgage which shall be construed in accordance with the law of the situs of the realty),

556      shall be governed by and construed in accordance with the internal substantive laws of

557      the State of New Jersey, without regard to the choice of law principles of such state.

558

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

559       13.    **Usury:**  It is expressly understood and acknowledged by the Borrower that KFI may not

560                 be familiar with the usury statutes in the Collateral's jurisdiction and relies on counsel

561                 opinions delivered at closing.  This commitment is subject to the express condition that at

562                 no time shall the Borrower be obligated or required to pay interest at a rate which could

563                 subject KFI or the Co-Lenders to either civil or criminal liability as a result of being in

564                 excess of the maximum rate which the Borrower is permitted by law to contract or agree

565                 to pay.  If by the terms of this commitment or the note the Borrower is at any time

566                 required or obligated to pay interest at a rate in excess of such maximum rate, the rate of

567                 interest hereunder and/or under the note shall be deemed to be immediately reduced to

568                 such maximum rate and interest payable shall be computed at such maximum rate and the

569                 portion of all prior interest payments in excess of such maximum rate shall be applied

570                 and shall be deemed to have been payments in reduction of principal balance or, if the

571                 Loan has not closed shall be void, and if KFI deems it a hardship to close the Loan under

572                 the usury statutes, all fees paid to KFI shall be refunded and this commitment shall be

573                 null and void.

574

575       14.    **Choice of Forum:**  Borrower and Guarantor(s) consent to the jurisdiction of any state or

576                 federal court sitting in the State of New Jersey for adjudication of any dispute between

577                 the Borrower and Guarantor(s), their agents, servants and/or employees and KFI under

578                 any theory of law in connection with, out of, or otherwise relating to this Commitment

579                 and any related transactions and that venue shall be proper in any such court to the

580                 exclusion of the courts in any other state or country.  The Borrower further agrees that

581                 such designated forum is proper and convenient. By executing this commitment,

582                 Borrower and Guarantor(s) authorize KFI to obtain credit information on Borrower and

583                 Guarantor.

584

585       15.    **WAIVER OF TRIAL BY JURY:  Borrower and Lender each hereby**

586                 **unconditionally and irrevocably waive any and all right to trial by jury in any suit,**

587                 **counterclaim, or cross-claim arising in connection with, out of, or otherwise relating**

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

588                      **to this Commitment, the other Loan Documents, the Obligation, the Collateral, or**

589                      **any related transaction.**

590

591       16.     **No Oral Modifications:** Notwithstanding any course of dealing between the parties, no

592                      amendment, modification, rescission, waiver, or release of any provision of this

593                      Commitment shall be effective unless the same shall be in writing and signed by the

594                      Borrower and Lender.

595

596       17.     **Complete Agreement:** This Commitment, together with the other Loan Documents,

597                      constitutes the entire agreement and understanding among the parties relating to the

598                      subject matter of this Mortgage Loan, and supersedes all prior proposals, negotiations,

599                      agreements, and understanding relating to such subject matter. In entering into this

600                      agreement, Borrower acknowledges that it is relying on no statement, representation or

601                      agent of the Lender, except for the agreements of Lender set forth herein.

602

603       18.     **Survival of Commitment:** Borrower and Lender hereby acknowledge and agree that

604                      this commitment shall not survive closing. Furthermore, notwithstanding the provisions

605                      of paragraph 16 above, the parties specifically acknowledge and agree that the terms and

606                      conditions of this Loan may be modified by mutual agreement at any time up to and

607                      including the date of closing and that any such modifications shall be incorporated

608                      directly into the Loan Documents without the need to amend this Commitment.

609

610       19.     **Execution.** This Loan Commitment may be executed in any number of counterparts,

611                      each in which shall be considered an original. Delivery of an executed copy by one party

612                      to the other, via facsimile, shall constitute a valid delivery.

613

614   The undersigned does hereby accept this Commitment and does hereby agree to keep and perform each

615   and every item and condition herein before set forth and do acknowledge that the performance of such

616   terms and conditions are obligations of the undersigned. The undersigned acknowledges and agrees that

617   Lender requires satisfaction of the conditions herein (and in the Loan Documents) at least 48 hours prior

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

618  to the closing and funding of the Loan.  The attorney for the Borrower has reviewed this commitment and

619  has explained all of its terms and ramifications to the Borrower and the Guarantor.

620

621  **ACCEPTED:**

622  PFG ASPEN WALK, LLC

623

624  BY:  _____

625          Thomas R. Salmen, Managing Member

626  _____

627  Thomas R. Salmen, Individually and as Guarantor

628

629  DATE: _____

PFG Aspen Walk, LLC
Loan Commitment
July 20, 2011

630

631 **SCHEDULE "C"**

632 (COLLATERAL / PROJECT DESCRIPTION)

633 TO BE PROVIDED BY BORROWER

634

635

636

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

PFG ASPENWALK, LLC,

      Debtor.

Chapter 11
Case No. 10-47089 (RJK)

---

**CERTIFICATE OF SERVICE**

---

    I, Aong Moua, declare, under penalty of perjury, that on July 26, 2011, I filed:

**AFFIDAVIT OF THOMAS SALMEN IN SUPPORT OF THE**
**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE ENLARGEMENT OF THE**
**DEBTOR'S DEADLINE TO OBTAIN CONFIRMATION OF A PLAN**

with the Clerk of Bankruptcy Court through ECF, and that ECF will send an e-notice of

electronic filing to the following:

        **William Fisher;** william.fisher@gpmlaw.com
        **Timothy A. Fusco;** fusco@millercanfield.com
        **Marc N Swanson;** swansonm@millercanfield.com
        **Michael Fadlovich**; michael.fadlovich@usdoj.gov
        **Mark J. Kalla**; mark.kalla@btlaw.com
        **US Trustee**; ustpregion12.mn.ecf@usdoj.gov

    I further certify that I caused a copy of the foregoing documents and the notice of

electronic filing to be mailed by first class mail, postage paid, to the following parties:

AMANDA SCHMITT
404 PARK AVENUE #1
ASPEN CO 81611

ASPEN CUSTOM GLASS
601 RIO GRANDE PLACE, STE 119A
ASPEN CO 81611

ASPEN PITKIN HOUSING AUTHORITY
ATTN: TOM MCCABE, EXEC. DIR.
530 EAST MAIN STREET
ASPEN CO 81611

BANK OF AMERICA, N.A.
ATTN: RICHARD L. CARTER
2990 LAVA RIDGE CT, SUITE 120
ROSEVILLE CA 95661

BRITTANY BUFFALINO
404 PARK AVENUE #1
ASPEN CO 81611

CAMERON LEONARD
404 PARK AVENUE #9
ASPEN CO 81611

CITY OF ASPEN
130 SOUTH GALENA STREET
ASPEN CO 81611

CLAYTON DAY
404 PARK AVENUE #2
ASPEN CO 81611

HOLY CROSS ENERGY
P.O. BOX 2150
3799 HWY 82
GLENWOOD SPRINGS CO 81602

INTEGRITY PLUMBING AND HEATING
218 CODY LANE
BASALT CO 81621

JOAQUINN TARANGO
404 PARK AVENUE #5
ASPEN CO 81611

JONATHAN RIVERS
404 PARK AVENUE #3
ASPEN CO 81611

JULIE COOK
404 PARK AVENUE #0
ASPEN CO 81611

LAURENCE MONJI
404 PARK AVENUE #6A
ASPEN CO 81611

LINDSAY FORSTER
404 PARK AVENUE #3
ASPEN CO 81611

MANUEL CORRIPIO NORIEGA
PO BOX 2565
ASPEN CO 81612

REBECCA POLAN
404 PARK AVENUE #1
ASPEN CO 81611

ROSA GONGORA
404 PARK AVENUE #10
ASPEN CO 81611

SHAUN HEALY
404 PARK AVENUE #12
ASPEN CO 81611

SHERIDAN REAL ESTATE, LLC
ATTN: MARY ELLEN SHERIDAN
P.O. BOX 7757
ASPEN CO 81612

SOPRIS CONSULTING GROUP, LLC
ATTN: PAUL LOTZER
5400 NORWOOD LANE
PLYMOUTH MN 55442

STAN CLAUSON ASSOCIATES, INC
ATTN: STAN CLAUSON
412 N MILL STREET
ASPEN CO 81611

TERMINIX
2907 D 1/2 ROAD
GRAND JUNCTION CO 81504

WASTE MANAGEMENT-
CARBONDALE
PO BOX 78251
PHOENIX AZ 85062

IRS
CINCINNATI, OH  45999-0025

UNITED STATES ATTORNEY
600 U.S. COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN  55415

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
SAINT PAUL, MN  55101

MINNESOTA DEPARTMENT OF
REVENUE
BANKRUPTCY SECTION
P.O. BOX 64447
SAINT PAUL, MN  55164-00447

INTERNAL REVENUE SERVICE
STOP 5700
30 EAST SEVENTH STREET, #1222
SAINT PAUL, MN  55101-4940

SOURCE GAS
DISTRIBUTION LLC
P.O. BOX 13288
FAYETTEVILLE, AR 72703

HONEYCOMB INTERNET
SERVICES LL
77 13TH AVE. NE SUITE 210
MINNEAPOLIS, MN 55413

Dated:  July 26, 2011

*/e/ Aong Moua*_____
Aong Moua